CASE NUMBER: LSP-2012-2481

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: <u>CODE, NATHANIEL 81600</u>   <u>DR H TIER</u>
          Living Quarters

Response to request dated 07/28/2012, received in this office on 08/01/2012

Your request for administrative remedy (ARP #LSP-2012-2481) was received and investigated.

You claim that it has been extremely hot on Death Row, especially on June 26, 2012, and that the (extreme heat) conditions are unbearable, causing you to experience dizziness and headaches. You also claim: 1) the fans and ice provided for you are insufficient for your needs, and 2) the water in your cell and shower is too hot to drink or shower and is contaminated.

As remedy, you request: 1) air conditioning or other effective cooling system be provided for you, 2) compensatory damages in the amount of $100/day for each day spent in extreme heat, 3) a declaratory judgment that current conditions violate your constitutional right against cruel and unusual punishment, 4) to interview specified staff and to receive copies of specified documents related to death row and all assigned offenders, and 5) no retaliation against you for filing this request for administrative remedy.

According to the U.S. Environmental Protection Agency (EPA), extreme heat conditions are defined by summertime weather that is substantially hotter and/or more humid than average for a specific location at that time of year. The Louisiana State Penitentiary (LSP) defines heat alert conditions when the indoor temperature exceeds 90-degrees Fahrenheit, which is an absolute temperature threshold rather than the seasonally adjusted temperature threshold of the EPA. As summertime weather in Louisiana typically averages between 90 and 110-degrees, LSP's definition demonstrates more caution than that of the EPA. In addition, studies by the EPA suggest that extreme heat conditions have the least impact in the South and Southwest, as these populations are acclimated or accustomed to the elevated or higher temperatures as opposed to areas with tremendous deviation from typical conditions, such as in the Northeast and Midwest that seldom reach temperatures of 90-degrees Fahrenheit or higher.

Contrary to your statements that you have experienced dizziness and headaches due to the heat, a review of your medical records (2007-present) revealed no medical documentation to support your claims. Although health care staff makes daily rounds and you are regularly seen by your primary and specialty care physicians for hypertension, GERD and Hepatitis C, you have reported no medical complaints (dizziness, headaches, dehydration, rash, etc.) in relation to the summer heat. It should be noted that had you actually experienced and/or reported any of these symptoms, they would more likely be due to your prescription medications for hypertension (Norvasc and Cozaar), as they are common side-effects of these medications. There is also no medical documentation to indicate that your blood pressure was (or is) adversely affected by the heat. Rather, medical documentation indicates that you have a history of smoking and obesity - both risk factors contributing to your high blood pressure.

A review of the DR H-Tier log book (June 19-July 3, 2012) revealed that the average indoor temperature was 90-degrees. And, although you claim "it was really hot" on June 26, 2012, the actual temperature on the tier was 86-degrees. Regardless, most health risks attributable to the normally hot summers in the South can be considerably reduced and/or eliminated by personal behavioral choices and/or precautions, e.g., wearing appropriate clothing, staying hydrated, avoiding heavy meals and strenuous outside exercise, etc.

As to your remaining claims, the Louisiana Public Health and Sanitary Code establishes and mandates related operational standards or requirements for all prisons, including potable water for drinking purposes, lavatories, showers, and ventilation systems and monitors same to ensure compliance. During the most recent inspection of LSP (April 3 & 5, 2012), the state health inspectors found death row in compliance with the Health and Sanitary Code, with only two minor notations totally unrelated to any of your claims. In addition, LSP policy and the standard security practices of Death Row provide appropriate measures to monitor and reduce any adverse heat-related risk of its offender population.

In conclusion, while the temperature in your cellblock may be insufficient for your personal needs, that alone does not support your claims that you were or continue to be subjected to cruel and unusual punishment. Therefore, I find your claims are without merit.

Your request for administrative remedy is denied.

Prepared by: _____
            Angie Norwood/AWII/cm

Approved By: _____
            Joe Lamartiniere/AWII/tlb


_____                    _____
        Date                                      Unit Head


<u>Instructions to Offender:</u>  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( )  I am not satisfied with this response and wish to proceed to Step Two.

Reason:

_____

_____

_____

_____                    _____
        Date                                Offender's Signature    DOC#