UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELZIE BALL, NATHANIEL CODE, AND JAMES MAGEE, | * * * | CIVIL ACTION NO. 13-368 |
| PLAINTIFFS | * * | |
| VS. | * * | |
| JAMES M. LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, BURL CAIN, WARDEN OF THE LOUISIANA STATE PENITENTIARY, ANGELA NORWOOD, WARDEN OF DEATH ROW, AND THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, | * * * * * * * * * * | JUDGE: BAJ<br><br>MAGISTRATE: SCR |
| DEFENDANTS | * | |

**PLAINTIFFS' BRIEF ON THE RELIABILITY OF USRM DATA**

On July 31, 2013, this Court ordered the parties to file a brief of no more than five pages addressing: "1. The effect of the remedial measures (i.e. installation of awnings, misting of the buildings, etc.) allegedly taken by Defendants on the data collected between July 15, 2013 and August 5, 2013;" and "2. Whether it is possible for the Court to isolate the data collected before remedial measures were allegedly taken." Rec. Doc. 57. Plaintiffs respectfully submit this brief indicating their position on these issues based on their present analysis and information.

**I.    It is impossible to ascertain the full effect on the Court Ordered USRM data of the remedial measures allegedly taken by Defendants.**

Based on presently known information and analysis, it is impossible for Plaintiffs to know the full effect of the remedial measures allegedly taken by Defendants. First, Plaintiffs

1

counsel has no ability to access the facilities of Defendants in order to take the measurements that would be needed to make a first approximation of what effect there could be as a result of the remedial measures taken by Defendants. Plaintiffs would need full access the facilities along with experts who would be necessary to intelligently respond.

Second, the *full* details of Defendants' remedial measures remain unknown to Plaintiffs and their counsel—and it would appear Defendants' counsel. Without the full details of Defendants' remedial measures, including the measures themselves and the times the measures were taken, it is impossible to opine on the effect that the remedial measures may have had.[1]

Indeed, the history of how it became known that Defendants were experimenting with remedial measures is worth this Court's consideration.[2] Almost immediately after filing the Complaint in this matter, Plaintiffs' counsel has received numerous reports of alterations being made to death row which might impact the temperature. From the outset of discovery, Plaintiffs served interrogatories that asked Defendants to describe in detail any and all remedial measures that were taken at the Death Row facility to alleviate the heat since the Complaint was filed. Defendants initially responded that only routine maintenance had occurred. After receiving multiple reports of construction projects occurring at death row, Plaintiffs' counsel asked Defendants' counsel to address this issue and supplement their responses to Plaintiffs' interrogatories as required by Rule 26. Defendants provided information in their supplemental responses stating only that awnings had been installed on two tiers at Death Row. Notably absent from this supplemental responses were the reasons that Defendants had taken these

---

[1] Plaintiffs attempted to consult with their expert; he indicated he would need additional information to form any opinion- but believed the known remedial measures taken would impact the data collection.

[2] A full history of Defendants' malfeasance, including exhibits, is recounted for the Court in Plaintiffs' *Motion for Imposition of Sanctions for Defendants' Spoliation of Evidence*. In order to avoid duplication of argument and background, as well as to stay within the Court's five page limit, Plaintiffs respectfully refer the Court to that history detailed in that Motion to the extent the Court feels appropriate and relevant to the instant briefing as ordered.

actions, the dates on which the actions had occurred, or any other remedial measures that had occurred. Subsequently, at the deposition of Warden Burl Cain, which concluded immediately before the pretrial conference with the Court, Warden Cain indicated that other remedial actions, including without limitation misting, had been occurring at the Death Row facility.

This history is brought to the Court's attention because it reveals the knowledge that was within the control of Defendants' counsel and Defendants—including of course Warden Cain—had not been provided in the supplemental responses. Plaintiffs respectfully submit that neither they, their counsel, nor their experts can properly opine on the potential effects of Defendants' remedial measures without a full knowledge of the Defendants' activities. Defendants have refused to provide this information to Plaintiffs during discovery as required.

Defendants pattern and practice on collection of data speaks for itself: the blocking of any inspection of the interior of the Death Row facilities by the Advocacy Center's experts in the related case, refusing to engage in any remedial measures in response to Plaintiffs and others' ARP requests or letters from counsel, blocking Plaintiffs' shadow expert from bringing verifying equipment, and now the spoliation of Court ordered evidence. Ultimately, whatever the Court's decision relating to the weight given to the USRM data, if any, Plaintiffs respectfully submit that they should not be prejudiced in any manner by the Defendants' spoliation of this evidence.

**II.   The Court should not rely upon any subset of the data because Defendants have made alterations in addition to the awnings on two tiers.**

Plaintiffs respectfully submit that it would be a mistake for this Court to attempt to excise potentially valid data from the Court ordered USRM data. The full details of Defendants remedial measures are still not known. Furthermore, other remedial measures such as misting are rumored to have occurred so as to manipulate the heat radiating off the walls of specific tiers

as well as in an attempt to cool the roof of the building and prevent the roof from trapping heat. Without full details of Defendants actions, which Plaintiffs have sought in discovery, attempting to excise salvageable data would be a flawed process that would unfairly prejudice Plaintiffs.

**III.     Even if this Court were to consider a limited subset of the spoiled Court ordered USRM data, the Court should draw all inferences in favor of Plaintiffs in evaluating all evidence and argument relating to the heat conditions on Death Row.**

Even if the Court were to consider a limited subset of the Court ordered USRM data, the Court should draw all inferences in favor of Plaintiffs when evaluating all evidence and argument relating to the heat conditions on Death Row. Defendants have installed awnings on two of what Defendants likely believed and Plaintiffs contend were the hottest tiers on Death Row – including the tier where the data is being collected from what Plaintiff believes to be the hottest cell. Furthermore, for the reasons stated in Plaintiffs' *Motion for Imposition of Sanctions for Defendants' Spoliation of Evidence,* Defendants spoliation of this evidence is their latest successful attempt to block Plaintiffs from presenting and this Court from meaningfully evaluating data from measurements of the extreme heat taken from the inside of Death Row. Given Defendants pattern of discovery abuses and spoliation of the evidence, Plaintiffs submit that the historical data compiled by Plaintiffs and their experts—using the temperature recorded in Defendants' own logbooks and the methodology used within the public health arena—should be considered in the light most favorable to Plaintiffs, if not deemed unimpeachable. The Court should further bar any effort by Defendants to impugn the accuracy or reliability of Plaintiffs' historical data analysis.

DATED: August 2, 2013
ATTORNEYS FOR PLAINTIFFS ELZIE BALL, NATHANIEL CODE and JAMES MAGEE

4

/s/ Mercedes Montagnes
Mercedes Montagnes, La. Bar No. 33287 (Lead Counsel)
Elizabeth Compa, La. Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378
Email: mmontagnes@thejusticecenter.org


Mitchell A. Kamin, Ca. Bar No. 202788
Jessica C. Kornberg, Ca. Bar No. 264490
Nilay U. Vora, Ca. Bar No. 268339
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks & Lincenberg, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Tel. (310) 201- 2100
Fax (310) 201- 2110

Steven Scheckman, La. Bar No. 08472
Schiff, Scheckman, & White LLP
829 Baronne Street
New Orleans, Louisiana 70113
Tel. (504)581-9322
Fax (504)581-7651
Email: steve@sswethicslaw.com


CERTIFICATE OF SERVICE

I do hereby certify that on August 2, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/EF system which will send a notice of electronic filing to all CM/ECF participants.


/s/ Mercedes Montagnes
MERCEDES MONTAGNES, LSBA #33287
Attorney at Law
636 Baronne Street
New Orleans, LA 70113
(504) 529-5955