UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ELZIE BALL, ET AL.                                CIVIL ACTION

VERSUS

JAMES M. LEBLANC, ET AL.             NO.: 3:13-cv-00368-BAJ-SCR

RULING AND ORDER

Before the Court are two additional motions filed by Defense Counsel E. Wade Shows, Amy L. McInnis, and Jacqueline B. Wilson (collectively "Shows Attorneys"), seeking even more clarification regarding the scope of the Show Cause Hearing set for Wednesday, March 12, 2014.[1] The first is the Shows Attorneys' **MOTION FOR GUIDANCE FROM THE COURT (Doc. 109),** requesting "that this Court order a status conference to give the parties guidance on how undersigned counsel will be able to obtain discoverable evidence from Magistrate Judge Riedlinger prior to the show cause sanctions hearing," (*id.* at p. 3). The second is a motion styled **REQUEST FOR THE TESTIMONY OF MAGISTRATE JUDGE STEPHEN C. RIEDLINGER (Doc. 111),** wherein the Shows Attorneys—evidently having found the answer to the question posed in their Motion for Guidance—explain the necessity of the Magistrate Judge's testimony in this matter, and request that Judge Riedlinger submit to a deposition "prior to the March 6th [sic]," (Doc. 113 at ¶ 8). This latest motion is accompanied by a subpoena

---

[1] Previously, the Court issued an Order detailing the scope of the Show Cause Hearing, as well as the procedures for collecting evidence to be employed in that Hearing. (Doc. 107).

"command[ing]" Judge Riedlinger "to testify at a deposition," (Doc. 113-1), as well as relevant excerpts from the U.S. Courts Guide to Judiciary Policy, (Doc. 113-2).

The Shows Attorneys' request for a status conference to discuss "obtain[ing] discoverable evidence" from Judge Riedlinger will be denied. (Doc. 109 at p. 3). This is because, quite simply, *any* evidence the Shows Attorneys might "obtain" from Judge Riedlinger is *irrelevant* to whether Mr. Shows, Ms. McInnis, and Ms. Wilson conducted themselves with honesty and candor. In these filings, the Shows Attorneys acknowledge—as they must—that at the time their clients modified Angola's Death Row Tiers, they were under an Order from *this* Court to "ensure that the . . . most accurate data can be collected," (Doc. 36 at p. 2). (Doc. 113 at ¶ 9 (discussing the scope of the Court's July 2, 2013 Order). By adding awnings and soaker hoses to certain Tiers, the prison officials deliberately disregarded this Order, with the express intent of manipulating temperatures in the cells under observation. (*See* Doc. 88 at p. 38). *Regardless* of what was discussed with the Magistrate Judge at the confidential settlement conference, the prison officials deliberately disobeyed this Court's *standing* order.

Instead of addressing their clients' recalcitrant behavior candidly, the Shows Attorneys attempted to lay blame at Judge Riedlinger's door, despite the fact that Judge Riedlinger lacked any authority whatsoever to alter this Court's standing order. First, at the July 31 pretrial conference, Mr. Shows implied that Judge

2

Riedlinger approved the modifications. (Doc. 88 at p. 14). Next, Ms. Wilson took the same position in her opposition memorandum to Plaintiffs' Motion for Sanctions, stating that "Magistrate Judge Riedlinger . . . indicated that he thought any good faith solutions would be appreciated." (Doc. 66 at p. 11). Finally, Ms. McGinnis persisted in this position *in open court*, which ultimately prompted the Court to inquire whether it was indeed her position that Judge Riedlinger ordered modifications to the Death Row Tiers. (Doc. 88 at p. 17). Ms. McGinnis did not answer the Court's question directly. (*Id.*). Instead, she obfuscated, eventually stating that the modifications to the Death Row Tiers were "mentioned in advance." (*Id.* at p. 18).

In short, the issue in this Show Cause Hearing as it relates to Judge Riedlinger is *not what* the Shows Attorneys believed their clients were authorized to do following their confidential settlement discussions; rather it is *why*, when confronted with the fact that their clients disobeyed this Court's standing order, the Shows Attorneys repeatedly shifted blame instead of addressing the problem candidly and forthrightly, as required of lawyers granted the privilege of admission to practice in federal court. *See* M.D. La. LR83.2.4; La. R. Prof'l Conduct 3.3, 3.4, 4.1, 8.3, 8.4.

In sum, because the content of the Shows Attorneys' discussions with Magistrate Judge Riedlinger is *irrelevant* to the disposition of this disciplinary

proceeding, the Shows Attorneys' Motion for Guidance (Doc. 109) will be denied. However, while noting that the Magistrate Judge's testimony is *not* relevant in this matter, and is, therefore, inadmissible at the Show Cause Hearing, the Court acknowledges that the Guide to Judiciary Policy reserves the issue of whether to respond to the Shows Attorneys' request for testimony from Judge Riedlinger to the "magistrate judge himself." *See U.S. Courts Guide to Judiciary Policy,* Vol. 20, Ch. 8 at § 840(b)(1).

Accordingly,

**IT IS ORDERED** that the Shows Attorneys' **MOTION FOR GUIDANCE FROM THE COURT (Doc. 109)** is **DENIED.**

Baton Rouge, Louisiana, this 13th day of February, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**