UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELZIE BALL, NATHANIEL CODE, AND JAMES MAGEE, | * * * | CIVIL ACTION NO. 13-368 |
| PLAINTIFFS | * * | |
| VS. | * * | |
| JAMES M. LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, BURL CAIN, WARDEN OF THE LOUISIANA STATE PENITENTIARY, ANGELA NORWOOD, WARDEN OF DEATH ROW, AND THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, | * * * * * * * * * | JUDGE: BAJ

MAGISTRATE: SCR |
| DEFENDANTS | * * | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO SET
ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988 AND
FED. R. CIV. P. 54(d)**

# TABLE OF CONTENTS

Page

I. PLAINTIFFS PREVAILED ON THEIR 8TH AMENDMENT CLAIM ................................. 1

II. PLAINTIFFS' CONSEL ARE ENTITLED TO THEIR STATUTORILY AUTHORIZED REQUESTED ATTORNEYS' FEES ........................................................ 4

    A. Plaintiffs Are The Prevailing Parties ............................................................. 4

    B. Given the "Lodestar" Calculation of Authorized Fees, Plaintiffs are entitled to the top end of the PLRA CAP ..................................................... 5

        1. The PLRA Rate Cap Applies Fees in this Motion .............................. 6

            a. The federal government sequester did not affect Plaintiffs' recoverable rate ........................................................ 7

        2. Plaintiffs' Counsel's Reasonable Market Rates Exceed the Cap. ................. 8

    C. The hours requested are reasonable. ........................................................... 11

        1. Time spent investigating Death Row conditions ......................... 13

        2. Time spent preparing the Complaint ............................................. 14

        3. Time spent in motions practice and discovery ............................. 14

        4. Time spent in court proceedings ................................................... 15

        5. Time spent on Post trial Work ....................................................... 15

    D. Counsel exercised appropriate billing judgment. ......................................... 17

    E. The Johnson Factors Weigh in Favor of an Upward Departure ....................... 17

            a. Time and labor required ........................................................ 18

            b. Novelty and difficulty of issues ............................................ 18

            c. Skill required to perform legal services ............................... 19

            d. Preclusion of other employment ........................................... 19

            e. Customary fee ....................................................................... 19

            f. Nature of fee ......................................................................... 19

            g. Time limitations imposed by the client or the circumstances ......... 20

            h. Results obtained ................................................................... 20

            i. Experience, reputation and ability of the attorneys ........................... 20

            j. Undesirability of the case ..................................................... 21

            k. Nature and length of the professional relationship with the clients ............................................................................... 21

            l. Awards in similar cases ......................................................... 22

            m. Johnson factors confirm lodestar amount and support an upward adjustment in the lodestar amount. ........................ 22

    F. Plaintiffs' Counsel Did not Duplicate Efforts .............................................. 23

III. Costs .......................................................................................................................... 24

IV. Conclusion ................................................................................................................. 26

NOW INTO COURT COME PLAINTIFFS Elzie Ball, Nathaniel Code, and James Magee, through undersigned counsel, to provide a memorandum in support of Plaintiff's *Motion to Set Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)*. Plaintiffs state as follows:

## I.   PLAINTIFFS PREVAILED ON THEIR 8TH AMENDMENT CLAIM

Plaintiffs filed the complaint in this lawsuit on June 10, 2013, following two years of investigation of heat conditions on Angola's Death Row tiers by counsel from the Promise of Justice Initiative (PJI).  This two year investigation involved numerous inmate interviews, public records requests, expert analyses of temperature and inmate health records, and extended negotiations with state officials. See Exhibit A: Montagnes Affidavit ¶¶ 8- 17.

As the investigation and development of claims in this lawsuit progressed, counsel from PJI sought the services of co-counsel.   PJI eventually turned to its own board and out-of-state counsel at Bird Marella, when pro bono counsel from local private firms was not forthcoming. See Ex. A ¶¶ 20-24.

Plaintiffs asserted claims under both the Eighth Amendment and the Americans with Disabilities Act and related statutes, stemming from the environmental conditions on the Death Row tiers and Plaintiffs' inability to find relief from these extreme conditions.  Temperatures recorded on the Death Row tiers in 2011 and 2012, based on readings from thermometers mounted to the walls of the tiers, regularly reached past 100 degrees.  Factoring in humidity, a major element of weather in South Louisiana, the "heat index" soared well higher, regularly reaching what the National Oceanic and Atmospheric Administration has characterized as the "Danger Zone," where prolonged exposure invites serious health risks including heatstroke and

death. Plaintiffs asked that the Court order the Defendants to develop a plan to lower the temperature and humidity on the Death Row tiers to safe levels.

Plaintiffs moved for a preliminary injunction eight days after filing the complaint. On June 24, this Court ordered that a hearing on the motion for preliminary injunction be held July 2, 2013. Counsel from PJI and Bird Marella spent the period from June 24 to July 2 diligently preparing for the hearing, including preparing experts Dr. Vassallo and Mr. Balsamo to testify, preparing to cross-examine the Defendants' witnesses, and marshaling evidence in support of Plaintiffs' claims, the need for injunctive relief, and refuting the contentions of the Defendants.

At the hearing on July 2, this Court deferred ruling on the preliminary injunction and instead ordered that a full trial on the merits be held beginning August 5, 2013 – just 35 days later. In the intervening month, the parties were to arrange for data to be collected from the Death Row tiers on 21 consecutive days.

This Court also encouraged the parties to pursue a possible settlement, including in the hours immediately following the hearing on July 2. Unfortunately, no settlement was reached.

Plaintiffs' counsel engaged a third expert, testing and balancing specialist David Garon of Consolidated Balancing Services, Inc., of Metairie, La., on July 18, 2013. Mr. Garon provided Plaintiffs' counsel with a proposal for the data monitoring ordered by this Court. When the parties subsequently agreed to use the experts proposed by Defendants for the data monitoring, Mr. Garon stayed on to monitor the data collection and advise Plaintiffs on mechanical cooling.

The data collection took place over three weeks, from July 15 to August 4, 2013. Counsel received the data at regular intervals throughout this period and devoted considerable time and energy to analyzing the data in preparation for trial. Discussion of Defendants' spoliation of the data and the related motions Plaintiffs filed under Fed. R. Civ. P. 37 appears in

Plaintiffs' *Memorandum of Law in Support of Plaintiffs' Motion to Set Attorneys' Fees and Costs Regarding Sanctions* (Rec. Doc. 104-1 at 1-9) and is not repeated here. In addition to trial preparation, Plaintiffs' counsel also engaged in written discovery and numerous depositions.

A trial on the merits was held August 5, 6 and 7, 2013. A site visit to Death Row by the Court was conducted on August 12, 2013. This Court issued a Ruling and Order as to the merits on December 19, 2013, finding all Defendants liable for violations of each Plaintiff's Eight Amendment protections and indicating that Plaintiffs' counsel should file its motion for attorneys' fees on a later date following entry of the final judgment (Rec. Doc. 87 at 102). The Court did not find Defendants liable for violations of the American with Disabilities Act. As discussed below, and as already recognized by the Court, Plaintiffs are nevertheless the prevailing parties for statutory fee shifting in this matter.

In the weeks following this Court's December ruling, Plaintiffs opposed Defendants' various efforts to prematurely seek appeal to the Fifth Circuit and filed the aforementioned motion to set attorneys' fees and costs regarding sanctions (Rec. Doc. 104). Subsequent time devoted to the sanctions matter, including attending a deposition and a Court hearing, has not previously been submitted in a fee request and is therefore requested herein.

In February and March 2014, Defendants submitted and Plaintiffs responded to a Heat Remediation Plan. Other activities included responses to the United States Department of Justice's Statement of Interest and proceedings related to the appointment of a Special Master, and Plaintiffs' motion to compel the payment of expert fees for depositions in light of Defendants' arbitrary refusal to remunerate Plaintiffs' experts for their time according to the experts' reasonable standard rates. Also in the Fifth Circuit, Plaintiffs in March opposed

Defendants' request to extend their briefing deadline, and in June opposed Defendants' motion to stay this Court's ruling pending the Fifth Circuit appeal.

On June 2, 2014, this Court entered final judgment in this matter and directed Plaintiffs to file the instant attorneys' fees motion on July 14, 2014.

## II.  PLAINTIFFS' COUNSEL ARE ENTITLED TO THEIR STATUTORILY AUTHORIZED REQUESTED ATTORNEYS' FEES

Plaintiffs are entitled to attorneys' fees in this action under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b).  This act provides in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  As discussed *infra* II. A, Plaintiffs prevailed in the instant litigation as to their Eighth Amendment claims under 42 U.S. C. § 1983 and this Court is thus authorized to award Plaintiffs a reasonable attorney's fee.

### A.  Plaintiffs Are The Prevailing Parties

Plaintiffs have prevailed in this matter as to the Eighth Amendment claims. The Supreme Court has articulated a "generous formulation" of the term "prevailing parties," defining it as parties that have "succeed[ed] on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit."  *Pederson v. La. State Univ.*, 912 F.Supp. 892, 926-27 (M.D.La. 1996) (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)).  *See also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791(1989)  (stating that a plaintiff is a "prevailing party" and eligible for fee award if it succeeds on "any significant issue in [the] litigation"); *Lefemine v. Wideman*, 133 S.Ct. 9, 11 (2012) (stating that a party "prevails . . . when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff); *Bailey v.*

*State of Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005) (citing *Farrar* standard); *Watkins v.*

*Fordice*, 7 F.3d 453, 456 (5th Cir. 1993) (citing *Farrar* standard).

Here, Plaintiffs prevailed because this Court found rights violations (Rec. Doc. 87 at 100,

"The Court concludes that the conditions of confinement at Angola's death row constitute cruel

and unusual punishment, in violation of the Eighth Amendment."); ordered the implementation

of injunctive relief to remedy those violations (Rec. Doc. 170, ordering implementation of

Defendants' Heat Remediation Plan); and later entered a partial judgment in favor the Plaintiffs.

(Rec.Doc. 175 "It is further ordered, adjudged, and decreed that judgment is hereby rendered in

favor of plaintiffs" ).  As such, Plaintiffs are entitled to recover fees and costs.

**B.      Given the "Lodestar" Calculation of Authorized Fees, Plaintiffs are entitled to the top end of the PLRA CAP[1]**

Reasonable attorneys' fees are the product of the hours reasonably expended multiplied

by the applicable hourly rate for the legal services, known as the "lodestar amount." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable hourly rate is based on the prevailing market

rates in the community for attorneys of comparable skill, experience, and reputation.  *Blum v.*

*Stenson*, 465 U.S. 886, 895 (1984).[2]

---

[1] Plaintiffs have endeavored wherever possible to not replicate arguments previously made Plaintiffs' *Motion To Set Attorneys' Fees And Costs Regarding Sanctions Pursuant To Rule 37(A)(5)(A) And This Court's Order*  and incorporate the applicable arguments by reference. (Rec. Doc. 104)

[2]. The Fifth Circuit has stated that, generally, "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits[.]" *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Watkins v. Fordice*, 7 F.3d at 458 (5th Cir. 1993).

In 2011the Fifth Circuit distinguished the situation where out of district counsel is necessary to the pursuit of civil rights cases. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-82 (5th Cir. 2011) ("out-of-district counsel may be entitled to the rates they charge in their home districts under certain limited circumstances"). The Fifth Circuit maintains that where local counsel is required to turn to out-of-district counsel because local lawyers would not participate in the case, the out-of-district counsel's home rates should be used to calculate the lodestar. *McClain*, 649 F.3d at 382 ("To fulfill the purpose of Section 1988 fee awards, while accommodating *Blum*'s and this court's focus on local forum rates for attorney fees, we hold that where, as here, abundant and uncontradicted evidence proved the necessity of [local counsel]'s turning to out-of-district counsel, the co-counsel's 'home' rates should be considered as a starting point for calculating the lodestar amount.") (citing *Blum*, 465 U.S. at 895).

A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 552. Reasonable hourly rates under § 1988 are the prevailing market rates "in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Where, as here, out-of-district counsel is required to litigate the relevant claims, out-of-district counsel's normal hourly rates should be calculated as part of the lodestar. *McClain*, 649 F.3d at 382. As such, Plaintiffs' out-of-district counsel should have their normal hourly rates be factored into the determination of their lodestar, while Plaintiffs' local counsel lodestar should use prevailing rates in the district. The rates requested by the attorneys in the instant matter are reasonable. *See* Exhibits B-F: Declarations of Schwartzmann ¶ 6, Howell¶ 10, Harrison ¶ 9, Schulman ¶ 6, Lash ¶ 6.

In the present analysis, the Prison Litigation Reform Act's cap on the recoverable rate for attorneys' fees in lawsuits brought by prisoners, discussed more fully *infra* II B.1., applies and limits the hourly rates that Counsel may recover. Although out-of-town counsel's rates in the instant motion are capped by the Prison Litigation Reform Act ("PLRA"), Plaintiffs respectfully submit that the fact that they would be entitled to their home-district rates absent the PLRA cap weighs in favor of awarding the full rate compensable under the PLRA.

### 1.     The PLRA Rate Cap Applies Fees in this Motion

The fee provision articulated in 42 U.S.C. § 1988(b) has been limited by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, which provides in relevant part:

> (d) Attorney's fees
>> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—
>>> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute

pursuant to which a fee may be awarded under section 1988 of this title; and

(B)
> (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

…

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel.

The Judicial Conference-approved rate for court-appointed counsel during 2012 and 2013 was $139 per hour.[3] Thus, under the PLRA, the hourly rate cap applicable to the instant motion for work performed in 2012 and 2013 is $208.50 per hour (150% of $139). Beginning in January 2014, the CJA rate increased to $141 per hour, so the hourly rate as capped by the PLRA for time in 2014 is $211.50. However, as argued in § II.E.M. *infra*, the Court can in its discretion offer a multiplier.

### a. The federal government sequester did not affect Plaintiffs' recoverable rate

The emergency reduction of the CJA cap that occurred in August 2013 as a result of the federal government shutdown did not affect the rates that are recoverable in this litigation. In an emergency move to preserve Federal Defender staffing in FY 2014, the Executive Committee of the Judicial Conference of the United States reduced hourly rates for court-appointed panel attorneys by $15 an hour from Sept. 1, 2013, to Sept. 30, 2014.[4] The letter from the Executive Committee outlining this change stated that it was a "temporary, emergency" reduction of the

---

[3] E-mail from Judy Gallant, Attorney Advisor, Defender Services Office, to Bonita Tenneriello, Attorney, Prisoners Legal Services (Mass.) (Jan. 13, 2014, 15:19 EST) ("[T]he authorized CJA hourly non-capital rate for fiscal years 2011, 2012, and 2013 was $139. . . . However, in January 2014, a one percent employment cost index (ECI) adjustment was approved, which increased the FY 2014 authorized rate from $139 to $141.").

[4] The temporary rate reduction for federal defenders was reversed as of March 1, 2014. *See* Judiciary Restores Pay Rates for Panel Attorneys, United States Courts (Feb. 13, 2014), http://news.uscourts.gov/judiciary-restores-pay-rates-panel-attorneys.

rates that the Judicial Conference had "otherwise authorized." The emergency at issue – the federal government sequester – was unrelated to payments to prisoners' lawyers, who are not paid by the Judicial Conference. Accordingly, the "otherwise authorized" rates referred to in the Executive Committee's letter should be considered still to be authorized for purposes of interpreting the PLRA fees limitations. The weight of authority holds that where the two are in conflict, the authorized rate adjusted by the Judicial Conference governs, rather than the rate actually paid. *See Hadix v. Johnson*, 398 F.3d 863 (6th Cir. 2005); *Webb v. Ada County*, 285 F.3d 829, 838-39 (9th Cir.), cert. denied, 537 U.S. 948 (2002); *Laube v. Allen*, 506 F.Supp.2d 969, 987 (M.D.Ala., Aug. 31, 2007); *Batchelder v. Geary*, 2007 WL 2427989, *5-6 (N.D.Cal., Aug. 22, 2007). *Contra, Hernandez v. Kalinowski*, 146 F.3d 196, 201 (3d Cir. 1998).

### 2. Plaintiffs' Counsel's Reasonable Market Rates Exceed the Cap.

Both local and out-of-state counsel's rates exceed the PLRA cap. Plaintiffs respectfully submit that counsel's customary rates are reasonable and would normally be fully recoverable absent the PLRA cap. Plaintiffs submit the following authorities for the reasonableness of counsel's customary rates in support of Plaintiffs' request that the full submission at PLRA rates be recovered in this matter.

First Plaintiffs' New Orleans-based attorneys' standard hourly rates are consistent with the hourly rates in recent fee awards in the Middle District of Louisiana for civil rights cases. *Advocacy Center v. Cain et al*., case no. 3:12-cv-00508 (M.D. La. 2012) (finding hourly rates of $350 and $275 for two attorneys to be reasonable where supported by affidavits); *Rushing v. Bd. of Supervisors of Univ. of La. Sys.*, 270 F.R.D. 259, 262 (M.D. La. 2010) (allowing an hourly rate of $300 and $120 for two attorneys); *Netherland v. City of Zachary, La.,* 2009 WL 3257360, at *2-3 (M.D. La. 2009) (setting the reasonable hourly rate at $255 per hour for

attorneys for "[p]revailing plaintiffs in claims for violations of constitutional rights.").[5]

Plaintiffs' hourly rates are consistent with market rates in both the Middle and Eastern districts of Louisiana and should be used in determining lodestar amounts, notwithstanding that the rate applicable to the instant motion is capped by the PLRA.

Second, counsel from Bird Marella, absent the PLRA cap, would be normally entitled to recover their standard hourly rates in their practice. *See, e.g., McClain*, 649 F.3d at 382.[6]

---

[5] Private sector cases in the Middle District also support the fee awards being requested in this case. Recent cases in the Middle District have held attorneys' fees requests of between $250 and $435 to be reasonable. *See, e.g., Labarge Pipe & Steel Co. v. First Bank*, 2011 U.S. Dist. LEXIS 96786 at *15 (M.D. La. 2011) (allowing attorneys' fees billed at rates of $195, $330, $350, $400, and $435 where defendants did not challenge the rates charged, but rather the number of hours.); *K&G Men's Co. v. Carter*, 2010 U.S. Dist. LEXIS, at *7 (M.D. La. 2010) ("$300 represents a reasonable hourly rate even for an attorney with moderate training and experience in intellectual property law."); *Reassure Am. Life Ins. Co. v. Cilano*, 2010 U.S. Dist. LEXIS 31973, at *8-9 (M.D. La. 2010) (allowing attorneys' fees of $195 and $375 per hour for "two experienced attorneys representing" a plaintiff insurance company).

Market rates in the Eastern District of Louisiana are also relevant here. The Court in *Stogner v. Sturdivant*, 2011 WL 6140670 (M.D. La., 2011) at *2 found:

> Since Katrina, the size of New Orleans and Baton Rouge has become more comparable, resulting in a similar legal market, and the undersigned therefore finds that the associate rates found reasonable in the New Orleans market during the post-Katrina period can therefore be applied to associates in this judicial district.

The federal court for the Eastern District of Louisiana has recently approved hourly rates that are within the range being sought by counsel in the instant case. *See, e.g., Hornbeck Offshore Serv., L.L.C. v. Salazar*, 2011 WL 2214765 (E. D. La. 2011) (finding $420 to be a reasonable rate for more experienced attorneys in the area); *Scott et al. v. Schedler et al.*, no. 2:11-cv-00926 (E.D.La. 2011) (awarding $400/hour to New Orleans-based counsel with over 30 years' experience); *Construction South, Inc. v. Jenkins*, 2011 WL 3892225 (E.D. La. Sept. 2, 2011) (awarding $350/hour for two partners with 36 and 30 years of experience); *Atel Mar. Investors, LP v. Sea Mar Mgmt., LLC*, 2011 WL 2550505 (E.D. La. June 27, 2011) (awarding $300 for partner with 35 years of experience; $250 for a partner with 11 years of experience); *Hebert v. Rodriguez*, 2010 WL 2360718 (E.D. La. June 8, 2010) (awarding $300/hour to partner with 33 years of experience); *Gulf Coast Facilities Mgmt, L.L.C. v. BG LNG Servs., L.L.C.*, 2010 WL 2773208 (E.D. La. July 13, 2010) (awarding $300/hour to attorneys with 17 years of experience).

[6] In *McClain*, the Fifth Circuit reversed and remanded an Eastern District of Texas court's calculation of the lodestar amount for attorneys' fees by applying Texas rates to the plaintiffs' California-based counsel. *See id.* at 382-384. The Fifth Circuit stated that the district court "legally erred in suggesting that local community rates are always required when out-of-district counsel are employed." *Id.* at 383. The Fifth Circuit made clear that "in the unusual cases where out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation." *Id.* (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir.1982)); *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.*, 50 F.3d 253, 259–60 (3d Cir.1995); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983); *Donnell v. United States*, 682 F.2d 240, 252 (D.C.Cir.1982)). Indeed, in prison litigation cases, courts have permitted such out-of-district adjustments precisely because of the complexity of the issues involved. *See, e.g., Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992) (allowing out-of-district rates because local counsel could not have handled this litigation and because of "the issues in prisoner civil rights cases

Plaintiffs' local counsel was required to turn to out-of-district counsel because local attorneys would not participate in this litigation, for several reasons: (1) the case was against the State of Louisiana, which a great many local firms represent in some capacity or another such that they were conflicted out of the present litigation even if they had wanted to work on it, (2) the case required initial investment of costs of $40,000 for experts and depositions, (3) the case contained difficult and novel factual and legal questions that would be litigated on behalf of death row inmates in Louisiana State Penitentiary, an obviously marginalized group of individuals with whom many attorneys are unwilling to work in prison rights litigation, and (4) the case did not seek damages and therefore there was no possibility of recovery of a portion of damages through a contingency fee arrangement. See Exhibit A ¶ 23, Exhibit F ¶ 5, Exhibit E ¶ 5, Exhibit D ¶ 13-14. Where in-district counsel is unavailable and unwilling to participate in the relevant litigation, courts have found that application of the out-of-district counsel's normal rates is warranted. *See, e.g.*, *Gates*, 987 F. 2d at 1405 (district court affirmed where it used out-of-district rates and evidence showed that in-district-counsel with sufficient experience and expertise to litigate prison rights case were not available).

In sum, there is ample evidence that out-of-district counsel was required and necessary to represent Plaintiffs in this litigation. This Court should use Plaintiffs' out-of-district counsel's normal rates in calculating the lodestar for those attorneys, notwithstanding the PLRA cap.

Finally, Plaintiffs also seek recovery of $85 per hour for law student interns who served as the paralegals in this litigation.[7] The intern hours sought by this motion are extremely limited.

---

are extremely complex and thus require experienced and sophisticated counsel").

[7] The U.S. Supreme Court has long held, in the context of fee-shifting statutes such as § 1988, "the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Richlin Sec. Service Co. v. Chertoff*, 128 S.Ct. 2007, 2014-15 (2008); *In re Continental Ill. Sec. Lit.*, 962 F.2d 566, 570 (7th Cir. 1992); *Harman v. Lyphomed*, 945 F.2d 969, 976 (7th Cir. 1991). Courts regularly treat the work of law student interns as comparable

While interns at both PJI and Bird Marella provided critical assistance at each juncture in the litigation, Plaintiffs only seek recovery for the time spent during the crucial trial preparation period and extensive investigation. Exhibit A ¶ 28-34.

There are hundreds of hours of law clerk time both during the investigation of Plaintiffs' claims and over the summer of 2013 for which, in the exercise of counsel's billing judgment, fees are *not* requested in the instant motion. *Id.;* Exhibit G: Affidavit of Nilay Vora ¶ 23.

### C.     The hours requested are reasonable.

A full compensatory fee "will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. at 435. Reasonably expended hours may be measured based on what could reasonably be billed to a paying client. *Id.* at 433. In turn, the determination of reasonableness looks at "the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1998).

Given the short duration of discovery preceding the three-day trial, only those tasks reasonably necessary to the litigation were possible. Thus, all hours expended in this litigation were reasonably necessary and those hours for which fees are herein requested are compensable. Nevertheless, Plaintiffs have excluded a number of categories of time from this submission. See Exhibits A ¶ 38-39, Exhibit G ¶ 17 Exhibit H: Affidavit of Elizabeth Compa ¶ 15, Exhibit I:

---

with paralegal work. *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) (awarding fees for summer law clerks); *Kelly v. Wengler*, 2014 U.S. Dist. LEXIS 44479 at 9 (D. Idaho, 2014) (same).

The requested rate of $85 per hour is consistent with law clerk rates in the Baton Rouge area because other civil rights attorneys in the area bill their paralegals at similar rates. *See, e.g.*, *Winget*, 2011 WL 2173840 (M.D. La. May 31, 2011) (holding rates of $95 per hour for paralegals to be reasonable); *Stogner*, 2011 WL 6140670 (M.D. La. Dec. 9, 2011) (relying on *Winget* to hold hourly rates of $95 for paralegals to be reasonable)*; Netherland*, 2009 WL 3257360, at *2-3 (M.D. La. 2009) (setting the reasonable hourly rate at $85 for paralegals and $70 for "legal assistants" reasonable for "[p]revailing plaintiffs in claims for violations of constitutional rights"). *See also* Exhibit M: Declaration of Elizabeth  Owen ¶ 2, Ex.B ¶ 7.

Affidavit of Jessica Kornberg ¶ 16 & 29; Exhibit J: Affidavit of Steve Sheckman ¶ 13.

Table A[8]

| Team Member | Raw hours count | Billing judgment reduction | Total hours sought in this mtn | Standard billing rate | Total sought without PLRA cap | Total sought with PLRA cap |
|---|---|---|---|---|---|---|
| Mercedes Montagnes | 1335.7 | 205.7 | 1130 | 225 | $ 254,250.00 | $ 236,079.60 |
| Elizabeth Compa | 975.9 | 126.4 | 849.5 | 200 | $ 169,900.00 | $ 169,900.00 |
| Nilay Vora | 619.2 | 56.9 | 562.3 | 350 | $ 184,205.00 | $ 116,703.45 |
| Jessica Kornberg | 85.3 | 16.5 | 68.8 | 310 | $ 21,328.00 | $ 16,485.45 |
| Mitchell Kamin | 201.2 | 24.9 | 176.3 | 550 | $ 96,965.00 | $ 37,239.75 |
| Steven Scheckman | 115 | 11.5 | 103.5 | 350 | $ 36,225.00 | $ 21,606.00 |
| Mary Katherine McCarthy | 230 | 64.3 | 165.7 | 85 | $ 14,084.50 | $ 14,084.50 |
| Alessandra Baniel-Stark | 386.25 | 80 | 306.25 | 85 | $ 26,031.25 | $ 26,031.25 |
| Elizabeth Cumming | 225.4 | 22.6 | 202.8 | 175 | $ 35,490.00 | $ 35,490.00 |
| Elizabeth Jordan | 177.5 | 17.75 | 159.75 | 85 | $ 13,578.75 | $ 13,578.75 |
| | | | | | | |
| | | | | | $ 852,057.50 | $ 687,198.75 |

Attorneys' fees requested in this motion are detailed in the above table, including the attorneys' standard hourly rates as well as their rates under the PLRA cap and reflecting the exercise of billing judgment as discussed in individual affidavits of counsel and *infra* §II. D.

These amounts are exclusive of those hours submitted with Plaintiffs' motions for

---

[8] In this Table, the raw hours count (column 2) does not include time spent on the sanctions matters. The total sought with PLRA cap amount (column 7) includes hours for 2013 and years prior at an hourly rate of $208.50 and the hours for 2014 at an hourly rate of $211.50.

sanctions under Rule 37, discussed in a previous motion for attorneys' fees (Rec. Doc. 104).

Should the Court decline to award those fees pursuant to that motion, total fee recovery would

increase to $ 753,775.00.

The hours expended by Plaintiffs' counsel were reasonable in light of the amount of work

required to litigate this case.[9]   Counsel's work included, among other matters, the following five

main undertakings:

### 1.        Time spent investigating Death Row conditions

The initial phase of the litigation involved investigating reports of extreme summer heat

on Death Row.  This involved Elizabeth Cumming and Mercedes Montagnes supervising interns

with several trips to Louisiana State Penitentiary, seeking records using the Public Records Act,

as well as attempting to communicate with the prison in order to improve the conditions, and

---

[9] Plaintiffs have provided contemporaneous time entries as recorded.  Additionally, Plaintiffs' counsel have undertaken a detailed review and cross-reference of time entries, correspondence, briefing, and conferred with each other to accurately estimate the amount of time spent on each of the tasks described in the contemporaneous time entries.  Thus, Plaintiffs' counsel have—to the greatest extent possible—used external information to verify the estimation of time spent on various tasks.  It is well established in this Circuit that contemporaneous time entries detailing individual tasks are not required for purposes of fee motions and that estimations of time for tasks is a reasonable basis for the award of attorney's fees.  *See, e.g.*, *F.D.I.C. v. Z & S Realty Co.*, 132 F.3d 1456 (5th Cir. 1997) (upholding grant of attorney's fees based on sworn testimony and stating that the Fifth Circuit "has held that [f]ailing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours") (quotations and citation omitted); *Dennis v. Warren*, 779 F.2d 245, 249 (5th Cir.1985) (A district court's award of attorney's fees under section 1988 will not be disturbed absent an abuse of discretion. . . . Although this Court has admonished counsel in previous cases that time records should be kept, we have not held that contemporaneous time sheets are indispensable.  . . .Without deciding the applicability of our local rule 47.8.1 to a district court proceeding, the rule provides that '[i]f the reasonableness of the hours claimed on the basis of time records becomes an issue, the applicant shall voluntarily make his time records available for inspection by opposing counsel and, if a dispute is not resolved between them, by the Court.' The district court evidently followed such a procedure, and we find no abuse of discretion.").

Trial courts in the Fifth Circuit have, under this precedent, permitted attorney's fee awards based on declarations swearing to the time spent reasonably prosecuting a particular matter.  *See, e.g.*, *S.E.C. v. AmeriFirst Funding, Inc.*, CIV.A.3:07-CV-1188D, 2008 WL 2185193 at *1-2 (N.D. Tex. May 27, 2008) ("The SEC's fee request is based on its estimate of 88 hours of legal work by its lead counsel, Jeffrey B. Norris . . . . Although Norris did not maintain contemporaneous billing records of his time, the SEC's fee application divides Norris's legal services into seven categories and includes a declaration in which Norris provides a conservative estimate of the hours of work he spent on each category of work. The Fifth Circuit has rejected the requirement that attorneys present contemporaneous time records of their work in order to recover attorney's fees.  . . .  The court finds that the SEC's declaration, supported by time estimates, is sufficient to establish the amount of hours reasonably expended on the contempt proceedings.").  Plaintiffs respectfully submit that this Court should similarly accept the estimates made by Plaintiffs' counsel because of the expedited schedule required by the extraordinary nature of the case.

avoid litigation. Exhibit A ¶¶ 8-11, Ex. K: Declaration of Elizabeth Cumming ¶ 9.

## 2. Time spent preparing the Complaint

The second phase of the litigation consisted of preparing the complaint. This work consisted of identifying the three named Plaintiffs; consulting at length with experts regarding conditions on Death Row with respect to their areas of expertise; reviewing thousands of heat logs obtained through a Public Records Act request; and extensive research, writing, and revision in developing the complaint. Ex. A ¶ 8-11; Ex. H ¶ 6.

During this phase, Attorneys Montagnes and Compa devoted substantial time to recruiting a law firm partner to co-counsel the litigation. The considerable number of hours devoted to seeking firm co-counsel, including in New Orleans, speaks to the necessity of engaging a firm based out of state. Ex. A ¶¶ 20-24. Fees for these hours are not sought here.

## 3. Time spent in motions practice and discovery

The third phase of litigation consisted of motions practice and discovery following the filing of the complaint. Plaintiffs filed a Motion for Preliminary Injunction (Rec. Doc. 12) and a Motion for Expedited Hearing (Rec. Doc. 13). Plaintiffs filed a Response to Defendants' Motion to Strike Exhibits (Rec. Doc. 20), and a Motion to Appoint Third Party Expert per this Court's order (Rec. Doc. 29). The parties together filed a Joint Motion for Protective Order (Rec. Doc. 42). In advance of the filings, extensive negotiations took place between the parties.

Plaintiffs also filed Motions for Writ of Habeas Corpus for Plaintiffs to appear at trial (Rec. Docs. 45-47) and a Motion to Request Judicial Notice Control (Rec. Doc. 55).

A number of filings relating to the spoliation of evidence and withholding of discovery information for which Defendants were sanctions – comprising Plaintiffs' brief on the reliability of USRM data (Rec. Doc. 61), Plaintiffs' Motion for Evidentiary Sanctions regarding costs (Rec.

Doc. 62), and Plaintiffs' Motion for Imposition of Sanctions for Defendants' Spoliation of Evidence (Rec. Doc. 63) – were addressed in a separate fee motion and are not included in the instant fee request (*See* Rec. Doc. 104).

Following the trial, Plaintiffs filed a Response in Opposition to Defendants' Motion for Leave to Remove Awnings (Rec. Doc. 81).

These motions were all filed within the span of about two months and commanded an intensive commitment of time and attention for all Plaintiffs' counsel, as described in the attached affidavits. Ex. G ¶ 9.

Following this Court's ruling and order in December, Plaintiffs filed a Response in Opposition to Defendants' Motion for Expedited Hearing on Motion for Entry of Final Judgment (Rec. Doc. 93) and Defendants' Motion for Entry of Final Judgment (Rec. Doc. 99).

Plaintiff's counsel also took part in extensive discovery between the parties which required several conferences, written discovery requests and responses, and numerous depositions on both sides.

### 4. Time spent in court proceedings

A concurrent phase of the litigation was spent in proceedings in this Court, consisting of the July 2 hearing on Plaintiffs' motion for preliminary injunction; a July 12 status conference; settlement negotiations held on July 25; a July 31 pretrial conference; and a two-and-a-half day trial from August 5-7, 2013. Counsel also held a phone conference with this Court on August 9, 2013, to discuss the upcoming site visit. Subsequently, this Court held two more hearings on March 12, 2014, and April 30, 2013.

### 5. Time spent on Post trial Work

Counsel has also engaged in ongoing monitoring of death row conditions including site

visits with the Court, visiting clients to update them on the progress of this matter, working on Fifth Circuit matters, and conferring with the special master among other things. Counsel has also prepared the instant motion.

The Fifth Circuit recognizes that attorneys may seek fees earned in seeking payment of fees in cases governed by the PLRA. "[I]t is well settled that fees-on-fees are recoverable under § 1988." *Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001) (citing *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985)). Citing the Third Circuit, the *Volk* Court stated:

> '[i]f Congress did not intend for attorneys to be fully compensated for their work on civil rights claims for prisoners, Congress needed to explicitly express an intent to change the established construction to authorize the diminishment of actual fees by not compensating attorneys for time . . . spent proving the right to attorney's fees.' We acknowledge that the language of § 1997e(d) is not identical to that of § 1988(b), yet we are comfortable with the Third Circuit's conclusion that there is no material difference between the language of these two provisions. Accordingly, we join that circuit in holding that fees-on-fees are "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and therefore recoverable under § 1997e(d).

*Volk v. Gonzalez*, 262 F.3d at 536 (quoting *Hernandez v. Kalinowski*, 146 F.3d 196,199-201 (3d Cir 1998)).

This analysis underscores the important public policy concerns supporting attorneys' fees in prison cases. Absent the ability to recover fees for their time, including time spent proving the right to attorneys' fees, it would be very difficult for attorneys to take on cases seeking to advance the rights of indigent and marginalized people. Denial of fees-on-fees would dilute the award that plaintiff's attorneys are statutorily authorized to recover, further discouraging attorneys from bringing these difficult cases. *See, e.g.*, *Gagne v. Maher*, 594 F. 2d 336, 344 (2d Cir. 1979); *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978). Attorneys who seek to vindicate fundamental constitutional rights on behalf of disadvantaged groups such as prisoners should be fully compensated for that work.

**D.      Counsel exercised appropriate billing judgment.**

Counsel has carefully documented the time directly and reasonably incurred in proving an actual violation of the Plaintiffs' rights, and has made "a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The exercise of billing judgment is reflected in the affidavits and incorporated timesheets or billing records of all attorneys and law student interns. *See Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988); *see also Harkless v. Sweeny Indep. Sch. Dist., Sweeny, Tex.*, 608 F.2d 594,597 (5th Cir. 1979).

Counsel respectfully note that due to the fast-paced timeframe of this litigation over the summer of 2013, Counsel devoted a significant number of hours to the litigation in a short period of time, including stretches of labor-intensive days exceeding twelve hours.  Counsel by necessity adopted strategies to economize attorney time spent by, for instance, triaging team members when simultaneous demands arose, attempting to resolve disputes with Defendants amicably wherever possible, and delegating assignments to summer law clerks or paralegals when appropriate.  Plaintiffs had no interest in expending work on this action that was redundant or not reasonably necessary to advance the litigation.  *See infra*, § II.F.

Moreover, Counsel has omitted and is not seeking to recover for the dozens of hours spent seeking law firm co-counsel or media outreach.  Where applicable counsel has reduced long stretches of time to account for inefficiency; any educational time spent learning for this matter; as well as an off the top percentage of time to account for inefficiencies and administrative work. See Ex. A ¶ 38-390; Ex. G ¶ 17; Ex. H ¶ 15; Ex. I ¶ 16 & 29; Ex J ¶ 13.

**E.      The  Johnson Factors Weigh in Favor of an  Upward Departure**

The lodestar amount, as discussed *supra* in § B is presumptively reasonable. *Watkins*, 7

F.3d at 457. It may, however, be adjusted based on twelve factors that the Fifth Circuit enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974) ("the *Johnson* factors"). These factors are detailed below. While Plaintiffs acknowledge the cap on attorneys' fees mandated by the PLRA as previously discussed, Plaintiffs respectfully submit that the *Johnson* factors support Plaintiffs' request for attorneys' fees at the top of the PLRA capped range.

### a.      Time and labor required

The time and labor required in the instant litigation inform evaluation of the lodestar amounts, and in considering them, this Court "should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717. Counsel expended significant time and effort to bring a claim against state officials on behalf of death row prisoners. The time and effort required to investigate the conditions on Death Row, work with clients in a maximum-security setting, and litigate the lawsuit within an expedited timeframe is scarcely represented by the $208.50 (or since 2014, $211.50) PLRA-capped hourly rate for attorneys.

### b.      Novelty and difficulty of issues

While the questions presented in this litigation are not entirely novel, they were difficult for several reasons. First, ascertaining the actual temperature and humidity conditions on the Death Row tiers proved difficult both due to the Defendants' obstruction and because measuring and electronically recording at regular intervals both temperature and humidity conditions required sophisticated equipment. This presented a challenge in the fact investigation. Second, Plaintiffs' claims are largely health-related and as such bear some complexity, requiring both medical expertise and the review of extensive documentation. Finally, litigation which involves

clients who are not only incarcerated but on death row presents challenges in negotiating with ongoing criminal cases, and simple logistical issues which make visiting and communicating with clients very difficult.

### c. Skill required to perform legal services

The legal services involved in this action demanded a high level of skill, including expertise in constitutional law, and capacity to conduct complete discovery over the course of four weeks followed immediately by the trial. While the Plaintiffs' attorneys have varying levels of experience, each applied their skill and energy to the greatest extent possible in each task. Plaintiffs submit that the unusual and complex nature of this litigation demanded exceptional intellect, creativity, and advocacy skill in advancing Plaintiffs' claims.

### d. Preclusion of other employment

While litigating this action, because of the significant time demands it entailed, especially over the summer of 2013, counsel were precluded from taking on other work and cases. "This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. In this case, counsel was unable to accept other work due to the demands of this case, which for some counsel included foreclosing possibly more lucrative cases due to its commitment to its clients in this action.

### e. Customary fee

Counsel's standard hourly rates are discussed *supra* at § II. C

### f. Nature of fee

Counsel has received no compensation for this matter. It has been undertaken on a purely

contingent basis; thus this factor weighs heavily in favor of the Plaintiffs' attorneys' fees motion.

### g. Time limitations imposed by the client or the circumstances

The time limitations imposed by the circumstances of the litigation as well as the remote location of and difficulty in accessing the Plaintiff clients in this litigation were significant. The heat conditions on Death Row during the summer are a matter of urgency. Counsel brought this litigation as early as was reasonably possible in 2013 and sought expedited consideration of the matter in light of the urgent nature of the problem. From the filing of the Complaint to the conclusion of the full trial on the merits, less than two months transpired.

*Johnson* takes into account the cost of working under expedited time constraints on an urgent matter, holding that "[p]riority work that delays the lawyer's other legal work is entitled to some premium." 488 F. 2d at 718. Nearly all of the work performed in this litigation in summer 2013 was "priority work" insofar as it demanded timely attention and considerable commitments of time and energy.

### h. Results obtained

The Court should consider the results obtained in evaluating the lodestar amounts. "[T]he most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." *Migis v. Pearle Vision, Inc.,* 135 F. 3d 1041, 1047 (5th Cir. 1998) (internal quotations omitted). As discussed *supra §*1, Plaintiffs prevailed on their Eighth Amendment claims in this matter, and in doing so vindicated a fundamental constitutional right while achieving significant injunctive relief that materially altered Plaintiffs' circumstances.

### i. Experience, reputation and ability of the attorneys

Plaintiffs' counsel in this litigation are highly reputable and capable attorneys with varying levels of experience. The more experienced attorneys, Mitchell Kamin and Steven

Scheckman, have been practicing for 20 and 35 years respectively. *See* Ex. I ¶¶ 18-21; Ex. J ¶¶ 4-7. They are both extremely esteemed within their legal communities. Ex. F ¶ 4; Ex. E ¶ 4; Ex. C ¶¶ 7-8. Attorneys Jessica Kornberg, Nilay Vora, Mercedes Montagnes, and Elizabeth Compa have been practicing in the range of seven, five, five, and three years respectively. Ex. I ¶3; Ex. G ¶ 3; Ex. A ¶ 2;Ex. H ¶ 3. They are also skilled and reputable within their communities. *See* Ex. F ¶ 4; Ex. E ¶ 4; Ex. C ¶¶ 7-8; Ex.B ¶ 5; Ex.C ¶¶ 4-5.

### j.    Undesirability of the case

Plaintiffs submit that this action is near to a textbook example of an undesirable case. Public disdain for individuals on Death Row, combined with the litigation constraints imposed by the Prison Litigation Reform Act ("PLRA") and the time and expense involved in traveling to Angola's rural location, contributed to Plaintiffs' counsels' inability, despite diligent effort, to find local firm counsel to litigate the action.

Litigation of prison reform cases has long been recognized to be undesirable litigation when viewed from the perspective of an economically rational private attorney. *See, e.g.*, *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) ("The predominant reason institutional reform plaintiffs usually have difficulty finding counsel, as the Supreme Court observed in connection with contingent-fee arrangements, is that 'in any legal market where the winner's attorney's fees will be paid by the loser . . . attorneys [are likely to] view [the] case as too risky (i.e., too unlikely to succeed).'") (citing *City of Burlington v. Dague,* 505 U.S. 557, 564 (1992)).

### k.    Nature and length of the professional relationship with the clients

Counsel began meeting with men on Death Row more than two years ago to investigate reports of extreme heat conditions. They have worked with Plaintiffs for roughly a year and a half. In carrying out this work, Counsel have made repeated trips to Angola (especially in

summer 2012) to meet with Plaintiffs and carry out other tasks of the litigation, and

communicated by mail and telephone with Plaintiffs regularly, in addition to arranging

unmonitored phone calls during the active period of the litigation.

**l.     Awards in similar cases**

An extensive discussion of this topic is contained in §II.B but in a recent holding by this

Court the Court awarded rates of $350.00 and $275.00. *Advocacy Center v. Cain et al.*, case no.

3:12-cv-00508 (M.D. La. 2012).

**m.     The Johnson factors confirm the lodestar amount and support an upward adjustment.**

In light of the previously discussed factors, the lodestar amount for each attorney and

paralegal is a fair and justified remedy to award to Plaintiffs.  Because several of the attorneys'

lodestar amounts exceed, in some cases significantly, the rate cap imposed by the PLRA,

Plaintiffs respectfully submit that the Court should consider a multiplier or upward adjustment of

the capped PLRA rates.  At least two districts have found that such multipliers can be used to

exceed the capped rates where the performance of counsel merits. *See* Kelly v. Wengler, 2014

U.S. Dist. LEXIS 44479 at 28-30 (D. Idaho, 2014) (Section 1997(e)(d)(3) of the PLRA

"suggests not that the average hourly rate of the final fee cannot exceed an overall cap, but rather

that the initial lodestar calculation cannot use, or be 'based on,' an hourly rate that starts above

the PLRA cap. Where a fee award is multiplied upward to account for factors not subsumed in

the lodestar calculation, it is still 'based on' the initial lodestar fee rate; the fee is increased from

that base point to ensure reasonable compensation of counsel in those very narrow circumstances

when the lodestar undervalues counsel. To read the statute as setting an absolute maximum

arguably eliminates the well-established enhancement framework in § 1988 litigation, a drastic

step."); *Ginest v. Bd. of County Comm'rs*, 423 F. Supp. 2d 1237 (D. Wyo. 2006); *Skinner v.*

*Uphoff*, 324 F. Supp. 2d 1278 (D. Wyo. 2004).

Plaintiffs respectfully submit that an upward adjustment is warranted here because of the extraordinary results achieved, and the expedited time frame in which they were achieved. *See, e.g.*, *Ginest*, 423 F. Supp. 2d at 1240 (awarding 25% enhancement where counsel achieved "excellent results" by obtaining "substantial long-term relief that has resulted in a remedial plan designed to address and provide for medical care and like concerns for inmates who are incarcerated"); *Kelly*, 2014 U.S. Dist. LEXIS 44479 at 28-30 (awarding multiplier of 2.0 and 1.3 over lodestar amount despite PLRA cap where counsel "achieved excellent results for their clients under extreme time pressure and with very limited resources" including findings of contempt and non-compliance with court orders by high-ranking prison officials). Additionally, Plaintiffs note that this matter has sought exclusively injunctive relief, another factor that courts have found favors enhancement. *See Kelly*, 2014 U.S. Dist. LEXIS 44479 at 28-30 (finding enhancement multiplier of 2.0 and 1.3 justified because prisoner plaintiffs "seeking counsel for injunctive relief lawsuits face significant difficulty in finding such counsel, and that current counsel were likely the only attorneys willing to accept their case"); *Gomez v. Gates,* 804 F.Supp. 69, 78 (C.D.Cal.1992).

## F.     Plaintiffs' Counsel Did not Duplicate Efforts

In this litigation, the legal team has made concerted efforts to efficiently divide the work in order to avoid repetition or any unnecessary time expended. Indeed, due to the unusually short timeframe of discovery in this litigation, it was essential for the team to prioritize the most urgent tasks and maximize each person's effectiveness, paralegals as well as attorneys. Counsel divided up research tasks as they arose. In preparing filings, counsel assigned portions of each filing to write and other team members edited these drafts. Whenever possible, attorney work was

delegated to less experienced members of the team. The attached attorney affidavits discuss the specific tasks performed by each member of the legal team including the law student interns under the supervision of Ms. Montagnes.

## III.  Costs

Plaintiffs are also entitled to recover reasonable costs pursuant to 42 U.S.C. § 1988. These costs are discussed below and in the attached Bill of Costs.  Exhibit L. In this case, Plaintiffs were careful to meticulously document expenditures associated with the litigation. Plaintiffs seek compensation for $87,539.52. Ex. G ¶ ¶ 23-24; Ex. A ¶ ¶ 47-54.

Table B

| Cost category | Amount |
|---|---|
| Fees of the Clerk | $    1,428.00 |
| Service of Process | $      245.10 |
| Transcripts obtained | $    8,780.82 |
| Printing disbursements | $    4,556.94 |
| Witness fees | $      177.61 |
| Copies necessary for case | $    2,398.33 |
| Other costs | $  69,952.62 |
| | **$   87,539.42** |

Plaintiffs also incurred a total of $1428.00 in clerk fees which included $400 filing fee; $300 in fees associated with *pro hac vice* admission in the middle district, and $728.00 for Fifth Circuit admissions.

Plaintiffs incurred a total of $245.10 worth of costs to serve the complaint, subpoenas, and the Preliminary Injunction.

Plaintiffs paid court reporters $8780.82 for deposition and Court transcription costs.

Plaintiffs have paid Dr. Susi Vassallo $8000 for (1) ten hours of document review, discussion, temperature analysis, and report writing at $350 per hour, and (2) ten hours of expert report preparation, testimonial preparation, and review of evidence at $350 per hour and two

hours of court time on Aug. 6, 2013, at $500 per hour.  Plaintiffs have also reimbursed Dr. Vassallo for $1140.77 in travel expenses.

Plaintiffs have paid Mr. Jim Balsamo $9.975.02 for (1) 50.5 hours of reviewing literature and documents (including extensive review of Plaintiffs' heat index charts), preparing expert reports, and meeting with counsel at $125 per hour; (2) 6.17 hours of correspondence with counsel at $125 per hour; and (3) two days of trial attendance on Aug. 5 and 6, 2013, including giving testimony, plus $266.27 in travel, hotel and meal expenses.

Plaintiffs have incurred $11,519.50 in fees owed to Mr. David Garon, not including the amount requested in *Motion To Set Attorneys' Fees And Costs Regarding Sanctions Pursuant To Rule 37(A)(5)(A) And This Court's Order* (Rec. Doc. 104).  Plaintiffs also paid $255 in travel costs.

Plaintiffs have an outstanding invoice from consultant Peter Jackson $19000, for 95 hours of work.  Of these hours, 23.75 were devoted to sanctions matters and are addressed in Plaintiffs' motion for fees as to sanctions (See Rec. Doc. 104 at 29).  Mr. Jackson's other 71.25 hours were devoted to non-sanctions-related data analysis and development of demonstrative exhibits and are billed at $200 per hour. Plaintiffs are requesting $14,250.00 for Mr. Jackson. Costs for printing, totaled $4556.94.27 and included Kinko's and internal printing; copy costs totaled $2388.34 and included for reproductions and producing the benchbooks.

Plaintiffs spent $49.61 for the witness fee and $128 for deposition fee plus mileage for witness Frank Thompson.

Other costs included courier costs to get the benchbook to the Court and Defense Counsel totaled $400.00. Travel and meals totaled $17,175.17 which included airfare, hotel accommodation, travel to Angola, and meals for the legal team and experts.  Research and

investigative costs include $4845.87 in costs for telecommunications and Westlaw research; $2,548.25 for public records request fees, $26.30 for costs to obtain a legislative record of a bill in research, $72.42 for office supplies purchased during trial, and $42.40 worth of charges on pacer, and $1,352.69 worth of secures charges for phone calls with clients.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs hereby respectfully request that the Court award attorneys' fees and costs in this matter at $687,198.75 in fees and $87,539.52 in costs, the event that is does not upward depart or multiply the rates.

Date: July 14, 2014

Respectfully submitted,

/s/ Mercedes Montagnes
Mercedes Montagnes, La. Bar No. 33287 (Lead Counsel)
Elizabeth Compa, La. Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378
Email: mmontagnes@thejusticecenter.org

Mitchell A. Kamin, Ca. Bar No. 202788
Jessica C. Kornberg, Ca. Bar No. 264490
Nilay U. Vora, Ca. Bar No. 268339
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks & Lincenberg, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Tel. (310) 201- 2100
Fax (310) 201- 2110

Steven Scheckman, La. Bar No. 08472
Schiff, Scheckman, & White LLP
829 Baronne Street
New Orleans, Louisiana 70113
Tel. (504)581-9322
Fax (504)581-7651
Email: steve@sswethicslaw.com

CERTIFICATE OF SERVICE

I do hereby certify that on July 14, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Mercedes Montagnes
MERCEDES MONTAGNES, LSBA #33287