UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELZIE BALL, NATHANIEL CODE, | * | CIVIL ACTION NO. 13-368 |
| AND JAMES MAGEE, | * | |
| | * | |
| PLAINTIFFS | * | |
| | * | |
| VS. | * | |
| | * | |
| JAMES M. LEBLANC, SECRETARY OF | * | JUDGE: BAJ |
| THE LOUISIANA DEPARTMENT OF | * | |
| PUBLIC SAFETY AND CORRECTIONS, | * | |
| BURL CAIN, WARDEN OF THE | * | |
| LOUISIANA STATE PENITENTIARY, | * | MAGISTRATE: SCR |
| ANGELA NORWOOD, WARDEN  OF | * | |
| DEATH ROW, AND THE LOUISIANA | * | |
| DEPARTMENT OF PUBLIC SAFETY | * | |
| AND CORRECTIONS, | * | |
| | * | |
| DEFENDANTS | * | |
| | * | |

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO SET ATTORNEYS' FEES

NOW INTO COURT COME PLAINTIFFS Elzie Ball, Nathaniel Code, and James Magee, through undersigned counsel, to provide a memorandum in support of Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' *Motion to Set Attorneys' Fees*.

This Reply addresses Defendants' opposition, which is full of inaccuracies and conclusory allegations regarding the nature of Plaintiffs' work including the division of labor, the attorney-client relationship, and even the procedural history of the case. These are arguments are without merit. Further, despite Defendants' strenuous objections to time spent on this matter, much of that time was expended in response to a pattern of Defendants' untimely and intransigent responses at both the investigation and discovery phases of this litigation.

# TABLE OF CONTENTS

I. The hours for which Plaintiffs seek to recover were reasonable ........................................... 3

   A. Plaintiffs exercised appropriate billing judgment ...................................................... 4

   B. Plaintiffs' time entries are not vague. ...................................................................... 5

   C. Plaintiffs are not seeking to recover for administrative tasks. ............................. 8

   D. The investigation phase of this litigation was required. ........................................ 8

   E. Law student intern time is recoverable. ................................................................. 12

   F. Plaintiffs did not duplicate efforts. ........................................................................ 12

II. The rates sought for each attorney are reasonable ................................................. 15

   A. The PLRA cap is calculated based on the CJA authorized rate. ......................... 16

   B. Out-of-State Counsel were necessary ................................................................... 17

   C. Defendants misapprehend the Johnson factors. ................................................... 17

III. Plaintiffs' costs are reasonable .............................................................................. 18

   A. Plaintiffs attach documentation not previously furnished. .................................. 19

   B. The costs for which Plaintiffs previously submitted documentation were directly related to this litigation. ............................................................................................. 19

IV. Conclusion ............................................................................................................. 22

## I. THE HOURS FOR WHICH PLAINTIFFS SEEK TO RECOVER WERE REASONABLE

Defendants devote much of their opposition to alleging that the hours Plaintiffs seek are unreasonable because the time entries documenting these hours are "vague, excessive, block billed, duplicative and unnecessary." Opp. at 4.[1] For the reasons discussed below and the original *Motion to Set Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)* (the "Motion for Attorneys' Fees"), Doc. 187-1, the hours requested are reasonable.

Defendants also argue that this litigation is utterly ordinary, requiring far less work than what Plaintiffs put into it. Defendants make repeated attempts to undermine the efforts expended on this litigation. *See, e.g.*, Opp. at 20 ("This case was like any other…").[2] Defendants make several bizarre suggestions including that Mr. Scheckman could have handled this litigation alone (Opp. at 27)[3]; that Mr. Kamin and Mr. Vora had no reason to travel to Louisiana or appear at trial (Opp. at 29); or even suggesting that the Plaintiffs should have co-counseled with its affiants (Opp. at 37-8)[4] or the firms "a quick internet search" turned up for Defendants. Defendants' judgment of how Plaintiffs *should* have litigated this matter should not supplant Plaintiffs' legitimate interest in recovering fees for the work they *in fact* expended. "That defense counsel spent significantly less time on this case than did counsel for the plaintiffs is

---

[1] Plaintiffs have explained why some entries were block billed, and have made diligent effort to mitigate them. *See* Doc. 187-2, ¶¶ 41-43; Doc. 187-13, ¶¶ 14-15; Doc. 187-16, ¶¶ 13-14; Doc. 187-18, ¶¶ 12-13. Moreover, "[w]hile block billing creates impediments to the analysis of the attorney's fee bill, the Supreme Court has indicated that it is not a basis for refusing to award attorney's fees." *Williams v. Traylor-Massman-Weeks, LLC*, 2014 U.S. Dist. LEXIS 63740 (E.D.La. Jan. 27, 2014), citing *Hensley*, 461 U.S. at 437, n.12.

[2] By way of illustrating the tenuous nature of this argument, Defendants' own appellate brief in this case requests oral argument based on the "complexities" of the litigation. Case no. 14-30067, Doc. 00512724414 at iii.

[3] Mr. Scheckman's discussion of his narrow role of developing strategy and arguments in the litigation in his initial affidavit make clear this suggestion is without merit. Doc 187-23 at ¶¶10-11. See also Ex. 1 at ¶ 9.

[4] Defendants' assumption that Plaintiffs did not discuss co-counseling with Ms. Howell or Ms. Schwartzmann is incorrect.

irrelevant so long as all compensated work was necessary and performed in an expeditious manner." *Harkless v. Sweeny Indep. Sch. Dist.*, 608 F.2d 594, 598 (5th Cir. 1977). While counsel may disagree about the import of the instant litigation, it is disingenuous for Defendants to characterize this litigation as run-of-the-mill.

### A. Plaintiffs exercised appropriate billing judgment.

Defendants' assertion that Plaintiffs did not exercise billing judgment (Opp. at 6), ignores the explicit discussion of the exercise of billing judgment in the Motion for Attorneys' Fees and accompanying affidavits and timesheets.[5] Defendants state that "[a]n attorney's affidavit, without more, is insufficient to demonstrate billing judgment," Opp. at 6, citing *Cashman Equip. Corp. v. Rozel Operating Co.*, 2014 U.S. App. LEXIS 10009 (5th Cir. 2014). However, *Cashman* makes no such assertion, in fact stating, "Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours." *Cashman* at *14, quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002).[6] Plaintiffs have done just that, explaining in affidavits what hours they were eliminating in the exercise of billing judgment and submitting timesheets documenting the hours expended.[7] Defendants offer no authority to support their contention that reducing the number of hours by a percentage is inappropriate. Opp. at 6. In fact, to Plaintiffs' knowledge, this is standard practice. As Plaintiffs' affidavits detail, the attorneys for Plaintiffs exercised their billing judgment *both* by

---

[5] Doc. 187-1 at 17; Doc. 187-2 at 7-8; Doc. 187-6; Doc. 187-13 at 3-4, 7-8; Doc. 187-16 at 4; Doc. 187-17; Doc 187-18 at 4-5, 7-8; Doc. 187-23 at 6.

[6] Defendants state, "The remedy for failing to exercise billing judgment is to reduce the hours awarded *and* exclude hours that were not reasonably expended," citing *Hensley*, 461 U.S. 434. However, *Hensley* actually states, with respect to the exercise of billing judgment, that the district court "should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* The *Hensley* Court's reference to reducing the award is made in the context "where the documentation of hours is inadequate." *Id.* at 433.

[7] Doc. 187-2 at 7-8; Doc. 187-6; Doc. 187-13 at 3-4, 7-8; Doc. 187-15; Doc. 187-16 at 4; Doc. 187-17; Doc 187-18 at 4-5, 7-8; Doc. 187-20; Doc. 187-21; Doc. 187-23 at 6; Doc. 187-24.

eliminating specific categories of time related to the litigation, *see, e.g.*, Doc. 187-2 at 7, *and* by deducting an overall percentage, *see, e.g.*, Doc. 187-2 at 8. Plaintiffs' Motion for Attorneys' Fees submissions detailing their exercise of billing judgment are sufficient to support the request for fees.

**B.      Plaintiffs' time entries are not vague.**

Defendants argue that Plaintiffs' time entries are "impermissibly vague." Opp. at 7. First, Defendants suggest that there is no way to know whether Plaintiffs' time entries, particularly with respect to the records of Ms. Montagnes and Ms. Compa, "demonstrate how the time was spent beneficially on *this* litigation." *Id.*, *see also* Opp. at 13, 19.[8] Defendants' implication that Plaintiffs have submitted time entries related to other litigation is unfounded. Plaintiffs' affidavits affirm that the time entries submitted to the Court were entirely and exclusively devoted to the instant litigation. *See* Docs. 187-2, 187-13, 187-16, 187-18, 187-23. Plaintiffs submitted this documentation as officers of the Court and Defendants put forth no legitimate reason that these submissions should be questioned. However, in an effort to be reasonable, Plaintiffs detail their billing method in an accompanying affidavit. Ex. 1, ¶¶ 2-6.

Next, Defendants make scattered objections to specific time entries. Plaintiffs will address these each in turn. However, Plaintiffs note that the time entries to which Defendants object and which they characterize as "grossly vague," Doc. 199-2 at 19, are in keeping with standard billing practice, and Plaintiffs attach herewith an example of Defendants' own timekeeping records which illustrates that the entries Plaintiffs have made contain as much detail

---

[8] Defendants cite *Kellstrom*, 50 F.3d at 325, and *Webb*, 471 U.S. 234, in reference to their incorrect assertion that Plaintiffs have requested fees related to other litigation. Plaintiffs note that neither of these cases actually concerned any sort of scenario that Defendants suggest exists here, but rather merely note the standard language in the context of attorneys' fees that compensated time was "reasonably expended on the litigation."

as those Defendants submit to their clients and replicate many of the alleged deficiencies.  Ex. 2.[9]

Further, to the extent a given timekeeping entry might appear to be vague, when viewed in the

context of the expedited timeframe of this litigation, it is clearly reasonably detailed and related

to the instant litigation.

Defendants first object to Plaintiffs' entries that refer to people by their initials or using

terms such as "clients," "complainants" or "advisors."  Opp. at 7-11.  Such entries are not

impermissibly vague;[10]  the "Task" column in the timesheets of Ms. Montagnes and Ms. Compa

provide the context of such entries.[11]  Plaintiffs' use of initials in their time entries and the fact

that not every time entry includes a full and explicit description of the topics discussed reflect in

part the exercise of caution not to divulge the substance of privileged conversations or strategy to

opposing counsel. *See Liger v. New Orleans Hornets NBA L.P.*, 2010 U.S. Dist. LEXIS 107410

at *51 (E.D. La. Aug. 3, 2010) (noting that "time entries need not be so specific as to disclose

privileged information or to require excessive preparation time").  References to "clients" is

clearly not vague, especially given that the time entries submitted for Ms. Montagnes and Ms.

Compa are all "tagged" as being part of the instant litigation.[12] *See, e.g.*, *Heck v. Buhler*, 2014

U.S. Dist. LEXIS 13824 at *12 (M.D. La. Feb. 4, 2014) (describing multiple entries referring to

---

[9] January 2014 billing statement from the Shows, Cali & Walsh law firm in unrelated litigation, obtained through public records act request, includes entries such as "Review of Correspondence" (*Id.* at 4), and "Conference with attorney" (*Id.* at 6), and "Meeting with client" (*Id.* at 7) and refers to people by their initials throughout.

[10] All of the entries Defendants specifically cite come from the time entries of Ms. Montagnes and Ms. Compa. Opp. at 7-15.  Therefore, in refuting Defendants' assertions Plaintiffs also focus on these two attorneys' time entries.

[11] The office of Ms. Montagnes and Compa utilizes an on-line timekeeping program called Toggl.  Ex. 1, ¶¶ 2-6. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. La. 1995) ("We are mindful that practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.")

[12] Plaintiffs object to Defendants' reference to "recruitment efforts" by Plaintiffs.  Opp. at 8.  Defendants are not privy to the privileged contents of client communications and their false characterization of those communications should be rejected.

"client" as satisfactory for determining reasonableness in the context of a fee award). References to "advisors" reflect the fact that Plaintiffs consulted with national prison experts in developing this litigation, as Plaintiffs have previously explained. *See* Doc. 187-2, ¶ 11; Doc. 187-16, ¶ 11. These advisors provided valuable help and guidance and have not sought compensation for their work. To the extent that they impact this motion, it is by saving the Defendants from expending more resources. To the extent this Court seeks more information on any of these entries, Plaintiffs are amenable to providing such information for *in camera* review.

Defendants also object to entries referring to "heat" or which mention correspondence or memoranda without explicitly stating the topic of the correspondence or memorandum. Again, these entries are not impermissibly vague. For instance, an entry titled "Heat check-in," with the Task designation of "Case meeting," *see* Opp. at 10, is no more vague than an entry titled "Case meeting about heat litigation" or whatever other formulation Defendants might find sufficiently detailed. In *Liger*, the Court noted that "time entries need not be so specific as to disclose privileged information or to require excessive preparation time;" and that "[w]here billing records show the date, the number of hours spent and a short but thorough description of the services rendered, such is sufficient for the purposes at hand," 2010 U.S. Dist. LEXIS 107410, at *52 citing *Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 349 (5th Cir. 1999), cert. denied, 530 U.S. 1251, 120 S.Ct. 2706, 147 L. Ed. 2d 974 (2000). The Court went on to approve entries such as "E-mails to and from co-counsel" and "Telephone conference with DB and BK – various," concluding that "[t]he Court has no basis to find that this time was not expended and no reason to think it was excessive" and therefore "[n]o reduction will be made for inadequate descriptions of time." *Id.*

**C.      Plaintiffs are not seeking to recover for administrative tasks.**

Defendants argue that Plaintiffs are improperly seeking recovery for time spent on purely administrative tasks.  Opp. at 14-15.  However, these tasks actually involved supervision of administrative tasks and other attorney-level work.  For example time spent "*Supervis[ing] interns*" was spent giving them substantive assignments.  The task of setting up client meetings is regularly carried out by the highest level attorneys in the PJI office, as requests to visit with clients must come from attorneys.  Time spent communicating with death row attorneys, pursuing public records, and preparing supporting documentation for the Motion for Attorneys' Fees was likewise attorney-level.[13]

**D.      The investigation phase of this litigation was required.**

The work expended in the investigation phase was both reasonable and germane to the instant litigation.  Defendants are intent on characterizing the development of this case as "slow" and "backward," Opp. at 3.  However, Counsel's efforts to interview as many of the roughly 85 men on death row as possible in order to develop a better understanding of the conditions present there and the claims relevant to those conditions, as well as Plaintiffs' suitability to participate in the litigation, were reasonable.  Because of the unique nature of death sentences, the men on death row are represented by several different offices and attorneys, and each has an ongoing criminal proceeding that will potentially end in his execution.  This puts both the men on death row and their criminal attorneys in a delicate position, one which Plaintiffs' counsel sought to navigate prudently.

---

[13] Ex. 1, ¶¶ 7-8.  Ms. Compa's time entries that include the phrase "getting back on track," see Opp. at 15, consisted of reading and analyzing new information relevant to the litigation that was amassed in February 2013 while Ms. Compa was away from the office preparing for and taking the Louisiana bar exam, as the time entries reflect.  *Id.*

Defendants' attempt to characterize the nature of the relationship between Plaintiffs and counsel is mere conjecture and should be rejected.[14] Counsel received complaints from a number of men on death row regarding the extreme summer heat and, after meeting with several of these men to discuss their reports and conducting preliminary research decided to proceed with a lawsuit. *See* Doc. 187-2, ¶ 10, Doc. 187-5, ¶¶ 4-5, Doc. 187-25, ¶ 9. To provide greater detail about the investigative phase of this litigation than what has already been proffered risks breaching privilege, which should not be required in order to recover attorneys' fees. *See Liger*, 2010 U.S. Dist. LEXIS 107410, at *51.

The investigation in this litigation required many interviews, lengthy struggles for public records with Defendants, and multiple attempts to contact Defendants in seeking to resolve the underlying problem of excessive heat on death row in advance of filing a complaint. To the extent that Defendants feel the investigation phase of this litigation was unreasonable, it was prolonged by: Defendants' refusal to allow Plaintiffs' experts to visit the death row tiers, which refusal itself spawned the *Advocacy Center* litigation; Defendants' intransigence regarding public records requests; and the cumbersome nature of conducting investigation into prison conditions. Plaintiffs' thorough investigation was essential to developing the claims in this litigation and is therefore compensable.

Defendants' excessive focus on Plaintiffs' passing mention of the three Plaintiffs signing on to litigate this matter in court roughly one and a half years ago (now nearly two years ago) is poorly placed. Opp. at 3, 18, 42. Plaintiffs' statement in this regard referred primarily to the time at which they decided to proceed with the litigation once it became clear that attempts to

---

[14] Defendants' assertion that counsel identified plaintiffs "to fit into the claims," Opp. at 3, is another instance of Defendants' crass insinuations that the instant litigation was an attorney-driven project rather than a matter of vindicating fundamental rights including the constitutional prohibition on cruel and unusual punishment. Plaintiffs reject these insinuations.

negotiate with Defendants would be in vain, and at which they began to finalize the complaint. By no means did this statement mean that counsel had never met with Plaintiffs before that point, nor that, for purposes of analyzing what work went into the litigation as a whole, Plaintiffs were not involved before that point.

Bizarrely, Defendants misquote a passage from the Supreme Court at page 3 of their Opposition to support their assertion that fees run "from the onset of the attorney-client relationship." Opp. at 3, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434. This language never appears in *Hensley*. The quoted language actually appears in *Webb v. County Bd. of Educ.*, 471 U.S. 234, 242 (U.S. 1985) – but more importantly, it was not a pronouncement of the Court, but rather an assertion by the petitioner ***in their brief that the Court proceeded to reject***. ("'In sum,' petitioner concludes, '*Hensley* requires that fees for work done from the onset of an attorney-client relationship be awarded if that work was reasonably related to the enforcement of federal civil rights unless the hours spent would not, in the exercise of normal billing judgment, be "properly billed to one's client."' Brief for Petitioner 19 (quoting *Hensley*, 461 U.S., at 434). The Court's opinion in *Hensley* does not sweep so broadly. The time that is compensable under § 1988 is that 'reasonably expended *on the litigation*.' Id., at 433 (emphasis added).").

Defendants' assertions about Plaintiffs' counsel's role in the *Advocacy Center* litigation, case no. 3:12-cv-00508 (M.D.La.), are entirely inaccurate. Defendants suggest that the fee award in that litigation should somehow impact the fee award in this litigation, despite the two cases having been conducted by distinct offices and attorneys. Opp. at 3 (stating that Plaintiffs' motion "include[es] work in other litigation (for which fees have already been awarded)"), Opp. at 18. That Ms. Montagnes referenced the *Advocacy Center* litigation in some of her time entries does not mean that those entries were unrelated to the instant litigation. Moreover, of course, the

award of fees in the Advocacy Center litigation had nothing to do with Ms. Montagnes or her office.[15] Defendants' utterly random invocation of the date of the settlement in the Advocacy Center litigation as the date from which fees should run in this litigation is preposterous. Opp. at 19. Defendants assert that Ms. Montagnes was "involved" in that litigation, Opp. at 18, but Ms. Montagnes's affidavit states that she contacted the Advocacy Center "to communicate [her] concerns," Doc. 187-2 at ¶ 13, after which Advocacy Center attorneys brought "a separate lawsuit." Ms. Montagnes' role *in the Advocacy Center litigation* was as a witness, nothing more, and no fees were ever sought in that matter on her behalf. In fact, in her affidavit accompanying the Motion for Attorneys' Fees, Ms. Montagnes made clear that she omitted "time spent in aid of the Advocacy Center's access lawsuit". Doc. 187-2, ¶ 38; Ex. 1, ¶ 10.

Defendants' assertion that all time submitted by attorney Elizabeth Cumming should be rejected is unfounded. Defendants offer no case law to support their argument that pre-filing investigation should be completely excluded. Defendants also appear to take issue with the transition of the investigation from Ms. Cumming to Ms. Montagnes, however there is no legal or evidentiary reason that Plaintiffs' affidavits needed to explain the reasons for that transition. Moreover, it is not unreasonable that an investigation of summer heat conditions might be relatively dormant *in between summers*. *See* Opp. at 17.

Finally, the investigation phase of this litigation was made longer by Plaintiffs' difficulty in securing co-counsel, as detailed in the affidavit of Ms. Montagnes. *See* Doc. 187-2, ¶¶ 18-24. Plaintiffs have not sought to recover for the hours they devoted to securing co-counsel. *See* Doc.

---

[15] Defendants' footnote 81 alleges that a "heat letter" referred to in one of Ms. Montagnes's time entries was attached to the Complaint in the Advocacy Center litigation. This is simply conjecture on the part of Defendants. Their unfounded assertion that Ms. Montagnes ought to have sought fees for that time in *that* case is belied by the fact that Ms. Montagnes was not counsel in that action. Defendants' footnote 126 is likewise full of conjecture and inaccurate statements about the role of different lawyers in the two distinct pieces of litigation.

187-6 at 11-14, Doc. 187-17 at 1-6. However, Plaintiffs note that these efforts to bring on co-counsel were concurrent with the other investigation and research work they undertook as to this litigation during that timeframe. As soon as co-counsel were brought on, Plaintiffs moved rapidly to file the Complaint.

### E. Law student intern time is recoverable.

Defendants provide no support for the notion Plaintiffs must produce evidence of compensation in order to seek fees for intern hours. Plaintiffs have already provided ample support for the fact that intern time is compensable. *See* Doc. 187-1 at 11.[16]

### F. Plaintiffs did not duplicate efforts.

Plaintiffs seek a reasonable recovery for work expended. Defendants' reference to "the army of plaintiffs' attorneys" involved in this litigation is puzzling. A total of seven attorneys seek fees for this litigation in the instant motion. One of these attorneys, Ms. Cumming, ceased direct involvement with the litigation in 2012. Six Plaintiffs' attorneys were involved in this litigation during its most active phase in the summer of 2013. This amount of manpower is comparable to the six attorneys for Defendants who have been actively involved in the litigation (Mr. Shows, who is counsel of record, Ms. McInnis, Ms. Wilson, Mr. Hilburn, Mr. Guillot, and Mr. Jones; some of Defendants' pleadings are also signed by state Attorney General Caldwell, and two other attorneys from Mr. Jones's firm, Ms. Atkinson and Mr. Balhoff, are listed as counsel in this matter). At particular events in the litigation such as depositions and court appearances, Plaintiffs generally had the same number of lawyers present as Defendants.[17]

---

[16] In response to Defendants' statement that it is "of concern" that Elizabeth Jordan spent a total of 24 hours in Fayetteville, these 24 hours were broken up over three days of visiting Angola to interview men on death row. *See* Doc. 187-5 at ¶ 5-6.

[17] For instance, at the Plaintiffs' depositions, Mr. Shows, Ms. Wilson and Mr. Jones appeared for Defendants; Mr. Scheckman and Ms. Compa appeared for Plaintiffs. At the pre-trial conference, Mr. Shows, Ms. Wilson and Ms.

Defendants additionally offer incorrect suppositions, such as assuming that a time entry by Ms. Montagnes for deposition preparation was related to the deposition of Frank Thompson and therefore duplicative of the preparation Mr. Scheckman and Ms. Compa were undertaking relating to that deposition. Opp. at 25, n.146. Defendants are aware, however, that Ms. Montagnes conducted seven depositions in this matter including those of Warden Cain, Warden Peabody, and Dr. Macmurdo, because Defendants were also present at those depositions. Defendants also state that Mr. Scheckman and Ms. Compa defended the deposition of David Garon, Opp. at 28, even though only Mr. Scheckman defended that deposition.[18]

Defendants rely on *Riley v. City of Jackson*, 99 F.3d 757, to attack time entries for case meetings among Plaintiffs' counsel where strategy and arguments for all aspects of the litigation were discussed and developed.[19] Defendants' appear to be arguing that time spent meeting with co-counsel to develop strategy and arguments is necessarily to be excluded from an attorneys' fee calculation. This argument is excessive and unreasonable. *See Diamond Shamrock Exploration Co. v. Hodel*, 1991 U.S. Dist. LEXIS 10653 (E.D. La. July 23, 1991) (discussing how coordination and communication among co-counsel is necessary and reasonable). In the instant litigation, case meetings were essential to accomplishing the litigation tasks especially in

McInnis appeared for Defendants; Ms. Montagnes, Ms. Compa and Mr. Vora appeared for Plaintiffs. At trial, Ms. Wilson, Ms. McInnis, Mr. Hilburn and Mr. Jones appeared for Defendants (Plaintiffs do not know why Mr. Shows, who is counsel of record, did not appear), while Ms. Montagnes, Ms. Compa, Mr. Vora, Mr. Kamin and Mr. Scheckman appeared for Plaintiffs. Other depositions also had comparable numbers of attorneys: by Plaintiffs' count there were four depositions where Plaintiffs had one more attorney present than Defendants; four where Defendants had one more attorney present than Plaintiffs, and nine where the parties had the same number of attorneys present. Summer clerks Mary Katherine McCarthy and Sacha Baniel-Stark provided paralegal support at a combined 23.5 hours of depositions.

[18] Relatedly, Defendants object to Mr. Scheckman and Ms. Compa both working with Plaintiffs to prepare for their depositions. Opp. at 27. Plaintiffs note that, to the extent that Plaintiffs' deposition preparation took longer than what Defendants aver to be reasonable, the process was prolonged by Defendants' refusal to agree not to raise Plaintiffs' criminal cases during their depositions, which necessitated additional preparation time with Plaintiffs in addition to time conferring with their criminal attorneys.

[19] Despite attempts, Plaintiffs have failed to find the district court opinion in *Riley* describing the nature of the "intraoffice conferences" that the court rejected, 99 F.3d at 760.

light of the fast-paced timeframe.[20]  Defendants also cite *Riley* for the proposition that "a party may engage multiple attorneys in a lawsuit, but the opposing party is not required to pay for the duplicative work," Opp. at 21, but the Court in *Riley* does not state anything to that effect.

Defendants assert that Plaintiffs' "seeking to recover for 11 hours and 50 minutes for the five-page heat letter" is "not reasonable for the task achieved." Opp. at 12, n.88. Defendants rely on *Fabela v. City of Farmers Branch, Tex.*, 2013 U.S. Dist. LEXIS 82980 (N.D. Tex. June 13, 2013) as an instance of a court reducing an "egregious number of hours billed." Opp. at 22. A closer look at *Fabela* shows that the court took issue with the lack of explanation of the term "prepare complaint" (in a block-billed entry) and whether it included "factual research and analysis" in which case "a greater time expenditure would be reasonable. Such services could have been necessary, for example, to ensure that plaintiffs had grounds to even file this lawsuit." *Fabela*, 2013 U.S. Dist. LEXIS 82980 at *24-25. Indeed, the *Fabela* court acknowledged "that compensation for time spent beyond the mere drafting of a complaint could be entirely reasonable." *Id.* Here, Defendants' assertion ignores that the letter referred to was integral to moving the litigation forward – especially by seeking to engage Defendants in meaningful discussions to resolve the underlying problem – and, more to the point, that its preparation required extensive research into the subject matter. The number of pages in the letter does not tell the full story of the research that went into its preparation, as Plaintiffs' time entries do. Plaintiffs should recover for this time in full.[21]

---

[20] In light of the fact that Ms. Montagnes and Ms. Compa spent virtually all of their professional time on this litigation during Summer 2013, as their timesheets reflect, the substance of the case meetings as being related to the instant litigation is reasonably ascertainable in the context of the entries cataloguing which portions of the litigation were undertaken at which times. *See also* Ex. 1, ¶¶ 2-6, describing the timekeeping software that these attorneys utilize.

[21] In the event that this Court wishes to resolve any lingering ambiguity as to whether time entries labeled "Research and Writing" included preparing court documents and time spent conducting research, they do. Ex. 1, ¶ 5.

Finally, Defendants' complaint that *all* attorneys participated in drafting the Motion for Attorneys' Fees is odd, as it is incontestable that the attorneys had to generate affidavits and supporting documentation of the work they performed in the litigation. M.D. La. LR54.2.

## II. THE RATES SOUGHT FOR EACH ATTORNEY ARE REASONABLE

In discussing the reasonable hourly rates, Defendants attack the affidavits Plaintiffs submitted on the basis that they attest to affiants' "belief". This critique ignores the references to specific awards in other cases, Doc. 187-9 at ¶ 9, and also suggests that this Court should attach no weight to the opinions in the affidavits submitted by Plaintiffs. Opp. at 35-56.[22] This argument is baseless.[23] *See Tasch, Inc. v. Unified Staffing & Assocs.*, 2004 U.S. Dist. LEXIS 16538, 9-10 (E.D. La. Aug. 17, 2004) ("Evidence of rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances. The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge," citing *Norman*, 836 F.2d at 1299).[24]

---

[22] Citing *Hensley*, Defendants state that "[m]ere testimony that a given fee is reasonable is not satisfactory evidence of a market rate." Opp. at 36. The cited *Hensley* footnote, however, indicates that a district court's own conclusory statements about what is reasonable, without more, is insufficient. 461 U.S. at 439, n.15. Here, Plaintiffs have provided evidence in the form of affidavits from local, reputed attorneys, making the *Hensley* footnote scarcely applicable.

[23] Defendants' statement that "none of the declarants explain why the PLRA should not apply," Opp. at 36, is confusing. Neither Plaintiffs nor any declarants in Plaintiffs' Motion for Attorneys' Fees suggested that the PLRA should not apply, so it is unclear why any declarants would explain as much.

[24] Defendants attempt to undermine the declaration of Katie Schwartzmann by referencing a 2010 court filing which stated that "there is no ascertainable 'market rate' for plaintiffs' attorneys in civil rights cases." Opp. at 35-36. This partial quotation mischaracterizes her statement, which stated that there is "no readily ascertainable 'market rate' for plaintiffs' attorneys in civil rights cases *as such* [because m]ost civil rights plaintiffs are too impecunious to be able to afford to pay counsel on an hourly basis." Ex. 3 at 3-4 (emphasis added). The point is that civil rights plaintiffs do not often pay their attorneys, which should be uncontroversial, and indeed is part of the *raison d'etre* of fee-shifting statutes such as the one at issue here.

Defendants do not address Plaintiffs' contention that the market rates in the Eastern District of Louisiana. They simply cite cases from the Middle District where hourly rates of $185 to $255 were awarded. Opp. at 37. These cases are all distinguishable.[25]

### A.  The PLRA cap is calculated based on the CJA authorized rate.

As Plaintiffs discussed in their Motion for Attorneys' Fees, the CJA authorized rate for 2011-2013 was $139 per hour, and for 2014 is $141 per hour. Ex. 4 (Email from Judy Gallant to Bonita Tenneriello, Jan 13, 2014). Defendants' citation the hourly CJA rates listed in the Fifth Circuit library confuses the rate actually paid to attorneys in a given district with the nationwide *authorized* CJA rate. The weight of authority holds that where the two are in conflict, the latter governs. *See* Doc 187-1 at 8. Defendants' assertion that the rates sought, of $208.50 per hour through 2013 and $211.50 per hour in 2014 "violate the PLRA cap," Opp. at 38, is wrong.

Plaintiffs also reassert that the temporary emergency reduction in the CJA rate related to the sequester from Sept. 1, 2013, to Feb. 28, 2014, does not impact the rates relevant to the instant PLRA analysis. *See* Doc. 187-1 at 7-8; *see also* Ex. 5 (Letter from William B. Traxler, Jr. to Hon. Catherine C. Blake, Aug. 16, 2013, describing the need for the emergency temporary rate reduction "to preserve the indigent *criminal defense* function").

---

[25] *In re Kirby Inland Marine, LP*, 2008 WL 4642616 (M.D.La. Oct. 16, 2008) involved a "blended hourly rate" of $200 per hour for several attorneys with varying levels of experience, which was suggested by the attorneys themselves. *Monaghan v. United Rentals*, 2012 WL 832284 (M.D.La. Mar. 9, 2012) discussed an effective rate of $255 being the outcome of an actual rate of $275 per hour factoring in a "5% reduction and $4,040 fee write-off," and also cited several other cases with higher awards (*K&G Men's Co. v. Carter*, 2010 U.S. Dist. LEXIS 95830 at *7 (M.D. 2010) ($300 per hour is reasonable); *Labarge Pipe and Steel Co.v. First Bank*, 2011 U.S. Dist. LEXIS 96786 at * 15 (M.D. La. 2011) (awarding $330, $350 and $435 per hour rates); *Reassure Am. Life Ins. Co.v. Cilano*, 2010 U.S. Dist. LEXIS 31973 (M.D. La. 2010) (awarding $375 per hour)). *Pizzolato* concerned a motion to remand rather than a full trial, and the court noted that the attorney's hourly rate was normally $250: "While his standard hourly rate is $250.00 an hour, the Court reasons that this rate applies to his standard practice in complex litigation." 2008 WL 4809137 (M.D.La. Nov. 3, 2008). *Moore* similarly involved only a motion to compel rather than more extensive litigation, and awarded a rate that the attorney himself had suggested. 2013 WL 2018117 (M.D.La. May 13, 2013).

## B. Out-of-State Counsel were necessary

Defendants state that Plaintiffs failed to establish the need for out-of-town counsel in this litigation. Opp. at 30. This assertion ignores the ample discussion and evidence on this point advanced in Plaintiffs' original motion, which Plaintiffs will not repeat here. *See* Doc. 187-1 at 10, Doc. 187-2, ¶¶ 18-23, Doc. 187-10, ¶¶ 13-14, Doc. 187-11, ¶ 5, Doc. 187-12, ¶ 5.

Defendants state that "the relevant community [for assessing reasonable rates] is where the district court sits, regardless of how much of the work is done elsewhere," Opp. at 35, and cite *Tasch, Inc. v. United Staffing & Assoc.*, 2004 U.S. Dist LEXIS 16538 (E.D.La. 2004). However, *Tasch* had nothing to do with out-of-state counsel. *McClain* is a much more applicable case. *McClain v. Lufkin Indus.*, 649 F.3d 374, 383 (5th Cir. Tex. 2011) (stating that "where out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation.").

## C. Defendants misapprehend the Johnson factors.

Defendants additionally engage in argument related to the *Johnson* factors. Without repeating their previously advanced arguments and authorities as to how the *Johnson* factors apply, *see* Doc. 187-1 at 17-23, Plaintiffs take this opportunity to respond to and refute several of Defendants' specific assertions.

First, Defendants' statement that Plaintiffs "claim that the PLRA rate does not adequately cover" the work performed in this litigation (Opp. at 39) misunderstands Plaintiffs' actual point that it is within this Court's discretion to make upward departures if it sees fit to do so based on evidence submitted. Doc. 187-1 at 22-23. Secondly, Defendants' assertion that the Supreme Court has barred consideration of the nature of the fee (Opp. at 41) cites only one Supreme Court case that explicitly pertains only to fee-shifting statutes not at issue here. *City of Burlington v.*

*Dague*, 505 U.S. 557 (U.S. 1992) ("enhancement for contingency is not permitted **under the fee-shifting statutes at issue**.") This opinion has no bearing on the instant case.

The Defendants quote the Supreme Court as holding "that a 'fee award must be reduced by the number of hours spent on unsuccessful claims'" without citation. The Fifth Circuit has stated that, as the Supreme Court recognized in *Hensley*, "in many cases claims are factually and legally related and cannot be easily segregated" and so "a fee award should not necessarily be reduced simply because the plaintiff failed to prevail on every contention in the lawsuit." *Cobb v. Miller*, 818 F.2d 1227, 1233 (5th Cir. La. 1987), citing *Hensley*, 461 U.S. at 435.

Finally, Defendants dismiss the notion that the undesirability of a case might warrant adjustment from the lodestar. Opp. at 42. The Fifth Circuit has found, however, that this factor can indeed be grounds for enhancement, specifically with respect to prison conditions litigation. *See Alberti v. Klevenhagen*, 903 F.2d 352 (5th Cir. Tex. 1990) ("In our original opinion, *Alberti v. Klevenhagen*, 896 F.2d 927 (5th Cir. 1990), we reversed the district court's $5.00 enhancement of the hourly rate to compensate plaintiffs' attorneys for case undesirability. **We now vacate that portion of the opinion and affirm the district court's case undesirability** enhancement. We are now persuaded that the district court's finding that an enhancement for case undesirability was required to attract competent counsel to take on this undesirable prison conditions litigation was supported by the record.")

## III.    PLAINTIFFS' COSTS ARE REASONABLE

The costs for which Plaintiffs have sought to recover directly relate to the instant litigation, as Plaintiffs represented in their Motion for Attorneys' Fees. Defendants' assertions that invoices are not sufficient documentation of an expense is unsupported by caselaw.

### A.    Plaintiffs attach documentation not previously furnished.

Plaintiffs acknowledge that documentation of some of their cost outlays was missing from their original Motion for Attorneys' Fees; Plaintiffs attach that documentation here.[26]  Ex. 6; *see also* Doc. 187-13 at ¶¶ 18-24 (detailing costs incurred including those for which documentation was not provided in Plaintiffs' original motion).

### B.    The costs for which Plaintiffs previously submitted documentation were directly related to this litigation.

Other arguments that Defendants advance as to Plaintiffs' costs are more puzzling. Defendants state that "it is unclear why service of the Motion for Preliminary Injunction was made separately from the Complaint," Opp. at 46, but the reason is that those two filings were made more than a week apart.  *See* Doc. 1, Doc. 12.  Defendants also say it is unclear "why Ms. Montagnes personally drove from New Orleans to Baton Rouge to make that service," Opp. at 46, but misunderstand that Ms. Montagnes did not personally make that service; rather, she was reimbursed because PJI's paralegal drove her vehicle to serve the document.  Ex. 1, ¶ 11-12. Finally, Defendants say that "the documentation for service of a subpoena is insufficient to determine who was served."  Opp. at 46.  The service was made to Frank Thompson.  *See* Ex. 7 (Frank Thompson subpoena, dated July 31, 2013).

With respect to expert fees, this Court in its discretion may allow Plaintiffs to recover for expert fees even where the fee-shifting statute does not expressly include them under a bad faith exception.  *See Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (stating that "a district court may invoke its inherent power to impose sanctions in the form of

---

[26] Attorneys from Bird Marella tracked their expenses in this litigation as they normally do for their clients, including billing for "working" meals.  However, in an exercise of judgment Plaintiffs wish to reduce their request for meal costs by excluding meals eaten in California as well as one dinner in New Orleans.  These expenses total $555.57, and Plaintiffs reduce their requests for travel and meal costs by that amount to $16,619.60.  Documentation of these meals is attached for reference, *see* Ex. 6 at 71-74, 87-89, 91.

reasonable expert fees in excess of what is provided for by statute" and that "courts may use sanctions in cases involving bad faith that cannot be otherwise reached by rules or statutes," and upholding the award of expert fees given "the court's numerous articulations of . . . bad faith and vexatious litigation conduct"). Here, Defendants' well documented misconduct throughout this litigation, for which sanctions have been imposed (Doc. 62, Doc. 63, Doc. 84, Doc. 85, Doc. 88), supports an award of expert fees. This Court should consider awarding expert fees to Plaintiffs accordingly.[27]

As to whether the copying costs sought to be recovered pertained to particular copies "necessarily obtained for use in the case," Plaintiffs affirm that they did. Ex. 1, ¶ 13 (explaining that Plaintiffs produced trial binders over the weekend before trial consisting of these copies). With respect to the $36.29 with which Defendants take issue, Opp. at 47-48, Plaintiffs likewise affirm that these costs pertained directly to the litigation and were expended for copies and minor office supplies including water. *Id.*, ¶ 14.[28] With respect to PACER charges (Opp. at 48) the name Elizabeth Kalos at the Capital Appeals Project appears in the documentation because this is the name in which the PACER account is set up. Plaintiffs attest, however, that these charges were paid by PJI. *Id.*, ¶ 15. Defendants take issue with the emergency benchbook delivery on August 2, 2013, Opp. at 49. This delivery was made pursuant to this Court's instruction that the benchbooks be delivered by Friday, August 2, 2013, before the commencement of trial. On that day, Plaintiffs were in New Orleans preparing the motions for sanctions that this Court ordered be filed on August 2. Plaintiffs' attorneys were not in a position expend three hours driving to

---

[27] Alternatively, under 28 U.S.C. § 1821, witnesses are entitled to be paid a $40 per day fee for attendance at court in addition to travel and overnight expenses. Should the Court not elect to award expert fees in full to Plaintiffs under the bad faith exception, Plaintiffs' experts are entitled to fees in accordance with this statute.

[28] Doc. 187-7 at 23. While the Promise of Justice Initiative, as a non-profit organization, is not required to pay sales taxes, the office does not seek exemption from sales tax for irregular expenses such as those contained in the instant motion because of the high transaction costs of proving the exemption to each vendor. *See* Opp. at 47 n.202.

and from Baton Rouge to deliver the benchbook in light of their preparation of these motions. Plaintiffs required the use of a courier service. *Id.*, ¶ 16.

The Securus charges for which Plaintiffs seek to recover pertained to the instant litigation. *See* Doc. 187-7 at 27. Defendants' suggestion that they should pay no more than $100 of the more than $1352 incurred is utterly arbitrary. While Defendants may feel that rates for phone calls with prisoners in Louisiana are exceedingly expensive, it is the DOC that sets those rates in conjunction with the service provider. *See*, *e.g.*, Prison Phone Justice, *Louisiana Phone Rates and Kickbacks*, *available at* www.prisonphonejustice.org/state/2012/LA/ (stating that the cost of a 15-minute in-state collect call is $4.85 and providing links to contracts between state and provider and enumeration of rates). Plaintiffs should recoup the necessary expense of clients and counsel communicating by phone throughout the litigation.

Plaintiffs have submitted adequate documentation as to the costs associated with public records obtained in the course of this litigation. Public records requests in this litigation pertained to temperatures recorded on death row (from Angola); federal funding to the state prison system (from various federal agencies); and mechanical design of the death row facility (from the Division of Administration). Plaintiffs have submitted receipts for all those requests that yielded information directly relevant to the litigation. Doc. 187-7 at 28-36.

Plaintiffs' request for travel and related expenses are reasonable. *See* Opp. at 51-52. The receipts for which recovery is sought include dinner for Ms. Montagnes, Mr. Vora and Ms. Compa the night before the preliminary injunction hearing, *see* Doc. 187-7 at 37 and Ex. 6 at 65,[29] and lunch for Ms. Montagnes, Mr. Vora, Ms. Compa, Mr. Kamin, Mr. Scheckman, and Dr. Vassallo during the first day of the trial, *see* Doc. 187-7 at 39 and Ex. 1, ¶ 18. The reason

---

[29] Plaintiffs split the cost of this meal between two cards upon payment and so attach two receipts.

Plaintiffs stayed in hotel rooms on the night of July 1, 2013, was that the hearing on July 2 commenced at 9 a.m. and Plaintiffs reasonably did not want to risk encountering severe morning traffic en route to court from New Orleans. All four rooms that Plaintiffs booked were used. *Id.*

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court award attorneys' fees and costs in this matter consistent with Plaintiffs' Motion for Attorneys' Fees.

Date: Sept. 9, 2014

Respectfully submitted,

/s/ Mercedes Montagnes
Mercedes Montagnes, La. Bar No. 33287 (Lead Counsel)
Elizabeth Compa, La. Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378
Email: mmontagnes@thejusticecenter.org

Mitchell A. Kamin, Ca. Bar No. 202788
Jessica C. Kornberg, Ca. Bar No. 264490
Nilay U. Vora, Ca. Bar No. 268339
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks & Lincenberg, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Tel. (310) 201- 2100
Fax (310) 201- 2110

Steven Scheckman, La. Bar No. 08472
Schiff, Scheckman, & White LLP
829 Baronne Street
New Orleans, Louisiana 70113
Tel. (504)581-9322
Fax (504)581-7651
Email: steve@sswethicslaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that on Sept. 9, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Mercedes Montagnes
MERCEDES MONTAGNES, LSBA #33287
Attorney at Law
636 Baronne Street
New Orleans, LA 70113
(504) 529-5955