ELZIE BALL, ET AL.                                    CIVIL ACTION

**VERSUS**

JAMES M. LEBLANC, ET AL.                    NO.:13-00368-BAJ-SCR

## RULING AND ORDER

Before the Court is **Plaintiffs' Motion to Set Attorneys' Fees and Costs Regarding Maintenance of the Status Quo (Doc. 216) filed by Elzie Ball, Nathaniel Code, and James Magee** (collectively, "Plaintiffs"), seeking an order from this Court awarding attorneys' fees and costs in the amount of $16,892.04. The motion is filed in accordance with this Court's Ruling and Order granting Plaintiffs' Motion to Maintain the Status Quo of October 30, 2014. (Doc. 214). Defendants James M. Leblanc, Secretary of Louisiana Department of Public Safety and Corrections, Burl Cain, Warden of the Louisiana State Penitentiary ("Angola"), Angela Norwood, the Warden of Death Row, and the Louisiana Department of Public Safety and Corrections (collectively, "Defendants") oppose the award as unreasonable. (Doc. 218).

## I.     Background

On June 10, 2013, Plaintiffs filed a Complaint against Defendants for civil rights abuses surrounding the conditions of confinement on the Angola death row tier. (Doc. 1 at ¶ 1). More specifically, Plaintiffs claimed violations of their Eighth

and Fourteenth Amendment rights and violations of the Americans with Disabilities Act ("ADA") for dangerous heat levels in Angola's Death Row. (Doc. 1 at ¶¶ 1-2). On August 5, 2013, the matter came before the Court on a non-jury trial on the merits. (Docs. 76, 77). On December 29, 2013, the Court issued a Ruling and Order, finding in favor of Plaintiffs and ordering Defendants to "monitor, record, and report the temperature, humidity, and the heat index in each of the death row tiers . . . ." (Doc. 87 at p. 95).

During discovery, Plaintiffs claimed Defendants acted to intentionally "undermine the accuracy . . . of court-ordered collection related to the temperature, humidity, and heat index in Angola's death row tiers, and thus should be sanctioned for spoliation of evidence" because Defendants installed awnings over the windows of death row tiers, employed "soaker hoses" to "mist the walls" of certain tiers, and attempted unsuccessfully to develop a sprinkler system to wet the roof and yard of the prison. (Doc. 88 at pp. 3, 7-8). The Court had "little trouble determining that Defendants' construction of awning and installation of soaker hoses exhibited 'bad faith.'" (Doc. 88 at p. 33-34). The Court reasoned that "it [was] abundantly clear that Defendants' manipulations occurred *after* this Court ordered that the most accurate data . . . be collected" and the specific intention for installing the awnings and soaker hoses was to manipulate the very data that they conceded they were obligated to preserve. (Doc. 88 at p. 34) (internal quotations omitted). The Court concluded Defendants' deliberate breach of their duty to maintain the status quo

satisfied the bad faith standard and sanctioned Defendants under the Court's inherent power. (Doc. 88 at p. 49).

While the appeal of this Court's ruling on the merits was pending before the United States Court of Appeals for the Fifth Circuit, Defendants removed the mercury thermometers which had been used to measure the temperature for the duration of the case and replaced them with digital thermometers. (Doc. 203-1 at p. 2). Defendants performed this manipulation of evidence on their own initiative without notifying either the Court or the Special Master. (*See* Doc. 213 at pp. 1-2). Nevertheless, Defendants justified their actions by fervently advocating the superiority of the new digital thermometer "upgrade." In so doing, Defendants failed to acknowledge that the Court's Order mandated maintenance of the status quo. To be clear, any alteration of the heat measuring instruments, including alleged improvements, directly violated the Court's unequivocal order. (*See* Doc. 213 at pp. 1-2). Defendants later remounted the original mercury thermometers. (Doc. 203-1 at p. 4).

At the hearing held on October 29, 2014, the Court found Defendants' removal of the mercury thermometers after being put on notice to maintain the status quo by previous sanctions constituted a bad faith violation of this Court's Order. (Doc. 213 at pp. 1-2; Doc. 214 at pp. 1-2). Using no uncertain terms, the Court ordered Defendants to maintain the status quo. The Court then granted Plaintiffs' request for reasonable attorneys' fees and costs associated with the

motion. (Docs. 313, 214). The Court then ordered Plaintiffs to file a motion detailing the fees and costs reasonably incurred. (Doc. 214 at p. 2).

In response, Plaintiffs filed a request for $16,649.00 in fees and $243.04 in costs. (Doc. 216). The fees included work performed by the following three attorneys: Mercedes Montagnes ("Montagnes"), Elizabeth Compa ("Compa"), and Nilay U. Vora ("Vora"). (Doc. 216-1 at p. 6). Each attorney set his/her own rate using the prevailing market rate for his/her respective markets. Specifically, Montagnes and Compa used the prevailing market rate for New Orleans at $225 per hour and $200 per hour respectively, and Vora used the prevailing market rate for Los Angeles at $350 per hour. (Doc. 216-1 at p. 9). Together, Plaintiffs claim a total of approximately ninety-seven hours. Plaintiffs also factored in a 20% global reduction for a total of approximately seventy-five and one half hours. (Doc. 216-1 at p. 7). The services for these hours fall into four broad categories: (1) discovering and investigating the replaced thermometers, (2) research and preparation for the motion and hearing held October 28, 2014, (3) travel to Angola with the Special Master,[1] and (4) setting and justifying attorney fees for the motion currently before the Court. (Doc. 216-1 at p. 9).

---

[1] Travel costs were calculated using the current witness and juror mileage reimbursement rate for the Middle District of Louisiana, $0.56 per mile. Plaintiffs cite Fee Schedule, Fees of the U.S. District Court (Dec. 1, 2013) *available at* www.lamd.uscourts.gov/fee-schedule, for justification of this rate. Plaintiffs claim 434 miles traveled, totaling $243.04 in costs (Doc. 216-1 at pp. 9-10). Defendants do not contest the Court's power to award travel costs, the method of calculation, rate, or total requested; rather, Defendants only challenge that the rate be capped by the Prison Litigation Reform Act ("PLRA").

## II.  Discussion

In *Hensely v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court established a two-step system for calculating attorney fees, also called the "lodestar" method. *Id.* at 433 (applying the lodestar amount for attorney's fees awarded under a § 1988 case). *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) ("This Court uses the 'lodestar' method to calculate attorney fees."); *Matter of Fender*, 12 F.3d 480, 487 ("The Fifth Circuit uses the 'lodestar' method to calculate attorneys' fees."). *See also Wagner v. Boh Bros. Const. Co., LLC*, 2012 WL 3637392 at *12 (E.D. La. Aug. 22, 2012) (applying the lodestar amount for attorney fees incurred as a result of opposing party's failure to comply with court orders, among other things). Attorney fees are calculated by "determining . . . the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*

Applying this test, Plaintiffs' proposed award must be reduced for two reasons. First, the request does not employ a reasonable rate because Plaintiffs use the prevailing market rate for their respective markets, rather than the market in which the court sits. Second, not all of Plaintiffs' requested hours were reasonably spent on the litigation because the request includes a lunch with the Special Master. Because of these errors, the Court will recalculate the reward in accordance with the prevailing market rate for the Middle District of Louisiana and reduce the total hours by the time spent at the meal.

## A.    Reasonable Attorney Rates

Plaintiffs must first show that their rates are reasonable. *Id.* Reasonable rates are determined by the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *United States v. City of Jackson, Miss.*, 359 F.3d 727, 733 (5th Cir. 2004) (applying *Blum* to attorney fees awarded by district court sanctions). For purposes of determining the market rate, the relevant community is the "community in which the district court sits." *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 559 (5th Cir. 1998), *abrogated* on other grounds by *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Serv.*, 532 U.S. 598, 610 (2001); *see also Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).

The prevailing market fee is generally determined by affidavits filed by attorneys practicing in the area. *Tollett*, 285 F.3d at 368. However, markets of comparable sizes can be informative in determining the prevailing market rate of another district. *See e.g., Strogner v. Sturdivant*, No. 10-125-JJB-CN, 2011 WL 6140670, at *2 n.4 (M.D. La. Dec. 9, 2011) (finding that the rate in New Orleans could help determine the rate in Baton Rouge because after Hurricane Katrina, the size of New Orleans and Baton Rouge became more comparable); *Advocacy Center v. Cain*, No. 12-508-BAJ-SCR, 2014 WL 1246840, at *7 n.6 (M.D. La. Mar. 24, 2014) (same). Further, courts have declined to adjust a proposed attorney rate when the other party fails to contest the rate's reasonability. *Tollett*, 285 F.3d at 368. In

*Tollett v. City of Kemah*, the Fifth Circuit sanctioned the defendant for violating Rule 37 of the Federal Rules of Civil Procedure by awarding the plaintiff's attorneys' fees. *Id.* at 369. In doing so, the court allowed the plaintiff to rely solely "upon his own assertion in his affidavit that his is a reasonable rate." *Id.* at 368. Although the court questioned whether the plaintiff's rate of $300 was reasonable, it ultimately held the amount reasonable based on Tollett's counsel's affidavit "only because the [defendants did] not contest [it]." *Id.*

Here, as in *Tollett*, Defendants do not question the reasonableness of the hourly rate. *Id.* Instead, Defendants argue that the hourly rate should be capped by the Prison Reform Litigation Act ("PLRA").[2] (Doc. 218 at p. 3). Although this section of the PLRA is "not a paragon of clarity," Defendants' argument is nonetheless without merit. *See Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002) (quoting *Inmates of Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 654 (1st Cir. 1997)). The PRLA applies to post-judgment awards issued under 42 U.S.C. § 1988. It states in relevant part:

> In any action brought by a prisoner . . . *in which attorney's fees are authorized under section 1988 of this title*, such fees shall not be awarded, except to the extent that . . . the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights *protected by a statute pursuant to which a fee may be awarded under section 1988 of this title*.

---

[2] Defendants present case law from the United States Court of Appeals for the Ninth Circuit arguing that fees awarded under contempt and discovery sanctions are capped by the PLRA presumably because the Fifth Circuit has yet to address whether the PLRA applies to sanctions levied under a court's inherent authority. (Doc. 218 at pp. 3-4) (citing *Webb v. Ada Cnty*, 285 F.3d 829 (9th Cir. 2002)). However, as Defendants acknowledge, this Court is not bound by Ninth Circuit precedent. Moreover, the Court finds the *Webb* case inapplicable here because *Webb* concerned sanctions for contempt and Rule 37 violations, not sanctions levied under a court's inherent authority.

42 U.S.C. § 1997e(d)(1)(A) (emphasis added); *see Volk v. Gonzalez*, 262 F.3d 528, 531-32 (5th Cir. 2001).

The current award of attorney fees is a *sanction*, issued under this Court's inherent authority as a result of Defendants' repeated, bad faith violations of this Court's direct order to maintain the status quo; therefore, the PLRA is inapplicable. *See Chambers v. Nasco*, 501 U.S. 32, 43-46 (1991) (holding courts have inherent authority to manage their own proceedings and finding that awarding attorney's fees is within this power). As in *Tollett*, Defendants failed to challenge the reasonability of Plaintiffs' rates, instead focusing on the incorrect assertion that Plaintiffs' rate should be capped by the PLRA. As a result, the Court would be reasonable in accepting Plaintiffs' rate without further inquiry. *See Tollet,* 285 F.3d at 368.

However, the question of reasonability is ultimately a question for the district court to decide, and this Court is free to address Plaintiffs' rate on its own initiative. *See, e.g., La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (noting the district court must determine the reasonable number of hours expended on litigation and the reasonable hourly rates). Although Montagnes and Compa present the prevailing market rate for New Orleans (Doc. 216-2 at p. 3; Doc. 216-4 at p. 3) this Court finds the rates in the New Orleans market informative as to the rates in Baton Rouge. *See Stogner*, 2011 WL 6140670, at *2 n.4; *Advocacy Center v. Cain*, 2014 WL 1246840, *6 n.6. Furthermore, additional affidavits presented by

Plaintiffs state that the rates are comparable in the Eastern and Middle Districts of Louisiana. (Doc. 187-8 at p. 3).

Vora states in his affidavit that $350 would be a reasonable rate for attorneys of comparable skill and experience in Los Angeles, California. (Doc. 216-6 at p. 3). Because this Court does not sit in Los Angeles area, nor is the Los Angles market of comparable size to the Middle District, the information presented in the affidavit is not germane as to the reasonableness of a prevailing market rate for an attorney of Vora's skill and experience in the relevant legal market. *See Creecy v. Metro. Prop. and Cas. Ins. Co.*, 548 F. Supp.2d 279, 284 (E.D. La. 2008) (finding testimony alone is inadequate to establish a reasonable market rate). Thus, considering Vora contributed significantly fewer hours[3] than Montage or Compa and Defendants did not contest the reasonableness of the rates, the Court finds it reasonable to reduce Vora's rate to that of Montage's, which is $225 per hour. (Doc. 216-1 at p. 9; Doc. 218 at pp. 3-4). *See Hensley*, 461 U.S. at 1939 (finding that a court can reduce a reward if the party's documentation is inadequate to prove a reasonable rate).

Defendants argue that the Court cannot grant sanctions under its inherent authority because the order granting attorney fees did not specifically find Defendants in bad faith. (Doc. 216 at pp. 2-3). This argument is meritless. Defendants were on notice from a previous finding of bad faith, which resulted in similar sanctions, that any alteration of evidence would result in further sanctions. (Doc. 88 at p. 49). Despite this warning, Defendants willingly violated the Court's

---

[3] Specifically, Vora's billings constitute roughly six and a quarter hours of the total seventy-five and one half hours billed.

Order for a second time. That the Defendants were found to be in bad faith at the October 29, 2014 hearing was obvious. The Court made it abundantly clear to Defendants again that further violation of Court Orders would not be tolerated.

**B.     Reasonable Hours**

In addition to demonstrating that rates are reasonable, Plaintiffs must also establish that the number of hours expended was reasonable. The calculation for attorneys' fees must constitute a good faith effort to exclude hours that are "excessive, redundant or otherwise unnecessary." *Hensly*, 461 U.S. at 434. Further, the plaintiff bears the burden of "proving that the number of hours for which compensation is requested is reasonable." *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996). The court may reduce the reward if a plaintiff's requested hours are "vague or incomplete." *La. Power*, 50 F.3d at 324.

Courts have stricken unreasonable travel time from an attorneys' fee award. *See e.g., Leonard v. State of Louisiana*, No. 07-0813, 2010 WL 3780793, at *5 (W.D. La. Sept. 20, 2010). For example, in *Leonard v. State of Louisiana*, the court awarded the plaintiffs attorneys' fees as the prevailing party in a 42 U.S.C. § 1983 claim. *Id.* at *3. Defendants challenged the attorneys' travel time, which allotted nearly ten hours for travel from Baton Rouge to New Orleans. *Id.* at *5. Although the attorneys claimed the delay was caused by "bad weather and traffic," the court reduced the travel time to two hours, presumably the average travel time from Baton Rouge to New Orleans. *Id.*

Like *Leonard*, Plaintiffs included travel time[4] for a trip to Angola to meet with the Special Master.[5] (Doc. 216-1 at p. 6). Both Montagnes and Compa stated in their affidavits that the trip was "scheduled in response to the removal of the thermometers." (Doc. 216-4 at p. 3; Doc. 216-6 at p. 3). Similarly, the Special Master specified that the purpose of the trip was to "educate [him] about the death row facilities and present status of temperature measures." (Doc. 218-2 at p. 1). Because the purpose of the visit was related to the temperature measurement devices, the Court finds that the hours for the visit were reasonably associated with the motion to maintain the status quo. (Doc. 214 at p. 1).[6]

Defendants argue that travel to Angola was not reasonably in furtherance of the litigation[7] because it was undertaken voluntarily by Plaintiffs.[8] (Doc. 218 at p. 5). However, although the inspection was for the purpose of "educating the Special Master," his education principally concerned the measurement devices being used in the prison. (Doc. 218 at p. 7; Doc. 218-2). In an email, the Special Master wrote,

---

[4] Round trip mileage is calculated at 272 miles. (Doc. 216-9 at p. 1). Total time for the trip is eight hours and thirty-five minutes. (Doc. 216-3 at p. 1). Compa also included thirty-two minutes for a meeting discussing the trip into her total. (Doc. 216-6 at p. 1).

[5] Plaintiffs also seek fees and costs to cover traveling from their office in New Orleans to Baton Rouge to attend a hearing on the matter; however, Defendants do not contest these hours or costs.

[6] Defendants do not contest the Court's power to award travel expenses as part of the reward for attorney's fees, only the reasonableness of the travel.

[7] Because Defendants only contest the Plaintiffs' hours spent traveling to Angola, the Court awards the remainder of Plaintiffs' hours.

[8] Defendants also argue the Special Master undertook this trip voluntarily because the Court "suggested—not ordered—Special Master to tour the death row tiers." (Doc. 218 at p. 7). This argument is wholly without merit, and thus need not be addressed. However, the Court notes that Defendants' cavalier attitude and general lack of respect for the Court's "suggestions" exemplifies why Defendants have been repeatedly sanctioned for violating this Court's orders.

"As I indicated in my earlier email this is a visit for my purpose only and simply to educate me about the death row facilities and the *temperature measurement devices*." (Doc. 218-2 at p. 1) (emphasis added).

The Special Master further stated, "I would expect some discussion by the State reps of facilities and the *temperature measurement devices* and how they are monitored." (Doc. 218 at p. 7) (emphasis added). Because the explicit purpose of the investigation was to educate the Special Master about the temperature measuring devices -- the crux of Plaintiffs' Motion -- Plaintiffs' decision to join the Special Master was at the very least "associated with the . . . motion [to Maintain the Status Quo]" and, therefore, reasonably considered attendant to the instant motion. (Doc. 214 at p. 1).

Defendants also argue that Plaintiffs included two hours at a lunch with the Special Master, which is not time reasonably spent on litigation. (Doc. 218 at p. 8). On this point, Plaintiffs concede that the meal with the Special Master could reasonably be deducted. (Doc. 225 at p. 3). Although Plaintiffs claim traffic congestion accounted for thirty minutes of the lunch (Doc. 225 at p. 4), as in *Leonard*, this Court may find time spent on travel delay (even reasonable delay) is not reasonably spent on litigation. *See Leonard*, 2010 WL 3780793, at \*5. Because the meal hours were not reasonably spent on litigation, the Court will reduce the Plaintiffs' reward by two hours for both Montages and Compa, for a total of a four hour reduction to the total number of hours.

III.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that **Plaintiffs' Motion to Set Attorney's Fees and Costs Regarding the Maintenance of the Status Quo (Doc. 216)** is **GRANTED IN PART** and **DENIED IN PART**.  The Court **ASSESSES COSTS** against the Defendants in the amount of $15,019 in fees and $243.04 in costs.

Baton Rouge, Louisiana, this ____17th____ day of July, 2015.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**