# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELZIE BALL, ET AL.** | **CIVIL ACTION** |
| VERSUS | |
| **JAMES M. LEBLANC, ET AL.** | **NO.: 13-00368-BAJ-SCR** |

## RULING AND ORDER

Before the Court is a **Motion to Set Attorneys' Fees and Costs Regarding Sanctions Pursuant to Rule 37(A)(5)(A) and This Court's Order (Doc. 104-1)** filed by Plaintiffs Elzie Ball, Nathaniel Code, and James Magee (collectively, "Plaintiffs"). In short, Plaintiffs seek to recover attorneys' fees and costs in the amount of $71,601.25, (Doc. 104-1 at p. 30), in accordance with this Court's December 19, 2013 Ruling and Order, (Doc. 88 at p. 49). Defendants James M. Leblanc, Secretary of Louisiana Department of Public Safety and Corrections, N. Burl Cain, Warden of the Louisiana State Penitentiary ("Angola"), James Cruz, Warden of Death Row, and the Louisiana Department of Public Safety and Corrections (collectively, "Defendants") oppose Plaintiffs' $66,576.25 in fees as, among other things, unreasonable. (Doc. 115). For reasons explained herein, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**.

I. Background

The facts and procedural history of this case are well-documented, (*see* Doc. 87), as are the unfortunate acts giving rise to the sanctions relevant to this Ruling

and Order, (*see* Doc. 88). Suffice it to say that on December 19, 2013, the Court sanctioned Defendants for their "willful, bad faith attempts to manipulate data critical to Plaintiffs' cause of action, and for abuses of the discovery process." (*Id.* at pp. 1—2). The sanctions required Defendants to reimburse Plaintiffs for (1) all costs and fees incurred in preparation of and attendant to Plaintiffs' Motion for Imposition of Sanctions for Defendants' Spoliation of Evidence (Doc. 63) and Plaintiffs' Reply to Defendants' Opposition thereto (Doc. 85); and (2) all costs and fees related to Plaintiffs' requests for information regarding the cost of installing air-conditioning, as well as the installation of soaker hoses. (*Id.* at pp. 41, 48).

Plaintiffs thereafter and in accordance with this Court's order filed a motion seeking to recover $66,576.25 in fees and $5,025 in costs. (Doc. 104-1 at p. 30). Plaintiffs' $66,576.25 in fees purportedly monetize 314.8 hours[1] of legal work performed by Mercedes Montagnes ("Montagnes"), Elizabeth Compa ("Compa"), Nilay Vora ("Vora"), Michael Kamin ("Kamin"), Steven Scheckman ("Scheckman"), Jessica Kornberg ("Kornberg"), Allesandra Baniel-Stark ("Baniel-Stark"), and Mary McCarthy ("McCarthy"). (*Id.* at pp. 20—21).

---

[1] The Court notes that Plaintiffs initially sought to recover for 314.05 hours of legal work. (*See* Doc. 104-1 at pp. 20—21). However, Compa has since notified the Court that two of her hours were filed in error, (*See* Doc. 142), and the record suggests that Scheckman spent 5.25 hours, (*See* Doc. 104-11 at ¶¶ 12—13), rather than 2.5 hours, (*See* Doc. 104-1 at p. 21), on issues relevant to the underlying sanctions. Therefore, a final and accurate accounting of Plaintiffs' hours reads: 40.5 hours (*See* Doc. 104-2 at ¶ 16) (Montagnes) + 76.8 hours (*See* Doc. 104-9 at ¶ 10) (wherein Compa requests 78.8 hours prior to notifying the Court that two of her hours were filed in error) + 75 hours (*See* Doc. 104-14 at ¶ 14) (Vora) + 7.5 hours (*See* Doc. 104-13 at ¶ 8) (Kamin) + 5.25 hours (*See* Doc. 104-11 at ¶¶ 12—13) (Scheckman) + 5 hours (*See* Doc. 104-15 at ¶ 8) (Kornberg) + 13.25 hours (*See* Doc. 104-4) (Baniel Stark) + 91.5 hours (McCarthy) (*See* Doc. 104-5) = 314.8 hours.

For unpaid law student interns Baniel-Stark and McCarthy, and for attorneys Compa, Montagnes, Kornberg, and Scheckman, Plaintiffs respectively request New Orleans market rates of $85, $200, $225, $310, and $350 per hour. (*See* Doc. 104-2 at ¶ 15); (*See* Doc. 104-9 at ¶ 11); (*See* Doc. 104-2 at ¶ 17); (*See* Doc. 104-15 at ¶ 9); (*See* 104-11 at ¶ 9). For attorneys Vora and Kamin, Plaintiffs respectively request Los Angeles market rates of $350 and $550 per hour. (*See* Doc. 104-14 at ¶ 15); (*See* Doc. 104-13 at ¶ 9).

Defendants accuse Plaintiffs of requesting fees that are "inflated, duplicative, outside the scope of the Court's order, [and] outside the scope of recovery allowed by law . . . ." (Doc. 115 at p. 1). Plaintiffs have replied to Defendants' accusations, (Doc. 122), and Defendants have offered a sur-reply, (Doc. 126).

**II.    Discussion**

A court determines what constitutes a reasonable attorney's fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (applying *Hensley* in the context of Rule 37 sanctions). The product, known as the lodestar, may then "be adjusted upward or downward if the *Johnson*[2] factors, not included in the reasonable fee analysis, warrant the adjustment." *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993); *see also Hensley*, 461 U.S. at 434 n.9 (endorsing the *Johnson* factors but noting that many are usually "subsumed within the initial calculation of

---

[2] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated* on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

3

hours reasonably expended at a reasonable hourly rate"). "The lodestar, however, is presumptively reasonable and should be modified only in exceptional cases." *Watkins*, 7 F.3d at 457; *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (noting that the Supreme Court has "established a strong presumption that the lodestar represents the reasonable fee") (internal quotations and citations omitted).

### A. Reasonable Attorney Rates

An attorney's rate is reasonable only insofar as it is consistent with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Generally, with respect to fees awarded pursuant to a motion for sanctions, the only relevant community is "the community in which the district court sits." *Tollett*, 285 F.3d at 368 (5th Cir. 2002) (quoting *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998), *abrogated* on other grounds by *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Serv.*, 532 U.S. 598, 610 (2001)). However, where a neighboring district of similar size possesses a similar legal market, the Court has considered its prevailing market rates to be informative. *See Strogner v. Sturdivant*, No. 10-CV-125, 2011 WL 6140670, at *2 n.4 (M.D. La. Dec. 9, 2011) (noting that because New Orleans and Baton Rouge are of comparable size and possess similar legal markets, the prevailing rates in the Eastern District of Louisiana help inform the prevailing rates in the Middle District

4

of Louisiana); *Advocacy Center v. Cain*, No. 12-CV-508, 2014 WL 1246840, at *7 n.6 (M.D. La. Mar. 24, 2014) (same); *Ball v. Leblanc*, No. 13-CV-368, 2015 WL 4454779, at *3 (M.D. La. July 20, 2015) (same).

### 1. All fees relevant to this Ruling and Order are not capped by the PLRA.

Defendants assert that all fees relevant to this Ruling and Order are capped by the Prison Litigation Reform Act ("PLRA"). (Doc. 115 at pp. 26—27). Plaintiffs, of course, disagree. (Doc. 104-1 at pp. 25—27).

When interpreting the PLRA, the Court's inquiry "begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). The relevant provision of the PLRA is 42 U.S.C. § 1997e(d)(3), which states that "[n]o award of attorney's fees in [prisoner civil rights litigation] shall be based on an hourly rate greater than 150 percent of the hourly rate established" for court-appointed counsel under the Criminal Justice Act. Although the Fifth Circuit has not yet determined whether the PLRA caps fees awarded pursuant to the Court's "inherent authority to . . . control the litigation before it,"[3] the statutory text appears to be quite clear.

The PLRA only caps fees "directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . . under section 1988 . . . ." 42 U.S.C. § 1997e(d)(1)(A). And fees awarded pursuant to sanctions are, by their very nature, unreasonably incurred. *See Edwin G. v. Washington*, No. 97-CV-1177, 2001 WL 196760, at *2 (C.D. Ill. Jan. 26, 2001) (holding that "[t]he award of attorney's fees as

---

[3] *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 619 F.3d 458, 460 (5th Cir. 2010).

5

sanctions under [Rule 37] is distinct from an award that might be forthcoming under 42 U.S.C. § 1988").

All fees relevant to this Ruling and Order are therefore not capped by the PLRA.

### 2. Plaintiffs will not be paid for the work of unpaid law student interns.

Plaintiffs seek to recover $85 per hour for the work of unpaid law student interns. (*See* Doc. 104-1 at p. 24); (*See* Doc. 104-2 at ¶ 15). And although Plaintiffs' request is reasonable in light of the fact that attorney's fees awarded pursuant to § 1988 are to be based upon the prevailing market rate rather than the costs incurred,[4] the Court will not, in its discretion, permit such recovery where, as here, the state is picking up the tab. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988) (noting that "the court possesses the discretion to tailor sanctions to the particular facts of the case"). To the extent that the Ninth Circuit[5] and the District of Idaho[6] view this distinction as one without a difference, the Court respectfully disagrees.

---

[4] *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285—86 (1989).

[5] In *Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009), the Ninth Circuit did compensate three American Civil Liberties Union ("ACLU") law student interns at a rate of $75 per hour. However, *Nadarajah* differs from this case in two important ways. First, the court in *Nadarajah* never acknowledged that the ACLU law student interns were unpaid. And second, the payer in *Nadarajah* did not contest the payments. *See id.*

[6] In *Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1075 (D. Idaho 2014), the District of Idaho cited *Nadarajah* for the proposition that two second-year law students should be compensated at a rate of $65 per hour. However, like in *Nadarajah* (and unlike here), the court (1) never acknowledged that the second-year law students were unpaid and (2) the payer did not contest the payments. *See id.*

6

Plaintiffs will therefore not be awarded any of the $8,903.75 in fees that they sought to recover for work performed by unpaid law student interns.

### 3. While Compa and Montagnes's proposed rates are reasonable, Scheckman, Vora, Kornberg, and Kamin's proposed rates are unreasonable and will therefore be reduced.

*a. Compa*

Compa graduated from law school in June 2011. (Doc. 104-9 at ¶ 2). She then completed a fellowship at the Southern Center of Human Rights before joining the Promise of Justice Initiative ("PJI") in September 2012. (*See id.* at ¶¶ 4—5). Plaintiffs seek to recover for Compa's 76.8 hours of legal work at a rate of $200 per hour based upon what they believe to be the prevailing market rate for attorneys of comparable skill and experience in the New Orleans, Louisiana area. (*See* Doc. 104-9 at ¶¶ 10—11); (*See* Doc. 142); (*See* Doc. 142-1).

After reviewing the accompanying affidavits,[7] (Doc. 104-17 at ¶ 6); (Doc. 104-18 at ¶ 12), and the quality of the work performed, the Court finds Compa's $200 per hour rate to be reasonable.[8]

For all legal work performed by Compa, Plaintiffs will recover at a rate of $200 per hour.

---

[7] *See Tollett*, 285 F.3d at 368 (noting that "[g]enerally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there").

[8] Defendants cite *Moore v. United Parcel Serv. Co. of Delaware*, No. 11-CV-619, 2013 WL 2018117 (M.D. La. 5/13/13), for the proposition that an attorney with less than 40 years of experience should not be paid more than $195 per hour. (*See* Doc. 115 at p. 30). Initially, it is worth noting that *Moore* did not address the experience of any of the attorneys before the court. However, even assuming that Defendants' 40-year assertion is correct, the court in *Moore* merely approved, as reasonable, the $195 per hour rate that counsel *submitted* to the court. *Moore*, 2013 WL 2018117 at *1. Moore did not hold, as Defendants suggest, that if an attorney with less than 40 years of experience charges more than $195 per hour, that attorney's rate is *per se* unreasonable.

### b. *Montagnes*

Montagnes graduated from law school in June 2009. (Doc. 104-2 at ¶ 4). She then served as a judicial law clerk in the Eastern District of Louisiana and at the United States Court of Appeals for the Fourth Circuit before joining PJI in January 2012. (Doc. 104-2 at ¶¶ 5—6). Plaintiffs seek to recover for Montagnes's 40.5 hours of legal work at a rate of $225 per hour based upon what they believe to be the prevailing market rate for attorneys of comparable skill and experience in the New Orleans, Louisiana area. (Doc 104-2 at ¶¶ 16—17).

After reviewing the accompanying affidavits, (Doc. 104-16 at ¶ 8); (Doc. 104-17 at ¶ 6); (Doc. 104-18 at ¶ 12), and the quality of the work performed, the Court finds Montagnes's $225 per hour rate to be reasonable.

For all legal work performed by Montagnes, Plaintiffs will recover at a rate of $225 per hour.

### c. *Scheckman*

Scheckman graduated from law school in 1978. (Doc. 104-11 at ¶ 3). He primarily serves as a partner in the New Orleans, Louisiana office of Schiff, Scheckman & White LLP, where he represents lawyers and judges in matters involving legal and judicial ethics. (*See id.* at ¶ 1). However, he also, on a part-time basis, serves as the General Counsel to both the Ethics Review Board of the City New Orleans and the Jefferson Parish Ethics & Compliance Commission. (*Id.*). Plaintiffs seek to recover for Scheckman's 5.25 hours of legal work at a rate of $350 per hour based upon what they believe to be the prevailing market rate for

attorneys of comparable skill and experience in the New Orleans, Louisiana area. (*Id.* at ¶ 14).

Although Scheckman's proposed $350 per hour rate does not, at first glance, shock the conscience, (*see* Doc. 104-16 at ¶ 8); (*see* Doc. 104-17 at ¶ 6), it is somewhat odd given the fact that the higher end of Sheckman's "usual and customary" rate is $300 per hour, (Doc. 104-11 at ¶ 8). Plaintiffs assert that Sheckman's "usual and customary" rate is "deliberately set below market value" in order to accommodate lawyers and judges who, due to a lack of insurance, cannot otherwise afford his services. (*Id.* at ¶ 8 n.1). However, an attorney's prevailing market rate is, if possible, best illustrated by the rate that he or she is regularly paid. Any other rule would permit lawyers to, by affidavit, silence a market that has seemingly already spoken.

For all legal work performed by Scheckman, Plaintiffs will recover at a rate of $300 per hour.[9]

### d. Vora

Vora graduated from law school in May 2009 and was, at all times relevant to this Ruling and Order, an attorney at the law firm of Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg ("Bird Marella") in Los Angeles, California. (*See* Doc. 104-14 at ¶¶ 1—2). Plaintiffs seek to recover for Vora's 75

---

[9] With respect to Scheckman, the Court has also considered the relatively small number of hours contributed and the relatively simple nature of the work performed. In short, Scheckman spent 5.25 hours (1) engaging in telephone conferences, (2) meeting with witnesses, (3) drafting affidavits, and (4) litigating the issue of sanctions before the Court. (*See* Doc. 104-12). This work is both commendable and compensable, but it does not warrant that he be paid more than his usual and customary rate.

9

hours of legal work at a rate of $350 per hour based upon what they believe to be the prevailing market rate for attorneys of comparable skill and experience in the Los Angeles, California area. (*Id.* at ¶¶ 14—15).

Vora's proposed rate is, for a couple of reasons, flawed. First, this Court does not sit in the Los Angeles area. Second, the Central District of California does not neighbor the Middle District of Louisiana. And third, the two districts are neither of similar size, nor do they possess similar legal markets. Therefore, the Los Angeles market is inappropriate for purposes of this Court's inquiry.[10]

More applicable seems to be the $225 per hour rate awarded to Montagnes who, like Vora, graduated from law school in Spring 2009 and who also, like Vora, devoted substantial time and energy to sanctions related matters in this case. *Compare* (Doc. 104-2 at ¶¶ 4, 16), *and* (Doc. 104-3), *with* (Doc. 104-14 at ¶¶ 2, 14). Although it is true that Vora has been practicing law for two years longer than Montagnes, the Court, like most law firms, views Montagnes's federal district and appellate court clerkships as valuable and believes, like most law firms, that in terms of her billing rate, both clerkships are compensable. *Compare* (Doc. 104-2 at ¶¶ 5—6), *with* (Doc. 104-14 at ¶ 5).

For all legal work performed by Vora, Plaintiffs will recover at a rate of $225 per hour.

---

[10] Lest there be any doubt, the Court finds that Plaintiffs' have failed to, by "abundant and uncontradicted evidence," establish that this case was one of the "unusual cases" requiring out-of-district counsel. *See McClain*, 649 F.3d at 382—83. Therefore, the only communities relevant to the lodestar analysis are the Middle and Eastern Districts of Louisiana. *See Tollett*, 285 F.3d at 368 (5th Cir. 2002); *Ball*, 2015 WL 4454779 at *3.

10

*e. Kornberg*

Kornberg graduated from law school in May 2007 and was, at all times relevant to this Ruling and Order, an attorney at Bird Marella in Los Angeles, California. (*See* Doc. 104-15 at ¶¶ 1—2). Plaintiffs seek to recover for Kornberg's 5 hours of legal work at a rate of $310 per hour based upon what they believe to be the prevailing market rate for attorneys of comparable skill and experience in the New Orleans, Louisiana area. (*Id*. at ¶¶ 8—9).

However, Kornberg's proposed rate is unjustified in light of the $225 per hour rate that the Court approved as reasonable for Vora. More applicable seems to be a rate of $235 per hour, which balances (a) the fact that Kornberg has been practicing law for two years longer than Vora with (b) the fact that in this case, she contributed 70 fewer hours of legal work. *Compare* (Doc. 104-14 at ¶¶ 5, 14), *with* (Doc. 104-15 at ¶¶ 4, 8).

For all legal work performed by Kornberg, Plaintiffs will recover at a rate of $235 per hour.

*f. Kamin*

Kamin graduated from law school in 1993 and was, at all times relevant to this Ruling and Order, the "Co-Managing Partner of Bird Marella, a forty-one lawyer firm dedicated to complex civil and white collar litigation." (*See* Doc. 104-13 at ¶¶ 2, 4). Plaintiffs seek to recover for Kamin's 7.5 hours of legal work at a rate of $550 per hour based upon what they believe to be the prevailing market

rate for attorneys of comparable skill and experience in the Los Angeles, California area. (*Id*. at ¶¶ 7, 9).

The Los Angeles market is, again, irrelevant to this Court's inquiry. More applicable seems to be the $300 per hour rate awarded to Scheckman who, like Kamin, has been practicing law for over twenty years and who also, like Kamin, contributed less than 8 hours of legal work to sanctions related matters in this case. *Compare* (Doc. 104-11 at ¶¶ 3, 12—13), *and* (Doc. 104-12), *with* (Doc. 104-13 at ¶¶ 3, 7—8).

For all legal work performed by Kamin, Plaintiffs will recover at a rate of $300 per hour.

**B.    Reasonable Hours**

The Court must next ensure that the time for which Plaintiffs seek to recover was "reasonably expended" on issues properly related to the underlying sanctions. *Hensley*, 461 U.S. at 434. Hours that are "excessive, redundant, or otherwise unnecessary" are not compensable, *id.*, and the Court "may reduce the number of hours awarded if [Plaintiffs'] documentation is vague or incomplete," *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

   *a. Improper Billing?*

Defendants assert that many of Plaintiffs' 210.05[11] hours are improper, as they fall outside of scope of this Ruling and Order. (Doc. 115 at p. 17). According to

---

[11] The Court once again acknowledges that Plaintiffs initially sought to be compensated for 314.8 hours of legal work. However, because the Court has held that Plaintiffs will not recover for any of the 104.5 hours of work performed by unpaid interns, only 210.05 hours remain in dispute. *See supra* p. 2 n.1.

12

Defendants, Plaintiffs are only entitled to "recover fees pertaining to . . . the drafting of the Motion for Sanctions, the Reply relating thereto, and the discovery or fees attendant to their preparation." (Doc. 115 at pp. 17—18). How Defendants arrived at this conclusion is unknown. What is known, however, is that on December 19, 2013, this Court ordered Defendants to reimburse Plaintiffs for (1) all costs and fees incurred *in preparation of and attendant to* Plaintiffs' Motion for Imposition of Sanctions for Defendants' Spoliation of Evidence (Doc. 63) and Plaintiffs' Reply to Defendants' Opposition thereto (Doc. 85); and (2) all costs and fees *related to* Plaintiffs' requests for information regarding the cost of installing air-conditioning,[12] as well as the installation of soaker hoses. (*See* Doc. 88 at pp. 41, 48) (emphasis added).

Because these sanctions, rather than the ones proposed by Defendants, govern this dispute, the Court rejects Defendants' assertion that Plaintiffs seek to recover for time that falls outside of the scope of this Ruling and Order.

### b. *Excessive Billing?*

Defendants assert that Plaintiffs' 210.05 hours are excessive for the tasks alleged. (Doc. 115 at p. 18). This assertion is both (a) meritless and (b) baffling in light of the fact that Defendants' counsel "deliberately dodged requests for information related to the cost of installing air-conditioning; avoided turning over . . . information regarding Defendants' installation of soaker hoses; and, when confronted with information regarding Defendants' willful attempts to manipulate

---

[12] Just to be clear: Defendants were not sanctioned for failing to install air conditioning. They were sanctioned for manipulating data and for abusing the discovery process.

13

data collection in the death row tiers, excused Defendants' behavior by creating the [false] impression that remedial measures were approved and encouraged by Magistrate Judge Riedlinger." (Doc. 88 at pp. 48—49). Defendants cannot, like Pontius Pilate, simply wash their hands of it all. *See Matthew* 27:24.

Accordingly, the Court rejects Defendants' assertion that Plaintiffs' 210.05 hours are excessive for the tasks alleged.

### c. *Double and Triple Billing?*

Defendants assert that Plaintiffs' "billing entries consistently allege multiple attorney entries for the same task," oftentimes resulting in what Plaintiffs describe as double and triple billing. (Doc. 115 at p. 20). Initially, it is worth noting that Defendants grossly misunderstand the definition of double and triple billing.[13]

However, with respect to Defendants' assertion that Plaintiffs should only recover once for the time both Compa and Montagnes spent on the same phone call, the Court disagrees. Lawyers regularly collaborate in preparation for trial and here, the phone merely facilitated the collaboration.

The Court also disagrees with Defendants' assertion that Plaintiffs should only recover once for the time Vora, Compa, and Montagnes spent attending the same pretrial conference. In fact, the pretrial conference is a conference that all members of the trial team are generally expected to attend.

---

[13] *See* Daniel L. Cevallos, *The Double Billing Dilemma*, AMERICAN BAR ASSOCIATION, http://www.americanbar.org/publications/young_lawyer_home/young_lawyer_archive/yld_tyl_may08_cevallos.html (explaining that double billing occurs when a lawyer charges "more than one client . . . at the same time").

14

Accordingly, the Court rejects Defendants' assertion that Plaintiffs have in any way double- or triple-billed.

### d. *Block-Billing?*

Defendants assert that many of Plaintiffs' billing entries are block-billed and are therefore unreliable and inaccurate. (Doc. 115 at p. 22). "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 09-CV-752, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (internal quotations and citations omitted). Although block billing is generally disfavored, it is permissible "so long as the evidence produced is adequate to determine reasonable hours." *Kellstrom*, 50 F.3d at 325.

Only one block-billed entry to which Defendants object raises legitimate concerns. (*See* Doc. 115 at pp. 25—26). On August 2, 2013, Vora billed for 15.4 hours of "legal research and preparation of Rule 37 motion; research and preparation of court." (*See* Doc. 104-14 at ¶ 14). Defendants assert that these 15.4 hours were "clearly fabricated," as both Rule 37 motions were filed 12 hours and 16 minutes into August 2nd. (*See* Doc. 115 at pp. 25—26); (*See* Doc. 115-4 at p. 1); (*See* Doc. 115-5 at p. 1). Plaintiffs respond that Vora worked through the night of August 1st, finished the sanctions motions by 12:16 p.m., CDT on August 2nd, and spent an additional three hours that day preparing for the sanctions hearing scheduled for August 5th. (*See* Doc. 122 at p. 8).

15

Although the Court does not doubt Vora's work ethic, it does doubt his productivity on August 2nd, particularly in light of the fact that he worked 16.5 hours during the day and through the night of August 1st. (*See id.*); (*See* Doc. 115-1 at p. 2). Accordingly, the Court will reduce Vora's August 2, 2013 billing entry by 10.4 hours. *See Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (noting that "unproductive, excessive, or redundant" hours are to be written off). The rest of Plaintiffs' entries properly identify the time and tasks relevant to the underlying sanctions and the Court finds them to be reasonable. (*See, e.g.*, Doc. 104-3 at p. 3). Defendants' objections, for the most part, constitute nothing more than "excessive stinginess." *See Taylor v. Washington Mut. Inc.*, No. 04-CV-521, 2015 WL 5024508, at *8 (W.D. La. Aug. 24, 2015) (internal quotations and citations omitted).

### e. Vague Billing?

Defendants assert that much of Plaintiffs' billing entries are vague and ambiguous. (Doc. 115 at p. 23). However, because the Court "is not obligated *sua sponte* to sift through fee records searching for vague entries," the Court will only address the three entries to which Plaintiffs have specifically objected. *Hoffman v. L & M Arts*, No. 10-CV-953, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015).

The first disputed entry, dated July 27, 2013, was submitted by Montagnes and reads "Review deposition prep work, data work brainstorming, review pretrial undisputed facts." (*See* 104-3 at p. 3); (Doc. 115 at p. 23). This entry, the Court

finds, is not ambiguous but is rather one of the block-billings that the Court has already approved.

The second and third disputed entries, dated July 28, 2013, were submitted by Compa and read "Deposition prep." (*See* Doc. 104-10 at p. 2); (*See* Doc. 115 at p. 23). The Court agrees that "Deposition prep," standing alone, is "unduly vague." *See Thomas v. Rockin D. Marine Servs., LLC*, No. 12-CV-1315, 2013 WL 1992177, at *4 (E.D. La. May 13, 2013). However, when read in light of the Eyre deposition that Compa took the next day,[14] "[t]he Court finds that the circumstantial indicia suffice to show that" by "Deposition prep," Compa meant "Eyre Deposition prep." *Id*.

Accordingly, the Court rejects Defendants' assertion that Plaintiffs' billing entries are vague and ambiguous.

## C. Remaining Johnson Factors

Plaintiffs assert that the *Johnson* factors not included in the reasonable fee analysis justify an upward adjustment of the lodestar. (*See* Doc. 104-1 at p. 25). Defendants unsurprisingly disagree. (Doc. 126 at p. 5). After a careful review of the record, the Court finds that an upward adjustment of the lodestar is unwarranted. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (noting that the *Johnson* factors rarely justify an adjustment of the lodestar because the novelty and complexity of a case is generally reflected in the reasonable hours expended and the quality of an attorney's performance is generally reflected in the reasonable hourly rate"). The above-determined fees are, in fact, reasonable.

---

[14] (*See* Doc. 104-9 at ¶ 9); (*See* Doc. 104-10 at p. 2).

17

**D.    Reasonable Costs**

Plaintiffs seek to recover $5,025 in costs that they assert are both reasonable and properly related to the underlying sanctions. (*See* Doc. 104-1 at pp. 28—29); (*See* Doc. 104-2 at ¶¶ 18—19); (*See* Doc. 104-6); (*See* Doc. 104-7); (*See* Doc. 104-8 at p. 1). Defendants have not objected to this request. (*See* Doc. 122 at p. 1). After a careful review of the record, the Court finds that these costs are both reasonable and properly related to the underlying sanctions. The Court further finds that Defendants have, by virtue of their silence, waived any objection thereto. *See Prince v. Poulos*, 876 F.2d 30, 34 (5th Cir. 1989).

**III.   Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' **Motion to Set Attorneys' Fees and Costs Regarding Sanctions Pursuant to Rule 37(A)(5)(A) and This Court's Order (Doc. 104-1)** is **GRANTED IN PART** and **DENIED IN PART**. The Court **ASSESSES COSTS** against Defendants in the amount of $ 44,007.50 in fees[15] and $5,025 in costs**.**

   Baton Rouge, Louisiana, this 30th day of September, 2015.

   _____
   **BRIAN A. JACKSON, CHIEF JUDGE**
   **UNITED STATES DISTRICT COURT**
   **MIDDLE DISTRICT OF LOUISIANA**

---

[15] Montagnes (40.5 x 225) + Compa (76.8 hours x 200) + Vora (64.6 x 225) + Kamin (7.5 x 300) + Kornberg (5 x 235) + Scheckman (5.25 x 300) = $44,007.50.