UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ELZIE BALL, ET AL | CIVIL ACTION NO. 13-368 |
| VERSUS | JUDGE BRIAN A. JACKSON |
| DEPARTMENT OF PUBLIC SAFETY CORRECTIONS, ET AL | MAGISTRATE JUDGE STEPHEN R. REIDLINGER |

### DECLARATION OF FRANK THOMPSON, P.E.

1.

I am Frank Thompson, P.E. I am a professional engineer licensed by the state of Louisiana. I am the owner of Thompson Luke & Associates, L.L.C., in Baton Rouge, Louisiana. I have previously provided this Court with my curriculum vitae listing, among other things, my qualifications, training, background, and experience, especially with respect to heating, ventilation, and air conditioning ("HVAC") systems.

2.

I have been retained by James L. Hilburn, Attorney at Law, regarding a proposed heat remediation plan for the Death Row Facility at Louisiana State Penitentiary, Angola, Louisiana. I have reviewed certain materials, including a portion of the U.S. Fifth Circuit Court of Appeals decision rendered on July 8, 2015, the facility's plans and specifications, and I performed a site visit to the facility on October 5, 2015. I was asked to render opinions regarding the areas listed below.

3.

I am submitting this declaration to address the U.S. Fifth Circuit Court of Appeals decision that referenced a suggestion by the plaintiff's expert, Dr. Vassallo, on page 19, as a potential remedy. The statement is as follows: "Here plaintiff's own expert, Dr. Vassallo, explained that there are many acceptable remedies short of facility-wide air conditioning. For example, the defendants could divert cool air from the Guard's pod into the tiers..." This suggestion is not recommended for the following reasons.

EXHIBIT 3

4.

The existing air conditioning system is sized to condition the Entry/Visitation area and the Central area of the building only. This 30 ton air conditioning system will not be able to adequately condition the entire building. The Entry/Visitation and Central area will lose the ability to properly control the temperature and humidity in the space. Also, the additional load on the air conditioning equipment will cause the compressor to run for extended periods which will shorten the life of this equipment.

5.

The building is currently designed with the Entry/Visitation area and Central area to be positive and the tier wings to be negative. The entire building would become extremely negative with respect to the outdoors, if the barrier between the two areas is opened. Currently, the Entry/Visitation area is sealed off from the tier wings with demising walls with doors. The tiers wings are ventilated with 4000 CFM central exhaust systems with grilles on the back of each cell that pull in outdoor air from the louvers on the exterior walls opposite of the cells. These wings are under a continuous negative pressure to induce the outside air into the space via the louvers. If the doors to the tiers were opened to allow conditioned air from guard pod to the tiers, this would breach the barrier between the positive pressure conditioned core and the negative tier wings. This would cause the conditioned central space to become negative with the wings, which in turn would cause unconditioned air from outdoors to enter the Entry/Central Core and create humidity and moisture issues in the space. This condition will lead to water damage to the building interior and create an environment that is conducive to mold growth.

6.

On October 5, 2015, I made a site visit to the death row building and took readings of the existing air movement at the cell doors on three different tiers. The average air velocity at the cell doors which are approximately 7 feet away from the fans was 800 feet per minute. The industry standard for human comfort in unconditioned spaces is 150 feet per minute. The ventilation with the existing wall mounted fans exceeds industry standards.

7.

In summary, the opening of the doors to the tiers to divert conditioned air from the guards pod to the tiers would cause temperature, humidity and equipment issues to the building. This item would shorten the life of the building and equipment.

I declare under penalty of perjury under the laws of the state of Louisiana and the United States of America that the above and foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this **27** day of October, 2015, in Baton Rouge, Louisiana.

*[Signature: Frank Thompson]*
Frank Thompson, P.E.
Thompson Luke & Associates, L.L.C.
3071 Teddy Drive
Baton Rouge, LA 70809
Telephone: 225-293-9474