UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELZIE BALL, NATHANIEL CODE, AND JAMES MAGEE, | * * * | CIVIL ACTION NO. 13-368 |
| PLAINTIFFS | * * | |
| VS. | * * | |
| JAMES M. LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, BURL CAIN, WARDEN OF THE LOUISIANA STATE PENITENTIARY, JAMES CRUZE, WARDEN OF DEATH ROW, AND THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, | * * * * * * * * * * | JUDGE: BAJ MAGISTRATE: EWD |
| DEFENDANTS | * * | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND HEAT REMEDIATION PLAN**

**I.      Introduction**

Defendants' Second Heat Remediation Plan ("Second Plan") constitutes a rejection of every suggestion by the Fifth Circuit that addresses the core constitutional violation of extreme heat and humidity. Discovery revealed that Defendants did nothing to meaningfully craft a remedy; Defendants did not even ask their experts to *contemplate* how the conditions in the prison might be improved. Defendants have now rejected *any* exposure to air-conditioned environments outright including air-conditioning part of death row or exposing Plaintiffs to daily air conditioning. Defendants' Second Plan only adopts the most peripheral remedies.

1

Asked in discovery to state how the Second Plan remedies the Eighth Amendment violation, Defendants have not produced a scintilla of scientific or medical evidence that the Second Plan would reduce the substantial risk of Plaintiffs suffering serious harm.

Plaintiffs' expert, Dr. Susi Vassallo, a medical expert in the area of the health impacts of heat on the human body, whose expert opinion this Court previously credited, states unequivocally that the Second Plan would not reduce the substantial risk of serious harm. Ex. 1, Declaration of Dr. Susi Vassallo ("Vassallo Dec.") at ¶¶ 8-13. If the Second Plan is enacted, Dr. Vassallo states that it is a virtual certainty that Plaintiffs will suffer heatstroke or other serious medical complication that could result in paralysis or even death. *Id.* at ¶ 21.

The Court-ordered temperature and humidity data from 2013 showed that Plaintiffs face a substantial risk of serious harm under the conditions present on the Death Row tiers. Temperature data from summer 2015—even absent the crucial component of humidity measurement that allows for calculation of the heat index—show unequivocally that Plaintiffs continue to face the same, if not a greater, substantial risk of serious harm. Defendants cannot, under the law, reject every remedial measure aimed at addressing the underlying constitutional violation. Their Second Plan does just that and should be rejected.

**II.     Supreme Court Precedent Requires Defendants to Attempt to Craft a Meaningful Method of Remedying the Eighth Amendment Violation.**

For every right there is a remedy. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). The Supreme Court has recently directed courts to "presume that Congress was sensitive to the real-world problems faced by those who would remedy constitutional violations in the prisons and that Congress did not leave prisoners without a remedy for violations of their constitutional rights." *Brown v. Plata*, 131 S. Ct. 1910, 1937 (2011) (emphasis added). Indeed, "Courts may not allow constitutional violations to continue simply because a remedy would

2

involve intrusion into the realm of prison administration." *Id.* at 1929. *See also, e.g.*, *Jones v. Gusman*, 296 F.R.D. 416, 430 (E.D. La. 2013).

Here, the Fifth Circuit has upheld this Court's findings that the conditions on Death Row violate Plaintiffs' Eighth Amendment rights. Rec. Doc. 240 at 17. The Fifth Circuit only vacated this Court's injunction. *Id.* at 25. As required by the PLRA and *Plata*, this Court allowed Defendants latitude in determining the means to achieve the necessary remedy. The "narrow tailoring" requirement of the PLRA requires "a fit between the remedy's ends and the means chosen to accomplish those ends." *Plata*, 131 S. Ct. at 1939 (citations omitted).

However, in order to be adopted as injunctive relief by a court, the plan proposed by a prison must effectively remedy the Eighth Amendment violation. *See Williams v. Edwards*, 547 F.2d 1206, 1218 (5th Cir. 1977) ("Though we emphasize the policy of minimum intrusion into the details of state prison administration, when constitutional violations of rights of individuals, even prison inmates, are brought to our attention, we are bound to redress them. The scope of our authority to correct these conditions is as broad as the violations proven, striving where possible to permit self-determination to prison officials.").

Defendants cannot use the PLRA as a shield to permit the continued violation of Plaintiffs' rights on the basis that it would be overly burdensome to require the prison to operate consistent with the Eighth Amendment. *Cf. Plata*, 131 S. Ct. at 1937 ("A reading of the PLRA that would render population limits unavailable in practice would raise serious constitutional concerns.").

**III.    Defendants Have Failed to Craft Any Effective Remedy.**

    **a.    Defendants' Plan Does Nothing to Address the Unconstitutional Conditions on Death Row—Ongoing Extreme Heat and Humidity.**

3

Since December 2014, the Defendants have produced monthly reports of the temperatures on death row. *See* Ex. 2 Affidavit of Elizabeth Compa ("Compa Aff."), Ex. 3, Death Row temperature data. The temperature exceeded 88 degrees for extended stretches of the 2015 summer on all tiers, particularly during the period from mid-July to mid-August where the *vast* majority of temperature readings exceeded 88 degrees. Ex. 3. Heat index figures, if they were available, would be higher. These temperatures, though lacking the important heat index figure that factors in humidity to describe the heat stress on the body,[1] unequivocally show that Plaintiffs continue to be exposed to a substantial risk of serious harm during the summer months. Vassallo Dec. ¶ 11, n.3; see also *Id.* at ¶¶ 4-7 (describing heat-related illness, noting heatstroke mortality is 30-80% and permanent neurological damage occurs in up to 17% of survivors).

Indeed, this Court's previous findings, upheld by the Fifth Circuit, adopted public health guidelines indicating that consecutive days of high temperatures create a high likelihood of heat-related illness or serious medical complication. Rec. Doc. 87 at 58.

Despite these factual findings by both the trial and appellate courts, Defendants' Second Plan does nothing to address the high ambient temperature and humidity in which Plaintiffs are incarcerated for virtually twenty-four hours each and every day. As will be shown below, the Second Plan does nothing more than propose half-hearted measures that not only have no scientific support, but that the scientific and medical communities have rejected as insufficient to prevent death or other serious injury. Instead of addressing the core cause of the Eighth Amendment violation, Defendants' Second Plan is ineffectual at best, and at worst a

---

[1] Plaintiffs note that Defendants, who are in exclusive control of the death row facilities, had exclusive ability to monitor the humidity within the facilities, but did not do so despite this Court's findings that the temperature and humidity, or the heat index, is the appropriate measure for determining the impact of heat on the human body. *See* Rec. Doc. 87 at 60-62.

4

demonstration of their continued deliberate indifference. For this reason alone, the Second Plan is insufficient to remedy the constitutional violation.

### b. Defendants Rejected All of the Fifth Circuit's Meaningful Alternatives to the Establishment of a Maximum Heat Index of 88 Degrees.

During discovery, Defendants stated that the two most significant alternative remedies proposed by the Fifth Circuit were impossible to implement. *See* Rec. Doc. 240 at 19 (Fifth Circuit panel suggesting that Defendants "could divert cool air from the guards' pod into the tiers" or "allow inmates to access air conditioned areas during their tier time"). As Defendants' expert made clear, diversion of cool air into Death Row is not an option. Compa Aff., Ex. 4, Deposition of Frank Thompson ("Thompson Dep.") 10:1-19.

Similarly, the Second Plan was initially silent on the Fifth Circuit's suggestion that Plaintiffs be permitted some time in air conditioning during the summer months. During discovery, Defendants took the position that this suggestion would be overly burdensome. *See* Compa Aff., Ex. 6, Defendant James Cruze's *Supplemental and Amended Responses to First Set of Interrogatories Propounded by Plaintiffs*, at 3.[2]

Defendants seem to suggest that ***any*** burden on prison administration is sufficient to allow them to discard a potential remedy. This is not the law. Defendants are required by the Constitution and the PLRA to develop an effective remedy ***even if doing so would result in some intrusion into prison administration.*** *See Plata*, 131 S. Ct. at 1929. Moreover, Defendants have presented no evidence to show these options represent an unreasonable burden on prison administration.

---

[2] Though Defendants' rejected the two aforementioned Fifth Circuit suggestions, the Second Plan was silent as to the Fifth Circuit's suggestion of air conditioning only one tier and ordering Plaintiffs not to be moved from that tier. *See* Rec. Doc. 240 at 21 ("Louisiana could also air condition one of the four tiers for the benefit of prisoners susceptible to heat-related illness. When coupled with an order not to move the Plaintiffs from these cells unless certain conditions are met, these options could adequately remedy the Plaintiffs' constitutional violation.").

5

If Defendants' assertion as to the burden is accepted, the Court's original injunction is less burdensome and intrusive, while appropriately addressing the constitutional violation.

### c.  The Second Plan's Provision of Additional Ice, Water, Fans, and a Single Cold Shower Is Utterly Insufficient to Address the Constitutional Violation.

Of the remedies suggested by the Fifth Circuit, Defendants' Second Plan adopts the most limited measures—providing ice storage, a single cool shower per day, and additional fans. All of these measures were previously deemed insufficient by both Plaintiffs' expert and this Court.[3] Notably, Defendants have no new evidence to show that the Second Plan will effectively remedy the Eighth Amendment violation by reducing the serious risk of death or catastrophic injury.[4]

Defendants propose to allow the Plaintiffs to choose to split their shower time between a stall with hot water and a stall with cooler water. Rec. Doc. 251 at 3.[5] They do not specify the temperature for the cool shower, nor do they appear to have investigated what water temperature would provide a cooling effect. *Id.* They ignore the evidence in the record that, during the hot stretches of summer, the tap water is lukewarm at its coolest. Rec. Doc. 87 at 40, 87.

As to ice, while the Second Plan provides that the Plaintiffs will have the ability to store ice in coolers in their cells (Rec. Doc. 251 at 4), it fails to account for the fact that ice frequently runs out on Death Row (Rec. Doc. 87 at 13), and it raises the troubling possibility that three men

---

[3] In its opinion, the Fifth Circuit mistakenly quotes Dr. Vassallo as having testified that these remedial measures comprise "many acceptable remedies short of facility-wide air conditioning." Rec. Doc. 240 at 22. However, Dr. Vassallo's testified that these measures would be insufficient to address the substantial risk of serious harm. Rec. Doc. 129 at 58-59, 67-68 (Dr. Vassallo discussing inadequacy of *Gates*-type remedial measures); *see also* Vassallo Dec. at ¶ 23.

[4] Defendants' medical expert admitted there was no new evidence or scientific literature suggesting that the Second Plan would be sufficient to reduce the unreasonable risks to Plaintiffs' health. *See* Compa Aff., Ex. 7, Deposition of Raman Singh, M.D. ("Singh Dep.") at 8:1-22.

[5] At the Dec. 1, 2015, status conference in this matter, Defendants argued that providing two or more separate showers would be overly burdensome. Compa Aff., Ex. 8, Transcript of Status Conference, Dec. 1, 2015, at 25-26. On this point, as well, Defendants fail to offer evidence supporting their conclusory assertions.

would be provided sufficient ice at the expense of others running out.[6] Defendants are silent as to the Fifth Circuit's suggestion that additional ice machines be installed. Rec. Doc. 240 at 20.

Although Defendants' proposal includes adding fans (Rec. Doc. 251 at 4), this Court has already found that fans would not be effective for the extreme heat pervasive on Death Row. Rec. Doc. 87 at 39, 59. As the Centers for Disease Control has recognized, at elevated temperatures fans may increase the heat load on the body, worsening the risk of heat-related illness. Vassallo Dec. at ¶ 7 n.1, ¶ 11. Defendants' medical expert, Dr. Raman Singh, admitted that he gives significant weight to the CDC's recommendations. Singh Dep. 22:23-23:15.

Finally, even assuming the Second Plan is sufficient, the difficulty of monitoring its implementation—Are fans installed and running? Is ice running out? How often is the ice chest going to be refilled? Should they install more ice machines? Is the shower water cool?—creates unacceptable oversight requirements and imposes serious burdens on this Court.

### d. Defendants Failed to Conduct Any Investigation into Ways to Improve Conditions for the Plaintiffs.

The Fifth Circuit's opinion did not purport to provide an exhaustive list of acceptable remedies. *See* Rec. Doc. 240 at 23 ("These are precisely the ***types of remedies*** this court endorsed […].") (emphasis added). But Defendants' Second Plan and subsequent discovery responses make clear that Defendants treated this list of possible remedies as exhaustive.

Defendants' failure to conduct research when creating their Second Plan is evident based on their discovery responses. *See* Compa Aff., Ex. 9, Defendants' *Second Supplemental Responses to Plaintiffs' Request for Production of Documents*, Response to Request for Production of Documents No. 2 (when asked for all documents "reviewed in evaluating whether

---

[6] Plaintiffs emphasize their ongoing concerns about the potential for retaliation, including in the form of remedial measures so constricted that they impede Plaintiffs' already limited ability to carry out the tasks of daily life.

7

the SECOND HEAT REMEDIATION PLAN would adequately address the violation" of Plaintiffs' rights, Defendants directed Plaintiffs to "the opinion issued by the Fifth Circuit Court of Appeals on July 18, 2015, Defendants' First Heat Remediation Plan with accompanying documents, Defendants' Second Plan with accompanying documents, and the transcript from the trial of this matter, specifically, the trial testimony of both Dr. Susi Vassallo and Dr. Raman Singh."); Ex. 6, Defendant James Cruze's *Supplemental and Amended Responses to First Set of Interrogatories Propounded by Plaintiffs*, Supplemental and Amended Response to Special Interrogatory No. 1 ("This defendant consulted with his attorney, James L. Hilburn, regarding the opinion issued by the United States Fifth Circuit Court of Appeals on July 18, 2015, and was made aware of the opinions of Raman Singh, M.D. and the declaration of Frank Thompson, P.E., that the provision of additional fans, ice, cooling showers, etc., would reduce to a reasonable level the risk of harm to plaintiffs' health and meet the constitutional requirements of plaintiffs' conditions of confinement that are at issue in this case.").[7]

It is plain that the opinion of Mr. Thompson, Defendants' engineering expert, was limited to the impossibility of adopting the Fifth Circuit's suggestion that cool air be diverted onto Death Row from other air-conditioned portions of the building. Thompson Dep. 7:25-8:6. Mr. Thompson provides no information or opinion about reducing to a reasonable level the risk of harm to plaintiffs' health.

Dr. Singh's opinion is no different from his previous testimony. Singh Dep. 9:1-12. Dr. Singh specifically stated that he was not aware of any new research or evidence that would have

---

[7] *See also, e.g.*, Compa Aff., Ex. 5, Deposition of James Cruze ("Cruze Dep.") 39:8-14 (stating, in response to a question about why he is confident the Second Plan would address the unconstitutional risk, that he is involved in this matter "because we got to do this. We're ordered by Courts to do this, so we got to do it. That don't necessarily mean that I like doing it. I got to do it. It's part of my job. I do a lot of stuff that I don't like to do, but I got to do it.")

changed his previous opinion. Singh Dep. 7:8-8:22. But more importantly, Dr. Singh stated that ***he could not opine on what measures could reduce the risk of heat-related illness*** because, according to Dr. Singh, medical science is "usually reactive" and not proactive. Singh Dep. 18:4-20:14. Given Dr. Singh's admission that he could not provide any opinion on how prevent heat-related illness, it is plain that Defendant's Second Plan has no medical evidence supporting its ability to remedy the Eighth Amendment violation. *See* Vassallo Dec. at ¶ ¶ 7, 15-20 (discussing the impact of certain medications and critiquing Dr. Singh's deposition testimony).

Despite having full latitude to fashion a remedy, Defendants admitted that they failed to consider possible architectural changes to the Death Row facility that their own architectural expert might have helped develop to provide an effective remedy. Thompson Dep. 6:23-8:15.[8] Similarly, Defendants did not even ask their medical expert to brainstorm other potential remedial measures. Singh Dep. 9:24-15:5. Defendants also rejected a proposal—not suggested by the Fifth Circuit—to place a special "roof shell" that would reduce the heat load on the Death Row tiers because such a remedy would "not be cost-effective." Compa Aff., Ex. 10, Emails from Attorney Grant Guillot to All Counsel, Jan. 21, 2016.[9]

**IV. Defendants' Failure to Propose an Effective Remedy Makes Clear that this Court's Original Injunction was a Necessary, Narrowly-Tailored, and Non-Intrusive Remedy.[10]**

---

[8] Mr. Thompson did, however, point out that the design of the death row tiers, where each cell has its own toilet, creates a need for air circulation which further limits the range of options available to alter conditions on the tiers and underscores the infeasibility of the Fifth Circuit's suggestions. Thompson Dep. 13:10-14:19.

[9] As further evidence of their lack of diligence in preparing the Second Plan, Defendants did not even include those remedies that are enumerated in prison policies relating to mitigation of extreme heat—such as issuance and delivery of cold wet towels and the provision of "additional showers" (plural). *See* Rec. Doc. 12-12 (LSP Directive 13.067 "Psychotropic Medication and Heat Pathology"); Cruze Dep. 26:18-36:13. Defendants admit that they do not currently provide cold wet towels. Cruze Dep. 34:14-34:25. These policies were the result of significant discussion and careful consideration by the prison's medical staff and were purportedly backed by medical science. Singh Dep. 30:19-43:2. That Defendants fail to include or implement even those methods they believe could help reduce the effects of extreme heat further shows their deliberate indifference to Plaintiffs' Eighth Amendment rights.

[10] Plaintiffs incorporate by reference arguments in previous briefing, Rec. Doc. 269.

9

Under *Plata*, where a prison has consistently failed—despite numerous opportunities to prepare and implement an effective remedy to an Eighth Amendment violation—federal courts are permitted by the PLRA to fashion appropriate remedies. *See Plata*, 131 S. Ct. at 1930 ("Both orders were intended to remedy the constitutional violations. Both were given ample time to succeed. When the three-judge court was convened, 12 years had passed since the appointment of the *Coleman* Special Master, and 5 years had passed since the approval of the *Plata* consent decree. The State does not claim that either order achieved a remedy.");[11] *id.* at 1939-41 (order is necessary, narrow, and non-intrusive).

Here, the prison has had nearly three years to consider what remedy it could effectively implement to address the extreme heat and humidity and Plaintiffs' resulting health risks, yet, as discussed *supra*, it has failed to develop a plan that remedies the constitutional violation.

## V. Conclusion: The Need for Future Proceedings

For the reasons discussed above, Defendants' Second Plan is wholly insufficient to remedy the ongoing constitutional violation. Plaintiffs, therefore, urge that the Court undertake one of the following next steps: (1) order Defendants to implement their original Heat Remediation Plan (Rec. Doc. 118); (2) order a remediation plan that specifically addresses the core causes of the constitutional violation at issue—the extremely high temperatures and humidity on the Death Row tiers during the summer months—by, for instance, providing Plaintiffs sufficient daily time in an air-conditioned environment; or (3) Defendants be given a final opportunity to develop a plan with full latitude as to its components.

Respectfully submitted this 16th day of February, 2016,

---

[11] Orders limiting populations in prisons require, under the PLRA, that other remedies be given an opportunity to succeed and ample time for exploration of the effectiveness of less drastic remedies. This stringent requirement, however, is limited only to orders having the effect of releasing prisoners. *See Plata*, 131 S. Ct. at 1930.

10

>/s/ Mercedes Montagnes
>Mercedes Montagnes, La. Bar No. 33287 (Lead Counsel)
>Elizabeth Compa, La. Bar No. 35004
>The Promise of Justice Initiative
>636 Baronne Street
>New Orleans, LA 70113
>Tel. (504) 529-5955
>Fax (504) 558-0378
>Email: mmontagnes@thejusticecenter.org
>
>James M. Lee, Ca. Bar No.192301, *Pro Hac Vice*
>Nilay U. Vora, Ca. Bar No. 268339, *Pro Hac Vice*
>Lee Tran & Liang LLP
>601 S. Figueroa Street, Suite 3900
>Los Angeles, California 90017
>tel: 213-612-8900
>fax: 213-612-3773
>Email: nilay.vora@ltlattorneys.com
>
>Steven Scheckman, La. Bar No. 08472
>Schiff, Scheckman, & White LLP
>829 Baronne Street
>New Orleans, Louisiana 70113
>Tel. (504)581-9322
>Fax (504)581-7651
>Email: steve@sswethicslaw.com

CERTIFICATE OF SERVICE

I do hereby certify that on February 16, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

>/s/ Mercedes Montagnes
>Mercedes Montagnes, La. Bar No. 33287 (Lead Counsel)
>The Promise of Justice Initiative
>636 Baronne Street
>New Orleans, LA 70113
>Tel. (504) 529-5955
>Fax (504) 558-0378
>Email: mmontagnes@thejusticecenter.org