UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELZIE BALL, NATHANIEL CODE, AND JAMES MAGEE, | * * * | CIVIL ACTION NO. 13-368 |
| PLAINTIFFS | * * | |
| VS. | * * | |
| JAMES M. LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, BURL CAIN, WARDEN OF THE LOUISIANA STATE PENITENTIARY, JAMES CRUZE, WARDEN OF DEATH ROW, AND THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, | * * * * * * * * * * | JUDGE: BAJ  MAGISTRATE: EWD |
| DEFENDANTS | * * | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY INJUNCTIVE RELIEF**

**I.   INTRODUCTION**

The heat index on Louisiana's Death Row has now exceeded 88 degrees. This Court made extensive factual findings that when the temperature exceeds 88 degree heat index, the conditions on death row violate the constitution (Rec. Doc. 87) and the Fifth Circuit agreed (Rec. Doc. 240). The only issue remaining in this case is how to remedy that violation. The Defendants were given wide latitude to correct the violation and came up with a plan (Rec. Doc. 251, *Defendants' Submission of Second Heat Remediation Plan*) with some modification. (Rec. Doc. 299, *Defendants' Submission of Revised Second Heat Remediation Plan*).[1]

---

[1] Plaintiffs will refer to the Revised Second Heat Remediation Plan hereinafter as the "Second Plan."

1

The Second Plan has now failed. On May 12, 2016, the heat index rose above 88 degree heat index.[2] As requested by this Court,[3] Plaintiffs are advising the Court of the Second Plan's failure and moving the Court to modify the injunctive relief to address the ongoing constitutional violation which could result in Plaintiffs' serious injury, paralysis, or death.

## II.     FACTUAL AND PROCEDURAL HISTORY

While this case's procedural history is extensive, Plaintiffs provide only the details that inform the instant motion.  This Court found Defendants violated the Eighth Amendment by being deliberately indifferent to Plaintiffs' exposure to conditions of extreme heat and humidity—i.e. heat indexes over 88 degrees—that created a substantial risk of serious harm to Plaintiffs.  Rec. Doc. 87 at 97.  This Court ordered Defendants to develop and implement a plan to establish a maximum heat index of 88 degrees.  Rec Doc. 87; Rec. Doc. 170.

On appeal, the Fifth Circuit upheld this Court's findings that the conditions on Death Row violate Plaintiffs' Eighth Amendment rights. Rec. Doc. 240 at 17. The Fifth Circuit vacated only this Court's remedy and remanded for determination of whether a narrower relief, or any other relief, would remedy the Eighth Amendment violation.  *Id.*

---

[2] The heat index was calculated using the National Oceanic Atmospheric Administration (NOAA) calculator, as adopted by the Special Master at Rec. Doc. 278, with the agreement from the parties. Plaintiffs acknowledge that the Defendants have taken the position that the NOAA calculator is not correct and the calculations prepared by their staff on an excel spreadsheet are more accurate. Plaintiffs have reviewed the calculations performed by the Defendants and pointed out errors in the calculations. Plaintiffs do not believe there is any reasonable dispute as to which calculations are correct. The conditions on death row have surpassed the heat index set by the Court. Plaintiffs communicated this development to all parties, and feel that in order to protect Plaintiffs from the ongoing constitutional violation, this filing is necessary.

[3] At the March 7, 2016 status conference on this matter, the Court stated, "I have attempted to established, based upon the evidence received, literally a bright line where we need to go in terms of the [heat index].  It's quite simple.  Either the [heat index] in that tier will be above the 88 or below the 88.  . . . I don't think you can be, you know, any more simple and direct than that. . . . If it is determined or reported to me by the special master or . . . any party . . . that the current plan is simply ineffective, there will not be a 30, 45 or 60-day period for discovery.  We're going to deal with this with all deliberate speed.  Because, again, I cannot sit idly by while a constitutional violation continues to occur."  March 7, 2016 Hearing Transcript at 54:1-55:25.

Consistent with the PLRA, 18 U.S.C. § 3626, and *Brown v. Plata*, 131 S. Ct. 1910 (2011), on remand, this Court allowed Defendants complete latitude in determining the necessary remedy. Defendants' Second Plan rejected all of the Fifth Circuit's meaningful remedial alternatives.[4] Instead, Defendants' Second Plan included only the provision of additional ice, water, fans, and a single cold shower. This Court has already found, based on Plaintiffs' expert evidence, that these limited measures are insufficient to cure the Eighth Amendment violation.[5] Defendants presented no new evidence to show that the Second Plan would effectively remedy the Eighth Amendment violation by reducing the substantial risk of serious harm.[6]

At the March 7, 2016, status conference to discuss the Second Plan, this Court stated that Defendants' Second Plan should be given an opportunity to succeed[7] prior to the Court requiring any additional injunctive relief.[8]

---

[4] During discovery, Defendants stated that the two most significant alternative remedies proposed by the Fifth Circuit were impossible to implement. See Rec. Doc. 240 at 19 (Fifth Circuit panel suggesting that Defendants "could divert cool air from the guards' pod into the tiers" or "allow inmates to access air conditioned areas during their tier time"). As Defendants' expert made clear, diversion of cool air into Death Row is not an option. Rec. Doc. 290-5, Deposition of Frank Thompson, 10:1-19. The Second Plan was initially silent on the Fifth Circuit's suggestion that Plaintiffs be permitted some time in air conditioning during the summer months. During discovery, Defendants took the position that this approach would be overly burdensome. *See* Rec. Doc. 290-6, Defendant James Cruze's *Supplemental and Amended Responses to First Set of Interrogatories Propounded by Plaintiffs*, at 3.

[5] In its opinion, the Fifth Circuit mistakenly quotes Dr. Vassallo as having testified that these remedial measures comprise "many acceptable remedies short of facility-wide air conditioning." Rec. Doc. 240 at 22. However, Dr. Vassallo testified that these measures would be insufficient to address the substantial risk of serious harm. Rec. Doc. 129 at 58-59, 67-68 (Dr. Vassallo discussing inadequacy of *Gates*-type remedial measures); *see also* Vassallo Dec. at ¶ 23.

[6] Defendants' medical expert admitted there was no new evidence or scientific literature suggesting that the Second Plan would be sufficient to reduce the unreasonable risks to Plaintiffs' health. *See* Rec. Doc. 290-7, Deposition of Raman Singh, M.D. ("Singh Dep.") at 8:1-22.

[7] On May 10, 2016, during a conference with the Special Master, after a substitution of Defendants' counsel, Defendants took the position—for the first time—that there was no order requiring the implementation of the Second Plan. Defendants also stated that the lack of an order requiring implementation was causing problems with Johnson Controls' willingness to comply with the Special Master's Order requiring real-time monitoring abilities by all parties. Plaintiffs asked that the Special Master or Defendants make the Court aware of Defendants' position that they have not been required by any order of this Court to implement the Second Plan. The Special Master declined to intervene. Exhibit A. However, all parties have been operating under the understanding that this Court ordered implementation of the Second Plan since at least the March 7, 2016 status conference. If the Defendants needed further orders from this Court to implement the Second Plan or the Special Master's orders, it was their obligation to seek such an order.

3

On May 12, 2016, the heat index on the death row tiers exceeded 88 degrees on F tier, where Plaintiff Nathaniel Code is presently housed. The heat index also exceeded 88 degrees on A, D, E, and H tiers. See Ex. B, Heat Indexes for May 12-13.

## III.     ARGUMENT

### A.     DEFENDANTS' SECOND PLAN IS INSUFFICIENT

Defendants' Second Plan does nothing to address the high ambient temperature and humidity in the cells where Plaintiffs are incarcerated for virtually twenty-four hours each and every day. Because it did not address the ***core cause*** of the Eighth Amendment violation, Defendants' Second Plan has now failed to remove the serious risk of substantial harm.

In addition to extensive scientific and medical evidence previously credited by the Court, Defendants' Second Plan is not consistent with the Fifth Circuit's opinion. If the cursory remedial measures in the Second Plan were *per se* sufficient, the Fifth Circuit would not have suggested several alternatives which included giving Plaintiffs time in the air conditioning for at least some limited periods. See *supra* n.4; the Fifth Circuit also suggested air conditioning one tier and ordering Plaintiffs not to be moved from that tier. *See* Rec. Doc. 240 at 21 ("Louisiana could also air condition one of the four [sic] tiers for the benefit of prisoners susceptible to heat-related illness. When coupled with an order not to move the Plaintiffs from these cells unless certain conditions are met, these options could adequately remedy the Plaintiffs' constitutional violation.").

This Court has already advised Defendants that the Court might order an effective remedy to the Eighth Amendment violation in the event that Defendants' Second Plan fails and

---

[8] The Court also specifically advised Defendants that Defendants should consider alternatives to the Second Plan in the event that the Second Plan failed to reduce the heat index to a point that did not violate the Eighth Amendment. March 7, 2016 Hearing Transcript at 54:14-20.

4

Defendants do not have an immediate back-up plan ready for implementation. *See supra* n.3, 8. Defendants do not appear to have heeded the Court's recommendation. To the contrary, Defendants persist in arguing that heat indexes exceeding 88 degrees do not create substantial risks of serious harm to Plaintiffs so as to violate the Eighth Amendment because Plaintiffs have access to ice, fans, and cold showers, even at such high heat indexes. Ex. C, Email from Colin Clark to all parties and Special Master, May 14, 2016.

B.  **THIS COURT SHOULD USE ITS INHERENT POWERS TO MODIFY OR ENTER APPROPRIATE INJUNCTIVE RELIEF THAT WILL EFFECTIVELY REMEDY THE EIGHTH AMENDMENT VIOLATION.**

Defendants have consistently failed to effectively remedy the Eighth Amendment violation despite multiple opportunities to do so. Given their failure, it is now within the Court's authority to intervene. *See Plata*, 131 S. Ct. at 1930 ("Both orders were intended to remedy the constitutional violations. Both were given ample time to succeed" and were ineffective such that prisoner release became necessary.);[9] *id.* at 1939-41 (order is necessary, narrow, and non-intrusive).

This Court has previously stated that it is obligated to fashion a remedy that adequately addresses the violation of Plaintiffs' constitutional rights.[10] Federal courts have "the authority, and the responsibility, to make further amendments" to injunctive relief

> as warranted by the exercise of [their] sound discretion. . . . A court that invokes equity's power to remedy a constitutional violation by an injunction . . . has the continuing duty and responsibility to assess the efficacy and consequences of its order. . . . Experience may teach the necessity for modification or amendment of an earlier decree. To that end, [federal courts] must remain open to a showing or

---

[9] Orders limiting populations in prisons require, under the PLRA, that other remedies be given an opportunity to succeed and ample time for exploration of the effectiveness of less drastic remedies. This stringent requirement, however, is limited only to orders having the effect of releasing prisoners. *See Plata*, 131 S. Ct. at 1930.
[10] "I cannot sit idly by while a constitutional violation continues to occur." March 7, 2016 Hearing Transcript at 55:24-25.

5

>demonstration by either party that the injunction should be altered to ensure that the rights and interests of the parties are given all due and necessary protection.

*Plata*, 131 S. Ct. at 1946 (2011).

The Court may only alter injunctive relief after providing Defendants with notice and an opportunity to be heard. *See, e.g.*, *Armstrong v. Brown*, 768 F.3d 975, 979-80 (9th Cir. 2014) (upholding modification of injunctive relief where oral notice and opportunity for prison to respond in writing was provided by district court). The PLRA requires, however, that this Court "promptly rule on any motion to modify . . . prospective relief in a civil action with respect to prison conditions." 18 U.S.C. § 3626(e)(1).

**E.   DEFENDANTS SHOULD BE ORDERED TO IMPLEMENT THE ORIGINAL HEAT REMEDIATION PLAN.**

For every right there is a remedy. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). The Supreme Court directs courts to "presume that Congress was sensitive to the real-world problems faced by those who would remedy constitutional violations in the prisons and that Congress did not leave prisoners without a remedy for violations of their constitutional rights." *Plata*, 131 S. Ct. at 1937 (2011). "Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Id.* at 1929.

Remediation plans to correct constitutional violations must, in fact, correct that violation.. *See Williams v. Edwards*, 547 F.2d 1206, 1218 (5th Cir. 1977) ("Though we emphasize the policy of minimum intrusion into the details of state prison administration, when constitutional violations of rights of individuals, even prison inmates, are brought to our attention, we are bound to redress them. The scope of our authority to correct these conditions is as broad as the violations proven, striving where possible to permit self-determination to prison officials.").

6

Defendants' failure to propose an effective remedy makes clear that this Court's original injunction was a necessary, narrowly-tailored, and non-intrusive remedy. Here, the prison has had nearly three years to consider what remedy other than mechanical cooling could address the extreme heat and humidity and Plaintiffs' resulting health risks, yet, as discussed *supra*, it has failed to develop a plan that remedies the constitutional violation.

In fact, Defendants admitted under oath that the original Heat Remediation Plan—which called for mechanical cooling to maintain a heat index not in excess of 88 degrees—would cause no security concerns. Rec. Doc. 290-5, Deposition of Warden James Cruze, at 49:3-6. In contrast, Warden Cruze stated under oath that any intrusion onto the prison's ability to relocate Plaintiffs to other cells on Death Row, to expose Plaintiffs to air-conditioning for a limited time each day, and other such remedies would cause security concerns. *Id.* at 26:5-17. Under the PLRA, this Court is required to give "substantial weight" to Warden Cruze's sworn statements in evaluating whether the original Heat Remediation Plan is necessary, narrowly tailored, and non-intrusive so that it minimizes intrusion into the operation of the prison. 18 U.S.C.A. § 3626 ("The court shall give substantial weight to any adverse impact on . . . the operation of a criminal justice system caused by the relief.").

Having failed to generate any meaningful remedy to the Eighth Amendment violation and its core causes, and having admitted under oath that the original Heat Remediation Plan causes no security concerns in contrast to the alternative remedies suggested by the Fifth Circuit, Defendants should now be required to implement their original Heat Remediation Plan.

## VIII. CONCLUSION

For the reasons discussed above, Plaintiffs move this Court to order Defendants to implement their original Heat Remediation Plan (Rec. Doc. 118).

Respectfully submitted this 16th day of May, 2016,

/s/ Mercedes Montagnes
Mercedes Montagnes, La. Bar No. 33287 (Lead Counsel)
Elizabeth Compa, La. Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378
Email: mmontagnes@thejusticecenter.org

James M. Lee, Ca. Bar No.192301, *Pro Hac Vice*
Nilay U. Vora, Ca. Bar No. 268339, *Pro Hac Vice*
Lee Tran & Liang LLP
601 S. Figueroa Street, Suite 3900
Los Angeles, California 90017
tel: 213-612-8900
fax: 213-612-3773
Email: nilay.vora@ltlattorneys.com

Steven Scheckman, La. Bar No. 08472
Schiff, Scheckman, & White LLP
829 Baronne Street
New Orleans, Louisiana 70113
Tel. (504)581-9322
Fax (504)581-7651
Email: steve@sswethicslaw.com

CERTIFICATE OF SERVICE

I do hereby certify that on May 16, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Mercedes Montagnes
Mercedes Montagnes, La. Bar No. 33287 (Lead Counsel)
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378
Email: mmontagnes@thejusticecenter.org