UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ELZIE BALL, ET AL** | * | CIVIL ACTION 13-368 |
| | * | |
| **VERSUS** | * | |
| | * | JUDGE BRIAN JACKSON |
| **JAMES M. LEBLANC, SECRETARY** | * | |
| **OF THE LOUISIANA DEPARTMENT** | * | |
| **OF PUBLIC SAFETY AND** | * | MAGISTRATE ERIN WILDER-DOOMES |
| **CORRECTIONS, ET AL** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS' POST HEARING BRIEF**

MAY IT PLEASE THE COURT:

Defendants, Louisiana Department of Public Safety and Corrections, James M. LeBlanc, Secretary of Louisiana, Department of Public Safety and Corrections in his official capacity, Darrel Vannoy, Warden of Louisiana State Penitentiary in his official capacity, and James "Jimmy" Cruze, Jr., Assistant Warden of Louisiana State Penitentiary, in his official capacity, respectfully submit the instant Brief in accordance with the Court's instructions given at the June 15, 2016, evidentiary hearing in this matter.

**I.    Introduction**

As the Court is aware, the United States Court of Appeals for the Fifth Circuit affirmed this Court's determination that Defendants violated Plaintiffs' Eighth Amendment right to freedom from cruel and unusual punishment, noting, "housing [the Plaintiffs] in very hot cells without sufficient access to heat-relief measures, while knowing that each suffers from conditions that render him extremely vulnerable to serious heat-related injury, violates the Eighth Amendment."[1]  Defendants had argued that they were compliant with the Eighth Amendment's prohibition against cruel and unusual punishment because they implemented on a yearly basis

---

[1] *Ball v. LeBlanc*, 792 F.3d 584, 596 (5th Cir. 2015).

the remedial measures established by the Fifth Circuit in *Gates v. Cook*;[2] however, the Fifth Circuit, although acknowledging the precedential weight of its decision in *Gates*,[3] determined that based on this Court's findings of fact, Defendants failed to implement the remedial measures mandated by the Fifth Circuit in accordance with *Gates*. Specifically, the Fifth Circuit noted,[4]

- Where *Gates* approved fans for each cell, each fan in Angola's death row served two cells. *Ball v. LeBlanc,* 988 F.Supp.2d 639, 680 n. 100 (M.D.La.2013). Although a seemingly minor difference, the district court found that "the fans [at Angola] [do] not provide equal amounts of air flow to each cell, nor [do] the fans provide a detectable cooling effect." *Id.*

- The district court in *Gates* also ordered increased in-cell access to ice. 376 F.3d at 339. Here, by contrast, inmates have unfettered access to ice only during the one hour a day they can walk the tiers. *Ball,* 988 F.Supp.2d at 680 n. 100 [further adding, "Even then, obtaining ice is no guarantee. The record suggests that the ice machine occasionally breaks down leaving the tier ice chests empty."[5]]. When the prisoners are in their cells, they depend on other inmates or guards for ice. *Id.*

- And while the State allows prisoners to shower once a day, as approved in *Gates,* the water temperature is maintained between 100 and 120°F for sanitation purposes, thus providing little relief from the heat. *Id.*[6]

Thus, the Fifth Circuit concluded that "[g]iven these material differences, *Gates* does not preclude holding that the State violated the Eighth Amendment."[7]

In addition, the Fifth Circuit opined that "[t]here are many acceptable remedies short of facility-wide air conditioning…and that [t]hese are precisely the types of remedies this court endorsed in *Gates v. Cook* and that the [Prison Litigation Reform Act][8] requires.[9] Accordingly,

---

[2] 376 F.3d 323 (5th Cir. 2004).
[3] See *Ball*, 792 F.3d at 589; 792 F.3d at 595-96; 792 F.3d at 599-600.
[4] *Ball*, 792 F.3d at 595-96.
[5] *Ball*, 792 F.3d at 596 n. 7.
[6] The Fifth Circuit in *Gates* noted, "The testimony upon which this injunction rests indicated that cold showers would help alleviate the risk of heat-related illness." 376 F.3d at 340.
[7] *Ball*, 792 F.3d at 596.
[8] 42 U.S.C. § 1997e.
[9] *Ball*, 792 F.3d at 599, citing 376 F.3d at 339–40.

on remand the district court must limit its relief to these types of remedies."[10]  In speaking of the "types of remedies [the Fifth Circuit] endorsed in *Gates v. Cook*," the Court was clearly referring to remedial measures such as fans, ice water, and daily showers, which the prison officials in *Gates* were ordered to provide to inmates susceptible to heat-related illness when the heat index was 90ºF or higher.[11]

Furthermore, in its Opinion in this matter the Fifth Circuit explained, "Even assuming that air conditioning is an acceptable remedy here—and it is not—it is possible to provide air conditioning solely to these three inmates. As the Defendants acknowledged at oral argument, Plaintiffs could be placed in cells next to the officers' pod, which are cooler than those farther down the tiers. Louisiana could also air condition one of the four tiers for the benefit of prisoners susceptible to heat-related illness. When coupled with an order not to move the Plaintiffs from these cells unless certain conditions are met, these options could adequately remedy the Plaintiffs' constitutional violation. Moreover, the *Gates*-type remedies available on remand—increased access to water, ice, cold showers, etc.—ought to (and must) be tailored to these [the three Plaintiffs]."[12]

Moreover, Defendants interpret the Fifth Circuit's Opinion to mean that Defendants are not required to maintain the heat index within the Plaintiffs' cells at a heat index below 88ºF. Defendants acknowledge and respect that this Court does not interpret the Fifth Circuit's Opinion as prohibiting the Court from ordering that the heat index be kept below 88ºF.[13] However, Defendants respectfully disagree, as the Fifth Circuit noted in its Opinion that a

---

[10] *Ball*, 792 F.3d at 599.
[11] *Ball*, 792 F.3d at 599.
[12] *Ball*, 792 F.3d at 600.
[13] See pp. 10-12, 30-32 of the Transcript of the June 15 hearing.

3

permanent injunction requiring Defendants to develop a plan to keep the heat index at or below 88ºF would "effectively" require Defendants to install air conditioning.[14] Furthermore, the Fifth Circuit explained that "[t]he *Gates* court did not mandate a maximum heat index applicable in the Mississippi prison. It required particular heat measures, including fans, ice water, ice, and showers, 'if the heat index reaches 90 degrees or above.'"[15] Defendants also respectfully submit that they are not attempting to re-litigate the Fifth Circuit's ruling regarding the 88ºF heat index standard; rather, it is Defendants' position that the Fifth Circuit ruled that Defendants must implement sufficient remedial measures in accordance with *Gates* when the heat index reaches 88ºF – not that Defendants must maintain the heat index below 88ºF.

## II. Pursuant to the Fifth Circuit's instructions, Defendants have corrected the constitutional violation found by this Court and affirmed by the Fifth Circuit.

Defendants submitted their Second Heat Remediation Plan to the Court on October 23, 2015. That plan established that the temperature and humidity would be automatically monitored and recorded by a hard-wired climate monitoring system for each tier. The data would then be transmitted and stored as part of the Louisiana State Penitentiary computer network system. The heat and humidity sensors would then transmit their reading to the buildings existing Johnson Control energy management system every 15 minutes. Reports of the data captured by the system could be generated on an as-requested basis, such as daily for example, and the data could be accessed and provided to any parties with an interest in same. As represented in Defendants' Submission of Revised Second Heat Remediation Plan,[16] filed with this Court on April 8, 2016, the heat and humidity monitoring system was installed on January

---

[14] *Ball*, 792 F.3d at 591; *Ball*, 792 F.3d at 598.
[15] *Ball*, 792 F.3d at 600, citing *Gates,* 376 F.3d at 336.
[16] Doc. 299.

26, 2016, with the heat index to be determined using the formula established by the National Weather Service, as agreed upon by the parties. Furthermore, after resolving several issues relating to the Special Master's ability to directly access the temperature and humidity data, the Special Master and Plaintiffs' counsel are now able to obtain this information on an as-needed and, in any event, daily basis. Therefore, Defendants can ensure their compliance with *Gates* because the monitoring system will allow Defendants to gage the heat index and to know when they must implement the *Gates*-mandated remedial measures.

In addition, Defendants are now in compliance with *Gates* because their Second Heat Remediation Plan[17] includes a provision affording Plaintiffs the opportunity to take a cold shower daily. As indicated in Defendants' Submission of Revised Second Heat Remediation Plan,[18] the showers on the tiers were modified to include both a "hot" water controller that supplies water at a seasonally preset temperature in accordance with hygienic standards and a "cold" water controller that supplies water from the cold water line only. Therefore, Plaintiffs now are able to take cold showers in order to alleviate the heat effects, thus correcting the shower issue raised by this Court and the Fifth Circuit.

Moreover, Defendants have addressed this Court's and the Fifth Circuit's concerns regarding Plaintiffs' access to ice by providing Plaintiffs with two personal coolers, one "Igloo"-sized cooler and one smaller "six-pack" cooler, both of which can be used to hold ice.[19] These coolers will be provided to Plaintiffs from April 1 through October 31, and they will be filled and replenished with clean ice, as needed, by the LSP[20] staff and/or orderlies during each twelve (12)

---

[17] Doc. 251.
[18] Doc. 299.
[19] See Docs. 251 and 299.
[20] Doc. 251.

hour shift.[21]  In addition, the prison has purchased an additional ice machine to be installed next to the current ice machine at Death Row.[22]  Moreover, in the event both of the facility's ice machines are out of service and and/or down for maintenance, LSP staff will obtain ice from the prison's on-premises ice house, located just a few minutes from the facility, and bring large ice chests/food grade barrels of ice to the facility to replenish the ice for Plaintiffs until the ice machines are back in service.[23]  Finally, a log sheet is being utilized to document the provision of ice to Plaintiffs.[24]  It is clear the Defendants have adequately corrected the issues raised by this Court and the Fifth Circuit regarding Plaintiffs' access to ice.  Accordingly, Defendants have further established their compliance with *Gates*.

Furthermore, Defendants have sufficiently addressed this Court's and the Fifth Circuit's concerns regarding Plaintiffs' access to fans.  LSP has installed permanent additional fans across from each Plaintiff's cell.[25]  Therefore, Plaintiffs are no longer sharing a fan with another inmate; rather, each Plaintiff now has access to his own fan.  Therefore, in accordance with *Gates*, each Plaintiff now has the ability to utilize his own fan in order to obtain relief from the heat.

Finally, in their Submission of Revised Second Heat Remediation Plan,[26] Defendants explain that the Special Master will be promptly notified when any of the Plaintiffs are moved to a different tier.  Moreover, in the event the prison encounters circumstances in which it cannot continue the operation of the Second Heat Remediation Plan, the prison will transfer the Plaintiffs to a four (4) cell tier at Camp F (where the death chamber is located), which has the

---

[21] Doc. 251.
[22] Doc. 299.
[23] Doc. 251, 259.
[24] Doc. 299.
[25] Doc. 251, 259.
[26] Doc. 299.

ability to be air-conditioned.  Once the issues preventing the continued operation of the Second Heat Remediation Plan have been resolved, Plaintiffs will then be returned to a cell on one of the Death Row tiers.  Again, the Special Master will be promptly notified of the movement of any of the Plaintiffs from one tier to another.

As discussed hereinabove, Defendants have sufficiently corrected all issues with the remediation measures that prevented it from complying with *Gates* pursuant to the rulings issued by this Court and by the Fifth Circuit.  Indeed, by Plaintiffs' own admission, the deficiencies in the remedial measures implemented by Defendants, as characterized by this Court and the Fifth Circuit, have all been corrected.  In the parties' Joint Stipulations for June 15, 2016 Evidentiary Hearing[27] filed with this Court on June 20, 2016, Plaintiffs admit the following:

- The Plaintiffs have made no formal complaints, written or verbal, to the named Defendants regarding the elements of the Second Heat Remediation Plan that have been implemented – the additional ice coolers, the cold shower option, and the additional fans.

- Since those elements have been implemented, the Plaintiffs have always had ice and have access to cold (adjustable-control) showers, and additional fans have been added across from their cells.

In addition, in its Opinion the Fifth Circuit provided examples of remedies Defendants may implement short of facility-wide air conditioning in order to cure the constitutional violation.[28]  Among its other suggestions, the Fifth Circuit expressly stated that Defendants could "allow access to cool showers at least once a day," "provide ample supply of cold drinking water and ice at all times," "supply personal ice containers and individual fans," and "install additional ice machines."[29]  It is uncontroverted that Plaintiffs (1) now are afforded the daily opportunity to

---

[27] Doc. 343.
[28] *Ball*, 792 F.3d at 599.
[29] *Id.*, citing 376 F.3d at 339–40.

take a cool shower; (2) have always had access to water and now have access to an ample supply of ice; and (3) have been supplied with personal ice containers and individual fans. In addition, Defendants have installed an additional ice machine. It is Defendants' position that their implementation of the remediation efforts established by the Fifth Circuit in *Gates* and reaffirmed in its Opinion in this matter are sufficient to cure the constitutional violation. Therefore, Defendants maintain that because they are now in compliance with *Gates*, they have cured the Eighth Amendment violation.

### III. Defendants' Second Heat Remediation Plan, as amended, complies with the Prison Litigation Reform Act.

As noted by the Fifth Circuit, before a district court can order injunctive relief, it must find that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation."[30] Also, "Under the PLRA, plaintiffs are not entitled to the most effective available remedy; they are entitled to a remedy that eliminates the constitutional injury."[31] Defendants maintain that by utilizing the remedial measures deemed constitutionally sufficient by the Fifth Circuit in *Gates*, Defendants are implementing relief that, pursuant to the PLRA, extends as far as is necessary to correct the constitutional violation in this matter.[32]

In its Opinion, the Fifth Circuit presented several remedial measures Defendants could implement, including: (1) diverting cool air from the guards' pod into the tiers; (2) allowing inmates to access air-conditioned areas during their tier time; (3) allowing access to cool showers at least once a day; (4) providing an ample supply of cold drinking water and ice at all times; (5)

---

[30] *Ball*, 792 F.3d at 598, citing 18 U.S.C. § 3626(a)(1)(A).
[31] *Ball*, 792 F.3d at 599, citing *Westefer v. Neal,* 682 F.3d 679, 683–84 (7th Cir.2012).
[32] *Ball*, 792 F.3d at 599, citing 18 U.S.C. § 3626(a)(1)(A).

supplying personal ice containers and individual fans; (6) installing additional ice machines; (6) placing the Plaintiffs in cells next to the officers' pod, which are cooler than those farther down the tiers; and (7) providing air conditioning for one of the four tiers for the benefit of prisoners susceptible to heat-related illness and implementing an order not to move the Plaintiffs from these cells unless certain conditions are met.[33] It is Defendants' position that the Fifth Circuit was not suggesting that *all* of these measures must be implemented in order to cure the constitutional violation. Rather, Defendants were required to present a remediation plan that has the effect of curing the constitutional violation. Defendants submit that their Second Heat Remediated Plan, as amended, conforms to both *Gates* and the PLRA.

Moreover, even if Defendants were required to implement all the suggested remedial measures offered by the Fifth Circuit, Defendants have established why it would not be possible to implement some of the alternative proposed remediation efforts. As set forth in the Affidavit of Defendants' expert Frank Thompson,[34] which was attached to Defendants' Submission of Second Heat Remediation Plan,[35] the Death row facility's existing air conditioning system would not be sufficient to handle the increased load, which would result in premature equipment failure. Second, and most importantly, this suggested remedial measure would not provide the intended relief because the resulting positive to negative air balance in the guard's pod would cause unconditioned outdoor air to enter the pod, thus resulting in humidity and moisture issues that would lead to water damage to the building interior and equipment and the possible growth of mold.[36] Moreover, as stated by Warden James "Jimmy" Cruze, Jr. in his Affidavit[37] attached to

---

[33] *Ball*, 792 F.3d at 599-600.
[34] Doc. 251-1.
[35] Doc. 251.
[36] Doc. 251-1.

Defendants' Submission of Second Heat Remediation Plan,[38] the Fifth Circuit's suggestion that the tier doors be opened to allow air conditioned air from the guard's pod area to the tiers creates serious security concerns when dealing with Death Row offenders. Finally, in responding to the Fifth Circuit's suggestion that Defendants allow Plaintiffs to access air conditioned areas during their tier time, as stated by Warden Cruze in his Response to Interrogatory No. 5 of Plaintiffs' First Set of Interrogatories,[39]

> Regarding access to the air conditioned portion of the Death Row building, the staff and common areas would be off-limits because of security concerns. That would leave the attorney visit room and the contact visit room as air conditioned areas. If those two rooms are being used for attorney or contact visits, respectively, those rooms could not be used for air conditioned space and vice versa. Also, to give inmates access to those rooms would tie-up security staff to shackle and unshackle all inmates before they leave the tiers. And, the security officer cannot leave the inmates unattended and would have to stay with each inmate the entire duration of the time they are in the room. This would burden the Death Row security staff.

Therefore, Defendants have contemplated all the remedial measures suggested by the Fifth Circuit in its Opinion and, in accordance with the PLRA, Defendants have determined that they are able to cure the constitutional violation by sufficiently implementing the remedial measures mandated by the Fifth Circuit in *Gates*.

IV. **Plaintiffs have mischaracterized the Fifth Circuit's ruling in *Hinojosa v. Livingston*.**

At the June 15, 2016, evidentiary hearing, Plaintiff's counsel argued that "in *Hinojosa*, even the Fifth Circuit contemplates at this state that there must be some exposure to air-

---

[37] Doc. 251-2.
[38] Doc. 251.
[39] In the parties' Joint Stipulations for June 15, 2016 Evidentiary Hearing [Doc. 343] filed with this Court on June 20, 2016, the parties agreed that all documents submitted as part of the evidentiary hearing, including all discovery responses, are authentic and admissible.

conditioning."[40] Plaintiff's characterization of the Fifth Circuit's opinion in *Hinojosa* is erroneous. The Fifth Circuit has never stated or even implied that "there must be some exposure to air-conditioning" in prison heat cases. Instead, the majority in *Hinojosa*, echoing the Fifth Circuit's statements in *Gates* and *Ball*, emphasized that "an injunction requiring heat-reduction measures was supported by an Eighth Amendment violation"[41] and that measures such as "the provision of cool daily showers, cold ice water, personal ice containers, and individual fans"[42] can suffice to cure the constitutional violation. Again, the Fifth Circuit has not indicated that Defendants are required to implement *all* of the remedial measures it has suggested.

In addition, in her dissenting opinion in *Hinojosa*, Judge Edith Jones, who authored the majority opinion in *Ball*, specifically cites to *Ball* in support of her statement that "to the extent [the Fifth Circuit]'s precedents speak more about comprehensive heat remedies, they reject that air conditioning must be installed to ensure cool prisons."[43] Accordingly, Plaintiffs are mistaken in their assertion that the Fifth Circuit in *Hinojosa* indicated that some form of mechanical cooling is required to cure a heat-related Eighth Amendment violation.

**V. Dr. Vassallo's expert opinion has not changed since it was first offered at the trial of this matter.**

As a final matter, although Dr. Suzi Vassallo testified that recently-published scientific literature has lent further credibility to her expert opinion,[44] Defendants submit that her opinion is essentially the same now as it has been since the inception of the litigation.[45] However, Defendants maintain that their implementation of the remedial measures mandated by the Fifth

---

[40] See p. 342 of the Transcript of the June 15 hearing.
[41] *Hinojosa v. Livingston*, 807 F.3d 657, 666 (5th Cir. 2015).
[42] *Hinojosa*, 807 F.3d at 670.
[43] *Hinojosa*, 807 F.3d at 680 n. 7, citing *Ball*, 792 F.3d at 599.
[44] See p. 101 of the Transcript of the June 15 hearing.
[45] See pp. 130-131 of the Transcript of the June 15 hearing.

Circuit in *Gates* sufficiently addresses the heat-related health concerns are the subject of Dr. Vassallo's expert opinion.

## VI.     Conclusion

In conclusion, Defendants respectfully request that the Court issue an order finding that the implementation of Defendants' Second Heat Remediation Plan, as amended, has cured the constitutional violation.

Respectfully Submitted:

/s/ Grant J. Guillot
E. Wade Shows, La. Bar Roll No. 7637
James L. Hilburn, La. Bar Roll No. 20221
Grant J. Guillot, La. Bar Roll No. 32484
SHOWS, CALI & WALSH, LLP
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467

Winston White (La. Bar Roll No. 36080)
Colin Clark (La. Bar Roll No. 33775)
Assistant Attorneys General
Louisiana Department of Justice
1885 North 3rd Street
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6200
Facsimile: (225) 326-6297

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **July 11, 2016**, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice will be sent to all counsel for Plaintiffs by operation of the court's electronic filing system.

Baton Rouge, Louisiana this 11th day of July, 2016.

_/s/ Grant J. Guillot_
Grant J. Guillot