UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ELZIE BALL, ET AL. | CIVIL ACTION NO. 13-CV-368 |
| VERSUS | CHIEF JUDGE BRIAN A. JACKSON |
| JAMES M. LEBLANC, ET AL. | MAGISTRATE JUDGE ERIN WILDER-DOOMES |

## SETTLEMENT AGREEMENT

The parties to *Ball v. LeBlanc*, 13-cv-368, United States District Court for the Middle District of Louisiana (the "Court") enter into this settlement agreement to jointly resolve their differences over what remedial measures are required under the Prison Litigation Reform Act ("PLRA") to eliminate the alleged constitutional deficiencies in the conditions of Plaintiffs' confinement which were identified by the Fifth Circuit Court of Appeal in *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) ("*Ball I*"), and *Ball v. LeBlanc*, 881 F.3d 346 (5th Cir. 2018) ("*Ball II*").

Except for the obligations expressly set forth in this agreement, and on the condition that Defendants remain in Substantial Compliance[1] with the terms of this agreement, the Defendants, their successors, officers, agents, servants, employees, and attorneys and those persons in active concert or participation with Defendants, are released from any and all civil liability to Plaintiffs as it pertains to this case and claims of entitlement to heat remediation, with the exception of Second Motion to Set Attorneys' Fees and Costs and any motion for attorneys' fees and costs incurred from January 9, 2017 until the litigation of attorneys' fees is complete. Plaintiffs and Defendants agree that nothing in this agreement precludes an award of attorneys' fees and costs, including without limitation in the event that further litigation is required to enforce the provisions of this agreement.

By agreeing to the terms below, Defendants do not concede that the remedial measures identified in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) are insufficient to remediate conditions of confinement related to excessive heat for any inmate within the custody of the Louisiana Department of Corrections.

---

[1] For purposes of this agreement, "Substantial Compliance" means adherence in all material respects to the terms of this agreement, recognizing that one hundred percent (100%) compliance is not required. Isolated, non-substantive or immaterial deviations from the terms of this agreement will not necessarily prevent a finding of Substantial Compliance. The determination of Substantial Compliance will take into account the extent to which the offending party can demonstrate that it has acted to remedy any errors.

1

## SUBSTANTIVE PROVISIONS

Defendants will continue to monitor the heat and humidity in the tiers where the inmate plaintiffs reside on a daily basis during the months of April through October and will keep records of such data for at least 180 days. Any calculation of the heat index will use the formula established by the National Weather Service ("NWS"). The heat index calculator is found on the NWS website at http://www.wpc.ncep.noaa.gov/html/heatindex.shtml. This data will be provided to Plaintiffs' counsel upon request and while this agreement is in effect.

The following measures are to be provided to Plaintiffs when the heat index within their cells meets or exceeds 88 degrees Fahrenheit:

**A. INMATE-OPERATED SHOWERS**

The inmate plaintiffs will continue to be provided with a minimum of fifteen minutes of shower time every day. Defendants will retain the previously installed two shower water valve controllers on the tiers which will allow inmate plaintiffs to select between hot and cold water during the course of their showers. The record contains a picture of the valve controllers at the death row facility and a brochure of the shower equipment that was installed to provide temperature control. *See* ROA.9325-9326. The "hot" controller will supply the water at a seasonally preset temperature as the "regular" hygienic shower. The "cold" controller will supply water from the cold water line only.

**B. ICE MACHINES AND ICE CONTAINERS**

The inmate plaintiffs will continue to be provided with multiple containers of ice in their cells. The current containers in use (one three-gallon ice container and one designed to hold six twelve-ounce cans) are depicted in this Court's record. *See* ROA.7027; ROA.9328. The inmate plaintiffs will continue to be provided with these containers or substantially similar containers that hold the at least the same quantities of ice in the future. The ice containers will be timely replenished by prison staff upon request. Defendants will also retain the previously purchased individual ice containers that Plaintiffs enjoy access to inside their cell. The death row facility will retain and maintain in good working order the two ice machines present at the facility. *See* ROA.7028-7031; ROA.9327. Regardless, the inmates shall have consistent access to ice at all times.

**C. FANS**

The inmate plaintiffs will retain access to individual fans of equal or greater air flow capacity to the ones currently in use. The record contains information about the fans purchased and a picture of the current ones in use. *See* ROA.7026; ROA.9329.

**D. WATER**

The inmate plaintiffs will continue to be provided with constant access to clean, potable drinking water through use of the faucets in their cells.

2

F.  **ICY BREEZE UNITS**
The inmate plaintiffs will have access to one working "IcyBreeze" unit for each individual Plaintiff. The "IcyBreeze" unit will be positioned about 12 inches from the bars of each cell. Prison staff will continue to supply ice to these "IcyBreeze" units regularly and upon request.

G.  **DIVERSION OF COOL AIR FROM THE DEATH ROW GUARD POD**
Defendants will maintain a hole measuring no less than 26 inches by 27 inches in the door that separates the air-conditioned Guard's Pod from Tier C. Plaintiffs will continue to be housed on Tier C in the three cells closest to the door that connects the tier to the Guard's Pod. Defendants will maintain in good working order a curtain constructed of heavy plastic in order to keep the diverted cool air inside the portion of Tier C in which Plaintiffs are confined.

## DISPUTE RESOLUTION AND TERMINATION

The parties agree that this agreement is enforceable in federal court and that dismissal of this case will be conditional upon Defendants' Substantial Compliance with the terms of this agreement. Within five days of the execution of this agreement, the parties shall jointly move the Court for an entry of an Order conditionally dismissing this action, pursuant to Fed. R. Civ. P. 41(a)(2), which is conditional upon the parties achieving Substantial Compliance with its terms. This agreement shall be attached to such motion. The motion shall request that the case be placed on the Court's inactive docket and the Court shall retain jurisdiction over the case. If either party fails to comply with the terms of this agreement, any party may file a motion to restore the case to the Court's active docket. One year after Substantial Compliance has been achieved, if no motion to restore the case to the Court's active docket has been filed, the parties will jointly move the Court for entry of a Final Order dismissing this action, pursuant to Fed. R. Civ. P. 41(a)(2). This dismissal shall be without prejudice to any parties' right to move to reinstate the proceeding, pursuant to 18 U.S.C. § 3626(c)(2)(A).

If counsel for one of the parties believes that another party is not complying with some aspect of the agreement, they will notify opposing counsel in writing, identifying any facts supporting their belief. All parties agree that they shall promptly provide opposing counsel with a response and will resolve any problems that are determined to exist. If the aggrieved party is not satisfied with opposing counsel's response, the parties agree to work together in good faith toward resolving the issue. If the parties are unable to resolve the issue(s) timely and satisfactorily, either party may move to return the case to the active docket or, if the case has been dismissed, to reinstate the matter pursuant to 18 U.S.C. § 3626(c)(2)(A). In the case that any party moves to reinstate, the parties agree that this Court shall have jurisdiction over that motion and any subsequent proceedings. Reinstatement shall be conditioned on a finding by the Court that a party has failed to remain in Substantial Compliance with the terms of the agreement.

The parties undertake this agreement provided that there are no substantial changes since June 1, 2017 in the operation of the HVAC system (including the exhaust system) on Death Row, the provision of ice, the showers, the fans, or any other component or aspect of the relief granted. If Defendants wish to make any modification that will substantially impact the heat index on Tier C, or would substantially impact the listed conditions (A) through (G), which have been in place

3

since June 1, 2017, they must seek leave from Plaintiffs before doing so, and in the event the parties cannot agree on the changes, either party may move to make active or reinstate this matter pursuant to 18 U.S.C. § 3626(c)(2)(A).

In the event that the permanent security status of any Plaintiff will change, the Defendants agree to give the Plaintiffs prior notice such that they can seek to reinstate this matter if Plaintiffs believe the change will result in a failure of substantial compliance. The parties agree to work in good faith to find a satisfactory alternative settlement if Plaintiffs disagree with the Defendants' proposed change. If Defendants undertake such modifications without seeking Plaintiffs' consent, Plaintiffs may reinstate this matter.

The parties have already agreed that the Plaintiffs are to be permanently housed on Tier C of the Death Row Complex. If they are permanently moved, the Defendants agree that they would not be in substantial compliance with this settlement agreement. The parties agree to work in good faith to find a satisfactory alternative settlement if the Defendants believe that the Plaintiffs must be permanently moved for any reason.

In addition, the Plaintiffs desire to have a short period to ensure the efficacy of this agreement. Therefore, the Plaintiffs may, for any reason, withdraw from this agreement between July 1, 2019 and July 30, 2019 if the Plaintiffs experience a heat index in excess of 88 degrees in their cells on at least two consecutive days. If the Plaintiffs withdraw within this period, the case will be reinstated pursuant to 18 U.S.C. § 3626(c)(2)(A) to the Court's active docket. The Defendants agree to return the conditions to the Third Plan until they are able to file a Fourth Plan with this Court and until the Court has had an opportunity to rule upon any objections to the Fourth Plan the Plaintiffs may have, if any.

Pursuant to Sup. Ct. R. 46.1, the parties agree to jointly file a request to dismiss the Plaintiffs' currently pending petition for certiorari with the United States Supreme Court, No. 18-162, within three days of the signing of this agreement.

## ADDITIONAL PROVISIONS

This agreement constitutes the entire agreement among the parties as to all claims in this litigation. This agreement supersedes all prior agreements, whether written, oral, or implied. Each party represents that it has full legal authority to enter into and execute this agreement.

This agreement may not be altered or amended, except in writing signed by all parties or their representatives.

This agreement will be binding on all successors, assigns, employees, agents, and all others working on behalf of Plaintiffs and Defendants.

Executed this 5th day of November, 2018 in Baton Rouge, Louisiana.

Jeff Landry, Attorney General

Colin Clark, Bar No. 33775
Assistant Solicitor General
Assistant Attorney General
Louisiana Department of Justice
1885 North 3rd Street, P.O. Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6200
Facsimile: (225) 326-6297
Clarkc@ag.louisiana.gov

Mary E. Roper, Bar No. 22146
Jeffrey K. Cody, Bar No. 28536
SHOWS, CALI & WALSH, LLP
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, LA 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467
Maryr@scwllp.com
Jeffreyc@scwllp.com

*On behalf of Defendants*

Mercedes Montagnes, Bar No. 33287
The Promise of Justice Initiative
1024 Elysian Fields Avenue
New Orleans, Louisiana 70117
Telephone: (504) 529-5955
Facsimile: (504) 595-8006
Mmontagnes@defendla.org

Nilay U. Vora, Ca. Bar No. 268339,
*admitted pro hac vice*
The Vora Law Firm, P.C.
201 Santa Monica Blvd., Suite 300
Santa Monica, California 90401
Telephone: (424) 258-5190
Nvora@voralaw.com

Steven Scheckman, Bar No. 08472
Schiff, Scheckman & White LLP
650 Poydras Street, Suite 2760
New Orleans, Louisiana 70130
Telephone: (504) 309-7888
Facsimile: (504) 518-4831
Steve@sswethicslaw.com

*On behalf of Plaintiffs*

5